E-FILED
Wednesday, 28 June, 2006 10:25:39 AM
Clerk, U.S. District Court, ILCD

# IN THE
## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

DARO WEILBURG,

        Petitioner,

    v.

GREGORY SIMS,

        Respondent.

Docket No. 06-3125

**FILED**

JUN 2 7 2006

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

# MEMORANDUM IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

**NOW COMES** the Petitioner, DARO WEILBURG in pro per and hereby submits his memorandum in support of Petition for Writ of Habeas Corpus and for his memorandum in support of his Petition he states:

1. He is the Petitioner, a prisoner of the Illinois Department of Corrections located at the Taylorville Correctional Center as a result of a conviction by a jury on August 25, 1997, of the offense of theft over $10,000.00, a Class 2 Felony. He was sentenced on November 19, 1999 to the maximum 7 year term of imprisonment without counsel in absentia. He proceeds pro se.

2. He has presented his arguments juxtaposed within his Petition for Writ of Habeas Corpus to the Highest State Court and has exhausted the available state remedies.

## MEMORANDUM I

3. The 6th Amendment to the United States Constitution provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial..." On November 29, 1994, Petitioner made an oral request for a Speedy trial. (It wasn't necessary to make one too) On December 23, 1994, Petitioner filed his written Demand for a speedy trial. (See Appendix B, attached hereto) On January 31, 1996, Court appointed Counsel, Gregory Clark, made an oral demand for a speedy trial and the Court granted leave to file a written demand. (See Appendix C, attached hereto). Counsel failed to reduce his demand to written form. Petitioner, thereafter, proceeded pro se and was not brought to trial, after making several demands for a speedy trial, until August 25, 1997.

## II.

4.   While an accused may waive a trial by jury or by a judge, a fair trial is a substantive right. A fair trial cannot be denied by a court, deprived by counsel's laxness, or waived by the accused. On August 25, 1997, Jurors were voir dired by counsel. Juror list 118, Sequence 193, John Murray was asked by the court:

"John, do you Know any of the witnesses in this case?"

Juror John Murray answers:

"No."

The Court then asks Mr. Murray:

"How about any of the participants at all, Defendant, any of the attorneys?" (emphasis added)

Juror Murray answers:

"No."        (See appendix D, attached hereto)

5.   During the voir dire of Juror Murray, Petitioner informed his court appointed Counsel that he Knew Mr. Murray, that he had worked with Mr. Murray. Counsel admitted that he was ineffective in his post-trial

-2-

Motion for New Trial, at 3. "It was ineffective assistance of counsel for defense counsel to not excuse a juror, John Murray, because of an alleged acquaintance with the defendant." (See Appendix E, attached hereto)

6. During the voir dire of Juror Murray, the court inquired as to his employment history. Mr. Murray answered:

> "The company I worked for closed down in January called Madison (s.p.) Technology (s.p.)." (See Appendix D-2, attached hereto)

7. On September 1, 1997, a week after trial, Petitioner wrote the court:

> "I do not know why Mr. Murray failed to inform the court that he knew me. When I brought the matter to Frank Martinez attention, He told me to remain silent unless asked by the court if I knew any of the jurors. I was never asked." (See Appendix F, attached hereto)

Enclosed with the September 1, 1997, letter was a February 28, 1996, letter from Mattison Technologies, Inc. to Petitioner. Two weeks later the court violated the Petitioner's Bond and had him placed in Jail to await sentencing. (See Appendix G, attached hereto)

8. The court denied numerous requests by the Petitioner for an evidentiary hearing to voir dire Juror John Murray as to why he failed to divulge his association with the defendant. In the matter of People v. Phillips, 455 U.S. 209, 222, 102 S. Ct. 940, 948, 71 L.Ed.2d 78, 79 the Supreme Court noted: "A hearing permits counsel to probe the juror's memory, his reasons for acting as he did, and

his understanding of the consequences of his actions. A hearing also permits the trial Judge to observe the juror's demeanor under cross-examination and to evaluate his answers in light of the particular circumstances of the case." McDonald v. Pless, (1915) 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed.2d 1300. See also, U.S. v. Scott, 854 F.2d 697 (5th Cir. 1988).

9.   The U.S. Supreme Court has consistantly held that in cases where Juror's withhold vital information when voir dired constitutes denial of due process. Estes v. Texas, (1953) 381 U.S. 227, 74 S.Ct 450, 98 L.Ed.2d 654, U.S. ex rel Tobe v. Bensinger, (cert. denied 1974) 493 F.2d 232. The State of Illinois Courts have repeatedly followed the U.S. Supreme Court, except in Petitioner's case. People v. Dolgin, (1953) 415 Ill.434, 114 N.E.2d 389, People v. Malmenato, (1958) 14 Ill.2d 52, 150 NE.2d 806, People v. Tobe, (1971) 49 Ill.2d 538, 276 N.E.2d 294, People v. Witte, (2nd Dist. 1983) 115 Ill.App.3d 20, 449 N.E.2d 966, People v. Hunt, (1st Dist 1983) 112 Ill.App.3d 138, 445 N.E.2d 408, People v. Jones, (1985) 105 Ill.2d 342, 475 N.E.2d 832, People v. Rodgers, (2nd Dist 1985) 135 Ill.App.3d 608, 482 N.E.2d 639

10.   With the juror's failure to divulge his association with the petitioner and the trial court's failure to hold an evidentiary hearing to voir dire the juror, due process was denied. People v. Hunt, (1st Dist 2002) 264 Ill.Dec. 804, 335 Ill.App.3d 894, 781 N.E.2d 601. The trial court held that the issue was waived due to the Petitioner's (not his counsel) failure to inform the judge, post-trial. However, Illinois Supreme Court Rule 615 (a) provides in pertinent part: "...That procedural defaults effecting substantial rights may be noticed even if the matters were not raised in the trial court." The trial court refused to address the issue post-trial, the Appellate court dismissed the Appeal and the Illinois Supreme Court denied leave to appeal to that court. (See Appendix A)

-4-

11.  The failure to afford a defendant a fair trial violates even the minimal standards of due process. People v. Cole, (1973) 54 Ill.2d 401, 411, 298 N.E.2d 705. Illinois Supreme Court Rule 615 (a) further provides in pertinent part: "If the error is of such a magnitude so as to deny a defendant a fair and impartial trial this court must review." None of the Appellate courts would review. The trial court had clear and unambiguous direction from the Illinois Supreme Court in the matter of People v. Gaston, (1984) 125 Ill.App.3d 7, 465 N.E.2d 631 which this Petitioner presented to the trial court. The Supreme Court held: "Neither a trial judges inadvertent omissions, nor a jurors failure to divulge possibly pertinent information, nor a trial attorneys laxness can be allowed to impair the fundamental right to a fair and impartial jury. That right MUST be guarded zealously." See also, People v. Potts, (2nd Dist. 1992) 224 Ill.App.3d. 938, 586 N.E.2d 1376 (emphasis added)

12.   When the trial court refused to protect this Petitioners' U.S. Constitutional right to a fair and impartial trial this Petitioner invoked his right to liberty absent the protections. He notified the court and the State on September 30, 1999, that he intended to vacate the jurisdiction. He provided his address. He didn't abscond the jurisdiction. He didn't run away, change his name or his social security. He walked thru the open door held by the court which never issued an arrest warrant and the state for not securing an arrest warrant. He, the Petitioner, walked away from the state of Illinois eight (8) months later in May of 2000. Ironically, the state has never issued an arrest warrant in this case. Not even after the court sentenced this Petitioner to 7 years in prison, in absentia, without counsel, did the state issue an arrest warrant. Due process was clearly violated. Of course the state didn't want to entertain any appeal, also a denial of due process.

# III.

13.    During the direct examination of the State's first witness held on August 26, 1997, the state posed the following question to Jesenia Negron:

> "Jesenia, back then when the Defendant was working maintenance for your mother, what line of work was he in besides maintenance? <u>Was there anything else</u>, any other line of work he was involved in back then that you were aware of?" (emphasis added)

The question 'Was there anything else' invites the following answer prompted by the State:    "From what I <u>understand</u> he had previously been released from prison." (emphasis added)  (see Appendix H, attached hereto)

It should be noted that the witness used the present tense word 'understand' instead of the past tense word 'understood'. The jury heard the reference to prison and while the court sustained the defense objection, the damage was done and any belief that the jury would disregard is unmitigated fiction. The court should have declared a mistrial. <u>Bruton v. U.S.</u>, (1968) 391 U.S. 123, 88 S.Ct. 1620, <u>People v. Decker</u>, 310 Ill. 234, 141 N.E. 710 "There is no question more damaging to a defendant than one that suggests or intimates that he is a criminal or has been charged with a criminal offense, (or that he has been in prison)" (parenthesis mine) <u>People v. Black</u>, 317 Ill. 603, 614, 148 N.E. 281. Due process was violated and fundamental fairness denied.

# IV.

14.    Another State's witness, Lonnie Cochran, a pawn shop broker from South Dakota was asked by the state if he could identify anyone in the courtroom as the man who pawned 'scrap jewelry' three years ago. Mr. Cochran replied. "Honestly, No." He was excused from the stand. Court was adjourned for the day. The following day Mr. Cochran was recalled to the stand. He related that he spent the evening with the prosecutor, after viewing the Petitioner during the previous day and viewing photos of the Petitioner which the prosecutor showed him. The court allowed him

to identify the photo of the Petitioner. The Petitioner does not cite any authority herewith, common sense dictates that due process was violated.

## V.

15.    Upon his filing of his direct appeal Petitioner received a partial record of the proceedings. He discovered the presentence report prepared by Stephen Smith, on September 8, 1997. Mr. Smith related the following telephonic conversation with Norma Barriga, the victim proprietor of Norma's Jewelry:

> "When asked what she would like the court to impose for a punishment on the defendant, <u>Ms. Barriga stated she believes the wrong person was convicted</u>." (emphasis added)

In support of her observation that 'she believes the wrong person was convicted' Ms. Barriga provides to Mr. Stephen Smith that:

> "She believes the mother and daughter were responsible, <u>along with another employee who took his lunch earlier than he normally did the day of the theft</u>." (emphasis added)

During her testimony Jesenia Negron related that her mother helped her purloin the goods from the Jewelry Store. Noemi Negron (the mother) was never charged and Jesenia Negron testified that her mother ran off to Costa Rica with her paramour. It is quite probable that this paramour was the other employee 'who took his lunch earlier than he normally did the day of the theft.' Naturally, Ms. Barriga would have informed the police of her observation and suspicion. The State failed to provide that exculpatory evidence to the defense. It should be noted that the preceeding telephonic conversation took place one week after the trial. This was a <u>Brady</u> violation. <u>Brady v. Maryland</u>, (1963) 83 S.Ct. 1194

## VI.

16.    Both the original attorney, Mr. Gregory Clark, and the trial attorney were ineffective, Mr. Francis Martinez. Mr. Clark should have moved the court to

to grant a demand for a speedy trial by reducing that demand to written form on January 31, 1996. Had Mr. Clark moved the court to dismiss based on the premise that the Petitioner had filed a written demand for a speedy trial on December 23, 1994, and more than a year had elapsed since that demand, the court would have been forced to dismiss for the 6th U.S. Constitutional Amendment violation. <u>Strickland</u> violation occurred.

17. If Mr. Francis Martinez, trial Counsel had pre-empted Juror John Murray during <u>voir dire</u>. The outcome of the trial would have been an acquittal. If Mr. Francis Martinez had not allowed (6) invoices presented to the court by the State, to go to the jury to substantiate that the alleged theft was over $10,000.00 the outcome of the trial would have changed. The invoices were addressed to an address that didn't even exist. The invoices were addressed to: Norma's Jewelry, 527 W. Main St., Rockford, IL.. Ironically, the store was located at 224 N. Main St., Rockford, IL.. There is no West Main Street in Rockford, IL. (see Appendix J) The two prong <u>Strickland</u> test was well pleaded in each State Court. The State Court didn't care that tainted evidence went to the jury. In <u>People v. Lambert</u>, (2nd Dist. 1997) 224 Ill. Dec. 360, 288 Ill. App. 3d 450, 681 N.E. 2d 675, The 2nd District Appellate Court held that: "[I]f there is reasonable probability that erroneously admitted testimony (evidence) contributed to a conviction, the error <u>cannot</u> be considered harmless." (emphasis added) (Parenthesis mine) except in Petitioner's case.

18. Based on the preceeding arguments it's no wonder that the Petitioner Vacated the Kangeroo Court System of this cause. But, once again Petitioner didn't take it on the lam. He didn't immediately leave. He did the prudent and legal thing. He Filed a Statement with the Court informing the court that he was forced by

the court's refusal to provide him due process, to vacate the jurisdiction. He sent the State's Attorneys office a copy dated September 30, 1999. The State doesn't respond, the court doesn't issue a written arrest warrant. The Court orders the Clerk to serve notices on the Petitioner at his 'last known address', of hearings scheduled for November 18, 1999, a bond forfeiture hearing and November 19, 1999 sentencing in absentia. The 'last known address' of this Petitioner was P.O. Box #3132, Rockford, IL. 61106. However, the Clerk, if they sent the notices at all, sent them to 1226 17th Ave., Rockford, IL. 61104. When the Petitioner received no response from the State, no visit from the Police and no ruling from the Court he assumed the Court agreed and only left the jurisdiction (8) months later in May of 2000. (See Appendix K, attached hereto)

19. The Petitioner provided his address to the Court, the Clerk of the Court, and to the State on June 11, 1999 in open court. (See Appendix L, attached hereto) The Clerk provided on September 30, 1999 that Petitioner's address was 1226 17th Ave., (See Appendix M, attached hereto) Rockford, IL. The Clerk was ordered by the Court to serve notices on the Petitioner of future hearings scheduled for Nov. 18,19, 1999. (See Appendix M-6, lns. 24 - M-6, lines 2) On November 18, 1999, during the Bond Forfeiture hearing the Clerk provided they sent notices to the 1226 17th Ave. Address. The Petitioner hadn't lived at that address for over (2) years. Petitioner did not receive nor did the Clerk send any notices to his 'last known address', which was P.O. Box #3132, Rockford, IL. 61106. Due process was violated.

## VII.

20. The bond forfeiture hearing held on November 18, 1999 was held in violation of the 6th Const. Amend. and 725 ILCS 5/5-115-4.1(a) which provides in pertinent part: "... an absent defendant must be represented..." On Sept. 3, 1999, the court asked Petitioner if he wanted an attorney to represent him, and if he

could afford to hire one. Petitioner replied yes and that he could hire his own attorney. When asked if he was going to hire an attorney, Petitioner stated that he would research the law and see what it encompasses. (See Appendix N, attached hereto) On September 30, 1999, the Petitioner did not appear in person. The State moved the court to appoint counsel pursuant to 725 ILCS 5/5-115-4.1(a). However, the court was more concerned with the inconvenience to any appointed attorney rather than the Petitioners' rights. The Court denied the Motion. (see Appendix M-6, lns. 10-16) The court proceeded to hold the bond forfeiture hearing on Nov. 18, 1999 and the sentencing in absentia on Nov. 19, 1999, without counsel to represent the Petitioner. The United States Supreme Court has never upheld a conviction in absentia even with counsel present. This petitioner contends that this Honorable Court can not uphold a sentence in absentia, without neither the Petitioner nor counsel for defense present.

21. Pursuant to 725 ILCS 5/5-115-4.1(e), upon his return, this Petitioner had statutory authority to file a motion to vacate the trial and/or sentence. In the event the court denied the section 4.1(e) motion, section 4.1(g) takes effect and allows the defendant to file an appeal. However, after filing his section 4.1(e) motion and his right to appeal, section 4.1(g), the Appellate court dismissed pursuant to Illinois Supreme Court Rule 606. Petitioner maintained that Supreme Court Rule 606 was not waived because Supreme Court Rule 605, the admonishment of the right to appeal, was only provided to the A.S.A. in attendance, the court personnel, and the spectators, if any. Since neither the Petitioner nor counsel were present, Supreme Court Rule 605 was not provided. In People v. Partee, (1988) 125 Ill.2d 24, 530 N.E.2d 460 the Illinois Supreme Court considering an absent defendant's right to appeal, although Partee had counsel, held that:

"even an absent defendant retains... all the

rights guaranteed by the U.S. Constitution, the
Constitution of Illinois, statutes of the state
of Illinois and the rules of court shall apply
to all proceedings as if the defendant were present."
(emphasis added)

While the Illinois Supreme Court applied those words to Partee, who was absent yet,
represented by counsel. The 2nd District Appellate Court held they do not apply to
this Petitioner who was without counsel, and absent. (see also, People v. Dupree,
(2003, 1st Dist.) 339 Ill.App.3d 512, 275 Ill.Dec.551, 793 N.E.2d 31) All the sentencing
court had to do was appoint a P.D. to represent this Petitioner at the Bond
forfeiture hearing and the sentencing hearing. A P.D. would have preserved the
appeal rights, just like Partee, supra and Dupree, supra. A P.D. would have
sufficed adherence to 725 ILCS 5/5-115-4.1(a), equal protection of law violation.

WHEREFORE based on the preceeding the entire trial was a violation of
due process, denial of fundamental fairness, and a deprivation of numerous
constitutional and statutory rights. The dismissal of the Appeal and denial of
leave to appeal to the Appellate Courts compounds the violation, denials and
deprivations. Petitioner respectfully requests this Court to issue the writ of
Habeas Corpus and order this Criminal case be dismissed with prejudice.

Date: June 13, 2006

by Dane Weilbug
In Propria Personam

E-FILED
Wednesday, 28 June, 2006 10:26:06 AM
Clerk, U.S. District Court, ILCD
COPY

1          STATE OF ILLINOIS

2    IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT

3          COUNTY OF WINNEBAGO

4    THE PEOPLE OF THE STATE OF )
     ILLINOIS,                  )
5                               )
                        People, )
6                               )
            vs.                 )  94-CF-2420
7                               )
                                )
8    DARO WEILBURG,             )
                                )
9                   Defendant.  )

10

11          REPORT OF PROCEEDINGS in the

11   above-entitled cause in Rockford, Winnebago County,
12
     Illinois, in the Winnebago County Court House by the
13
     Honorable Michael Morrison, Judge of said Court on the
14
     Twenty-fourth day of April, A. D. 1997.
15
     APPEARANCES:
16

17

            ATTORNEY SCOTT SALEMI & WILLIAM EMMERT
18          appeared on behalf of the People.

19          DARO WEILBURG appeared
            on behalf of Himself.
20

21

22

23   Melvyn D. Shutt, CSR
     Lic. No. 084-002004
24

Appendix A

holding cell -- but it had to do with, on
point, that any evidence which is given or
provided to a jury, even though there maybe
other evidence which overwelms the guilt or the
reasonable doubt -- not reasonable doubt --
removes reasonable doubt, that tainted evidence
would have a bearing on the jury and no one,
not the Judge or the attorneys, could determine
what effect it had on the jury, and this is a
statutory law.

    MR. SALEMI:  Would you ask him again if he
is ready to do the hearing?

    THE COURT:  Are you going to be ready?
You need the case is what you are telling me?

    THE DEFENDANT:  I was just giving you a
hypothetical reason why I need the case.

    THE COURT:  Are you asking that I continue
that Motion?

    THE DEFENDANT:  Yes.

    THE COURT:  As far as the Petition for
Evidentiary Hearing, does the State have any
comment on that?  I guess, Mr. Weilburg, it's
your Motion.

    THE DEFENDANT:  I believe that the main

Start

A-1

1    focal pointed of that rested with the People

2    versus Cole and People versus Gaston.

3         THE COURT:  I guess I am going to ask,

4    because I need to try to shorten this in your

5    cases -- I understand the evidence that's been

6    presented to me by your own statement.  You

7    have indicated that you, for the record, that

8    you informed your attorney that you knew this

9    Juror John Murray?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  In your statements to me you

12   indicated that you could not recollect how you

13   knew him but that you thought it was through

14   work?

15        THE DEFENDANT:  Yes, sir.

16        THE COURT:  You didn't know which job?

17        THE DEFENDANT:  No, sir, I didn't.

18        THE COURT:  But that sometime subsequent

19   you did then remember more details of how you

20   had met him and where he worked with you?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  And that you worked with him

23   at Mattison Technologies?

24        THE DEFENDANT:  Yes, sir.

A-2

1    THE COURT:  You indicated that you

2    informed your attorney of that and your

3    attorney indicated to you to let it go unless I

4    asked you whether or not you knew the juror?

5    THE DEFENDANT:  Yes, sir.

6    THE COURT:  Don't you feel you should be

7    estopped from being able to raise that when you

8    should have informed the Court of that and

9    should have questioned that juror on that

10   subject matter?

11   THE DEFENDANT:  I had never been through a

12   trial before, okay.  A defendant in a criminal

13   trial relies on the advice of his attorney.

14   THE COURT:  Did you and your attorney

15   discuss that?

16   THE DEFENDANT:  Yes, sir, we did.  I

17   informed my attorney that I knew the juror, my

18   attorney told me, he says don't worry about it.

19   Maybe he felt he had an added advantage.  I

20   don't know what his reasons were.

21   THE COURT:  Did you ever discuss that with

22   your attorney?

23   THE DEFENDANT:  We never had time before.

24   You know, it was only at that brief moment, and

A-3

1    then --

2         THE COURT:  How about during the course of

3    the trial, did you ever discuss it with your

4    attorney?

5         THE DEFENDANT:  I never did have an

6    opportunity to discuss it with him because the

7    matter never came up, I was TAOP focused on

8    what the witnesses were saying and --

9         THE COURT:  At what point in time did you

10   discover or begin to recollect how it is that

11   you knew him?

12        THE DEFENDANT:  Well, probably the last

13   day of trial or the last two days of trial, he

14   wouldn't make eye contact with me.  I had

15   watched every single juror and he was sitting

16   in that chair, one, two, three, fourthchair

17   from there, and this guy here was sitting here.

18        THE COURT:  Which chair?

19        THE DEFENDANT:  It is the fourth chair

20   from the left, would be your left.

21        THE COURT:  In the back row?

22        THE DEFENDANT:  Right.

23        THE COURT:  And this guy here, he was

24   crouched down and I was sitting there where

A-4

1    this attorney is and he was crouching down so
2    he could not make eye contact with me.
3        THE COURT:  Is it during the last two days
4    you then remember where you knew him from?
5        THE DEFENDANT:  It was the 29th after I
6    got home.  No, I told my attorney that I knew
7    him from Mattison Technologies, but I didn't
8    have all of my notes from Mattison.  See, I
9    keep notes, I keep papers, but I don't have a
10   real good filing system at home and I don't
11   know -- well, yeah, I did inform the Court that
12   I had a bout with lead intoxication which
13   affected my memory.
14       THE COURT:  When did you recall though
15   that you remembered another machine repairman
16   on the jury?
17       THE DEFENDANT:  I would say probably after
18   the jury was excused, after I got home and
19   looked at my notes and read the letter from
20   Mattison Technologies.
21       THE COURT:  You mean after the verdict?
22       THE DEFENDANT:  Yes.
23       THE COURT:  After that time did you
24   discuss that with Mr. Martinez?

A-5

1    THE DEFENDANT:  Yes, I did, when I talked

2    to him on the phone -- no, -- yeah, when I

3    talked to him on the phone I believe I

4    discussed it with him on Saturday.

5    THE COURT:  Why do you think now we should

6    allow you to inquire of that juror when that

7    could have been done before trial?

8    THE DEFENDANT:  Well, for the simple

9    reason that I relied on my attorney, I relied

10   on the expertise of my attorney and my attorney

11   refused to pose those questions during the voir

12   dire.  I was not able to represent myself.

13   THE COURT:  Then let me ask you this,

14   Isn't it an issue of whether or not your

15   attorney was guilty of ineffective assistance

16   of counsel as compared to whether or not you

17   ought to be able to have a hearing on whether

18   or not that verdict should be impeached?

19   THE DEFENDANT:  Well, yes and no.  I

20   believe that question could be answered both

21   ways.  It does affect the ineffective

22   assistance of counsel, it does reach to that

23   point, but it also affects that the juror

24   explicitly.  When he was questioned if he knew

A-6

1   me he said no he didn't, he said no, and I

2   believe that there was a hidden motive for

3   this, and I believe in the matter of Gaston

4   it's brought out, what was his motivation I

5   mean.

6       THE COURT:  What do you believe his

7   motivation would be?  Did you ever have a

8   personal relationship with him at work to the

9   point that the two of you ever got in an

10  argument?

11      THE DEFENDANT:  I believe that because of

12  the way in which I was terminated from Mattison

13  Technologies.  I was terminated there because

14  of suspected drug use, okay.  That could have

15  an affect on him.  I was also making more

16  money.

17      THE COURT:  That doesn't answer the

18  question.

19      THE DEFENDANT:  He could say that I was a

20  drug addict.  You have to couple this with the

21  other things that happened during the trial.

22  The first witness in the trial said I was

23  imprisoned, before the whole jury, the whole

24  jury heard that, and all the admonishments in

A-7

the whole world are not going to remove that from their minds, especially one who had prior knowledge of a possible criminal offense that he play have thought that I committed, and that would lay weight to motivation, to his motivation. I wouldn't even answer and say why the juror would have that hidden motivation or if there was a motivation, but I don't think that the Court can answer that question either. I think that question has to be posed directly to the juror.

THE COURT: Mr. Salemi, are you familiar with People versus Witt?

MR. SALEMI: No.

THE COURT: People versus Witte, 115 Ill. App. 3d 20. I believe Mr. Weilburg cited it or I found it in my legal research. The interesting thing is that comes out of our Circuit. In that case during voir dire the trial Court addressed questions for the jury and a group of jurors and -- the Judge was apparently doing it in groups -- because it says "a group which included Devine, among other questions, the Court asked whether any

A-8

34

1    prospective jurors had any friends or relatives

2    on the police force.  Several of the jurors

3    related their acquaintances with police force.

4    Juror Devine did not come forward.  He later

5    became foreman of the jury.  He concealed the

6    fact that he had acquaintances and friends

7    employed by the Winnebago County Sheriff's

8    Department in an attempt to conceal prejudice

9    in that respect in favor of the prosecution.

10   The further allegation was made that Devine

11   stated during the jury's deliberations, "let's

12   get the thing over with.  If the defendant is

13   not guilty he can always get the case reversed

14   on appeal.

15        In the hearing before the Court on a

16   motion for new trial Defendant's counsel sought

17   permission to elicit testimony from Devine and

18   another juror.  On page 30 of the opinion it

19   indicates the record does not indicate whether

20   the defendant had exhausted his preemptory

21   challenges.  The Defendant in this case had not

22   exhausted his preemptory challenges.  He could

23   have used a preemptory challenge if he didn't

24   wanted Mr. Murray on the jury.  It seems

A-9

1    similar in that he probably had not exhausted

2    his preemptory challenges, they don't know.

3        MR. SALEMI:  You are saying the attorney

4    would have raised that?

5        THE COURT:  It says where a defendant does

6    not learn of facts which might support a

7    finding of partiality by a juror until after a

8    verdict, a post trial evidentiary hearing maybe

9    necessary to permit defendant to prove actual

10   bias.  The intention of a juror at the time of

11   voir dire is, for those purposes, of little

12   importance if important circumstances remain

13   undisclosed.  In all cases the allegations must

14   be sufficiently specific, detailed and

15   nonconjectural so the fact of the prejudice is

16   raised; but any doubt should be resolved in

17   favor of granting the evidentiary hearing.  And

18   they are citing McCoy versus Goldstein, which

19   is a Federal case out of the Sixth Circuit, 652

20   F.2d 654.

21       That case seems to say that any doubt

22   should be resolved in favor of granting an

23   evidentiary hearing, but I guess the one issue

24   here is in that case clearly the defendant did

A-10

1    not learn of the fact until after a verdict.

2    In this case we have got a Defendant who knew

3    of the facts before.  I have a hard time with

4    allowing you to have a hearing when you knew

5    the facts before.  We have gone through the

6    expense of a trial.  Had those been raised to

7    the Court -- I mean this is something you could

8    have raised, and now I know you are telling me

9    your attorney didn't raise it, but I think that

10    goes to the issue of ineffective assistance of

11    counsel.  I don't see how you can now come in

12    and complain, we have gone to the expense of a

13    trial in this case, and now because you didn't

14    disclose something that you did know we are now

15    faced with the possibility of going through a

16    new trial on it or to an evidentiary hearing.

17        MR. SALEMI:  I can't say it any better

18    than that.  I can't argue it any clearer than

19    that.  That's what I said initially when we

20    began probing this matter, and I will remain on

21    that argument right now.  Since he had

22    knowledge he is not in the line of cases like

23    Witte or Cole, or anything else.  He tried to

24    use that knowledge to his advantage during the

A-11

1   trial, was unsuccessful, and he is now trying

2   to use that knowledge again to his advantage to

3   try to attack the verdict by interrogating

4   jurors, and you shouldn't allow it.

5        THE DEFENDANT:  I disagree, your Honor, I

6   believe in the People versus Gaston.

7        THE COURT:  What's the case number on

8   that?

9        THE DEFENDANT:  125 Ill. App. 3d.

10       THE COURT:  Just a minute.

11       THE DEFENDANT:  Page 7.

12       THE COURT:  Okay.  You want to quote from

13  it?

14       THE DEFENDANT:  Yes.  The Court in that

15  particular case was discussing the

16  cornerstone -- a defendant's right to a trial

17  by a fair and impartial jury is a

18  constitutional cornerstone of our judicial

19  system.  This right should be guarded

20  zealously; neither a trial judge'S inadvertent

21  omissions nor a juror's failure to divulge

22  possibly pertinent information nor a trial

23  attorney's laxness can be allowed to impair

24  this fundamental right.

A-12

1          So because the trial attorney didn't

2     preempt the jurors and didn't use his

3     peremptory that is a laxness on the attorney,

4     and I believe that this case, the Gaston -- or

5     the People versus Gaston case is right to the

6     point, and it covers both points that I have

7     clearly brought up, and that's the juror failed

8     to disclose his association and the Defendant's

9     counsel was lax in not preempting the juror.  I

10    do not believe that the Defendant can be held

11    accountable for this juror's misrepresentations

12    of the truth or counsel's laxness, and I

13    believe that a new trial should be based on the

14    facts.

15         And again in relating to the People versus

16    Cole, that there are certain relationships that

17    were so direct that prejudice has to be

18    presumed, and I believe that this is a

19    relationship that was so direct that the

20    prejudice has to be presumed by this Court.  I

21    don't believe there could be any question, any

22    doubt that there was prejudice on this juror's

23    part.  He withheld legal information, clearly

24    when asked he replied no he did not know the

A-13

1    Defendant.

2        MR. SALEMI:  His counsel is not lax, and

3    the record bears that out, because at the time

4    of the selection in the matter he says in

5    conjunction with the Defendant we tender Mr.

6    Murray.  They wanted their questioning of him,

7    as you have seen, which was brief.  My

8    questioning was more extensive, and they

9    tendered him.  At no time did Mr. Weilburg tell

10    you or his counsel I don't want Mr. Murray on

11    my jury.  In fact, he told his counsel that Mr.

12    Murray was an acceptable juror.

13        THE COURT:  As far as the motion for a

14    post trial evidentiary hearing, I find that, as

15    far as the cases submitted and those that I

16    have reviewed, that this case is

17    distinguishable because the Defendant did not,

18    in fact, inform his attorney that he may have

19    known this juror.

20        As far as impeaching, and I think this

21    motion goes toward impeaching the verdict, that

22    I am going to deny the motion because the

23    Defendant, for the reasons I have already

24    explained, was aware of this and did not bring

A-14

1    it to the attention of the Court,. However, I

2    may reconsider if on a post trial motion on

3    ineffective assistance of counsel. If I find

4    that it raises to the level that I feel that

5    the attorney should have inquired into then I

6    might find that it is relevant and necessary

7    for me -- I mean if Mr. Martinez has an

8    explanation for why he did not and it's trial

9    stratedgy then the Defendant, I believe, has to

10   live with it. If, however, it's because his

11   attorney was ineffective and did something

12   which an attorney would not have done or should

13   not have done I would grant a hearing, an

14   evidentiary hearing on it. I think first we

15   have to go to the issue as to whether or not it

16   was ineffective assistance of counsel.

17        As it stands now I will not grant that

18   Motion. I feel that it maybe relevant though

19   on the ineffective assistance of counsel, and I

20   think some of your motions have addressed that

21   and talked about that, and it may -- in fact, I

22   think it is in the Motion for New Trial.

23        THE DEFENDANT: It's in his Motion for New

24   Trial, he admitted ineffective assistance of

*A-15*

End — 1    counsel.

2        THE COURT:  As far as the Petition for

3    Writ of Habeas Corpus, how much time do you

4    need?  I assume you want to talk to Mr.

5    Danielson first?

6        THE DEFENDANT:  Yes.

7        THE COURT:  I think what I will do is put

8    it on my status call for next Thursday.  Mr.

9    Danielson, I hope, would have an opportunity to

10    confer with you by that time.

11        THE DEFENDANT:  Okay, that would be fine.

12        THE COURT:  And then you can indicate to

13    me whether this motion should be set down,

14    because I would like to do the Motion for New

15    Trial and Habeas Corpus as soon as possible.

16        MR. SALEMI:  Do we have time to do the

17    Motion for Sanctions now?

18        THE COURT:  I prefer not to.  I really

19    don't have time.

20        MR. SALEMI:  We can do it then.

21        THE COURT:  It's on my status call, I

22    prefer to set a date.

23        MR. SALEMI:  That's fine.

24        THE COURT:  He should have the opportunity

Court appoints Attorney Pat Braun to represent Deft.

Deft furnished with copy of Bill of Indictment.

Deft arraigned on Bill of Indictment.

Deft advised of rights and possible penalties.

Deft advised of trial in absentia.

Deft pleads not guilty.

Cause is continued to December 13, 1994 at 9:00 a.m. for

status.

Deft remanded.                                          vw/tmc

**Dec 9 1994**   *Notice of appointment - sent to Attorney Braun*

**Dec 13 1994**   Nielsen DML

No SA present.  Deft in Court in person and by his counsel,

Patrick Braun.  Cause is continued to December 27, 1994 at

9:00 A.M. for status and on January 3, 1995 at 9:30 A.M.

for Jury Trial.

Deft remanded.                                          tlm

*Notice of defts exercising his constitutional right to a fast and speedy trial by a jury of his peers*

**Dec 27 1994**   *Motion to Dismiss*

**Jan 3 1995**   Nielsen KLT

People by ASA Schafer.  Defendant in Court in person and by

his counsel, Attorney Gregory Clark.

Cause continued to January 5, 1995 at 10:30 a.m. for hearing

on Bond Motion.

Defendant remanded.                                     tmc

**Jan 3 1995**   *Motion for Recognizance Bond or Bond Redirection*

**Jan 5 1995**   Nielsen KAA

People by ASA Schafer.  Deft appears in Court in person and

by his counsel, Attorney Patrick Braun

Cause called for hearing on Bond Motio            10/28/94 to 1/5/95 70 DAYS

Court orders Recognizance Bond

Deft to have no contact with victim a

pre-trial services.  Deft advised of trial in ab

**Appendix B**

# ADDITIONAL RECORD SHEET

Case No. ...94-CF-2420...

Nature of Case .....Theft.......................Daro Weilburg........................

Sheet #4

| DATE | JUDGE AND REPORTER | | COSTS | | |
|---|---|---|---|---|---|
| May 8 1995 | Nielsen MSG | ENTRY CONTINUED: Case reset for Jury Trial on July 24, 1995 | | | |
| | | at 9:00 A.M. for Status. Deft given written notice. | dw | | |
| Jul 24 1995 | Nielsen MSG | People by ASA Oseid for ASA Salemi. Deft appears in Court | | | |
| | | in person and by his counsel, Attorney Gregory Clark. | | | |
| | | By agreement, cause is continued to August 28, 1995 at | | | |
| | | 9:30 a.m. for jury trial. | | | |
| | | Deft given written notice in open Court. | vw | | |
| Aug 28 1995 | Nielsen MSG | People by ASA O'Connor for ASA Salemi. Deft appears in | | | |
| | | Court in person and by his counsel, Attonrey Gregory | | | |
| | | Clark. | | | |
| | | By agreement, cause is continued to November 13, 1995 | | | |
| | | at 9:30 a.m. for jury trial. | | | |
| | | Deft given written notice in open Court. | vw | | |
| Nov 13 1995 | Nielsen MSG | People by ASA Salemi. Deft appears in Court in person and | | | |
| | | by his counsel, Attorney Gregory Clark. | | | |
| | | On State's motion Jury Trial continued to January 8, 1996 at | | | |
| | | 9:30 A.M. Deft given written notice. | dw | | |
| Jan 8 1996 | Riggs MSG | People by ASA Smith for Salemi. Deft appears in Court in | | | |
| | | person and by his counsel, Attorney Gregory Clark. | | | |
| | | Leave given deft to file Demand for Speedy Trial. | | | |
| | | State's Motion to continue Jury Trial heard and granted. | | | |
| | | Case reset for Jury Trial on April 22, 1996 at 9:00 A.M. | | | |
| | | Deft given written notice. | dw | | |
| Apr 22 1996 | Riggs MSG | People by ASA Salemi. Deft appears in Court in person and | | | |
| | | by his counsel, Attorney Gregory Clark. | | | |
| | | Cause is continued to June 21, 1996 at 1:30 p.m. for final | | | |
| | | pre-trial conference and July 8, 1996 at 9:00 a.m. for jury | | | |
| | | trial. Deft given written notice. | | | vw |
| Jun 21 1996 | Riggs MSG | People by ASA Salemi. Deft appears in Court in person and | | | |
| | | byhis counsel, Attorney Greg Clark. | | | |
| | | Cause is continued to September 23, 1996 at 9:00 a.m. for | | | |
| 7 4 96 | | Subpoena (3) jury trial. Deft given written notice in open court. | | | v |
| 7 12 96 | | Subpoena | | | |
| Sep 11 96 | | Deft answer to State Motion for Discover | | | |

C000517

Appendix C

AUG. 25, 1999 VOIR DIRE
OF JOHN MURRAY

1          JUROR JOHNSON:  Thank you.

2          THE COURT:  Mike, I will give you his

3    card.  The other jurors are on a recess so why

4    don't we take a recess, if we are giving the

5    jurors a break.  We will start in about 10

6    minutes.

7          MR. SALEMI:  Fine.

8               (Whereupon there was a short

9                recess, after which the

10               proceedings continued in open

11               Court.)

12         THE COURT:  Call a replacement for

13   Maurice Johnson, and I dismissed him for cause.

*START* —14         THE CLERK:  Okay.  List No. 118, call

15   sequence 193, John Murray.

16         THE COURT:  John, do you know any of

17   the witnesses in this case?

18         JUROR MURRAY:  No.

19         THE COURT:  How about any of the

20   participants at all, Defendant, any of the

21   attorneys?

22         JUROR MURRAY:  No.

23         THE COURT:  Any reason why you

24   couldn't serve as a juror in this case?

                                              30

```
 1              A.     21 years.

 2              Q.     And your children, can you tell me

 3       about them, what they do?

 4              A.     My daughter is a teacher in Rockton

 5       grade school, and my son is a senior in college

 6       up in Kenosha.

 7              Q.     Tell me about your job, what you do

 8       on a daily basis?

 9              A.     I am a machine repair mechanic.   I

10       take care of the production machines.   They

11       break done and we repair them.

12              Q.     Daytime shift?

13              A.     Day shift.

14              Q.     And you haven't been doing that for

15       very long?

16              A.     The company I worked for just

17       closed down in January called Madison

18       Technology.

19              Q.     How long were you with them?

20              A.     22 years.

21              Q.     Ever been called down for jury

22       service before?

23              A.     No.   I had, but I couldn't go

24       because I wasn't a citizen.
```

Appendix D-2                          C000228

E-FILED
Wednesday, 28 June, 2006 10:26:58 AM
Clerk, U.S. District Court, ILCD

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
COUNTY OF WINNEBAGO

FILED
Date: 9/26/97
_Marc A. Gasparini_
Clerk of the Circuit Court
By _____ Deputy
Winnebago County, IL

PEOPLE OF THE STATE
OF ILLINOIS,                          )
                                      )
              Plaintiff,              )      CASE NO.:  94 CF 2420
                                      )
       vs.                            )
                                      )
DARO C. WEILBURG,                     )      WITHDRAWN 7/19/99
                                      )
              Defendant.              )      **MOTION FOR A NEW TRIAL**

**NOW COMES** the Defendant, DARO C. WEILBURG by his attorney,
FRANCIS M. MARTINEZ, and moves this Court to vacate the finding of the jury and
grant the Defendant a new trial and on behalf of his motion states:

1.     It was error for the Court to deny the Defendant's Motion to Declare a
       Mistrial after the State's witness made a statement.

2.     It was error to allow Lonnie Cochran to testify a second time as to his
       identification of the photograph of the Defendant.

3.     It was ineffective assistance of counsel for defense counsel to not excuse a
       juror, John Murry, because of an alleged acquaintance with the defendant.

4.     It was error for the Court to allow the testimony of Chris Davis as expert
       testimony that certain items found in the abandoned RV could only be
       used to work with jewelry.

5.     It was error for the Court to deny the Defendant's Motion for Directed
       Verdict at the close of the State's case.

**WHEREFORE,** the Defendant prays that this Court grant this Motion for a New Trial.

DARO C. WEILBURG, Defendant

BY: *Francis M Martinez*
(FRANCIS M. MARTINEZ, His Attorney)

FRANCIS M. MARTINEZ #362
SEVENTH STREET LAW OFFICES
311 Seventh Street
Rockford, IL 61104
(815) 964-7933

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause by depositing a copy thereof in the U.S. Mail, postage prepaid, in envelopes addressed to each of the attorneys of record herein at their respective addresses disclosed on the pleadings, on ___September 26___ , 19 97

*Marie A. Hagerman*

C000172

Appendix E-2

*JUROR John Murray ISSUE.*

**DARO WEILBURG**

DARO WEILBURG
1226 17th, Avenue #6
Rockford, Illinois 61104
Winnebago

Fax 815-964-5722
Home Phone 815-964-5722
Email Daro@Rockford.Com

September 01, 1997

Honorable Michael P. Morrison
Judge of the 17th Judicial Circuit Court
401 West State Street
Rockford, Illinois 61101

RE. *People vs. Weilburg*, 94 CF 2420

Dear Judge Morrison,

Please be advised that this is not an exparte communication. I have dispatched copies to both Mr. Scott Salemi and Mr. Frank Martinez.

While, I was not impressed with Mr. Salemi's intentional introduction of my past imprisonment to the jury. I do not herein argue that shoddy tactic. Nor, do I wish to argue the fact that Mr. Salemi tampered with the testimony of Mr. Lonnie Cochran. I do not wish to attack the questionable closing statement from Mr. Martinez of "Show me and you got us!" It was obvious that he should have been the prosecutor.

Those elements are best served on any appeal that may result. I will take this opportunity to address a tainted jury that could have been prevented had my attorney informed the court that I personally knew one of the jurors and had worked with that juror for a little under 6 months.

The Juror in question was Mr. John Murray. He and I worked at Mattison Technologies, Inc., from August of 1995 through January 1996. I was a Service Engineer and he was a Maintenance man. We did not work in the same department, but saw each other on a daily basis.

I was terminated from Mattison Technologies on February 28, 1996, for suspected use of marijuana. (See enclosed letter dated February 28, 1996 from Mattison Technologies). I had worked under the auspices of Gaffney Employment Services. Mattison paid Gaffney and Gaffney paid me. I took a second test, passed said test but, decided against remaining at Mattison because Mattison had financial difficulties. They filed Bankruptcy a short time later and eventually went out of business.

None-the-less, it was a small shop and news of terminating an employee for suspected drug use travels fast. I do not know why Mr. Murray failed to inform the court that he knew me. When I brought the matter to Frank Martinez' attention. He told me to remain silent unless asked by the court if I knew any of the jurors. I was never asked. (See my jury selection notes)

I would have brought this matter up sooner but, I needed to find the attached letter to prove my association with Mr. Murray. If Mr. Murray informed others jurors of that past event I could not have

*Appendix F*

received a fair and impartial trial. Even if Mr. Murray said nothing to the other jurors, if he used it to formulate his own verdict I was still not afforded a fair and impartial trial as prescribed by law.

I have presented this issue in letter form because technically, I am still represented by an attorney. I also felt that I would allow the court to investigate on its own and move of its own volition. I believe that sufficient grounds exist to vacate/overturn the courts entering judgment of guilt, the jury's verdict and order a new trial.

I do not wish to proceed in pro per at this time. Based on the prior trial results I certainly couldn't do much worse by representing myself. However, I am still inclined to utilize the services of a lawyer.


RESPECTFULLY SUBMITTED this 2nd. day of September, 1997 by certified mail.

*Daro Weilburg*

DARO WEILBURG

CC  Mr. Scott Salemi
    Mr. Frank Martinez

Appendix F-2                                    C000248

EXHIBIT 2

## MATTISON TECHNOLOGIES INC.



February 28, 1996

Daro Weilburg
1226 17th Avenue
Rockford, IL  61104

Dear Daro:

Regarding our conversation of this afternoon about the results of your drug test, as we discussed, we are unable to proceed with the hiring process due to a positive drug result. You indicated that you would go to a lab of your choosing and not back to Physician's Immediate Care for another drug test as you said you did not do drugs.  While we may receive a favorable result from this 2nd test, it does not ensure you being hired at Mattison.

Since our conversation ended rather suddenly, I was unable to give you the following information.  Because you have been working with Mattison for the past several months, we would like to afford you the opportunity, if you wish, to speak to Dr. Koehler.  You may call Physicians Immediate Care at 874-8000 and schedule an appointment with Dr. Koehler.  There is a $20.00 fee for this consultation.  He will go over the results of your test with you and answer any questions you may have.  If it is determined that your drug screen showed positive due to reasons that are satisfactory to Dr. Koehler and to Mattison, the hiring process will proceed and Mattison will then pay the $20.00 consultation fee.  However, it is Mattison's policy that a positive drug screen prevents the potential new hire from being considered for employment for a twelve month period following the screening.

Please contact me if you have any questions.

Sincerely,

*Shelly J Volden*

Shelly J. Volden, PHR
Human Resource Manager

Appendix G

545 BLACKHAWK PARK AVE. • ROCKFORD, IL 61104 • PHONE 815/962-5521 • FAX 815/962-5568

TESTIMONY OF Jesenia NEGRON, August 26, 1997
and Colloquy in chambers

```
 1   days, and my mom decided to give up everything that

 2   she had worked for in Massachusetts and move out to

 3   Arizona to take care of him.

 4        Q    In Arizona, that's where she got the job

 5   then managing the apartment complex?

 6        A    Eventually.

 7        Q    Do you know how she came into contact with

 8   the Defendant?

 9        A    She hired him.  I suppose that he must

10   have filled out an application, and she accepted.

11        Q    Eventually did the Defendant do

12   maintenance work at the apartment complex your

13   mother managed?

14        A    Yes, he did, that was his position.

15        Q    Jesenia, back then when the Defendant was

16   working maintenance for your mother, what line of

17   work was he in besides maintenance?  Was there

18   anything else, any other line of work he was

19   involved in back then that you were aware of?

20        A    From what I understand he had recently

21   been released from prison.

22             MR. MARTINEZ:  Objection, Judge.

23             THE COURT:  Sustained.  The jury is

24        ordered to disregard that.

25             MR. MARTINEZ:  Judge, may we approach?
```

000767

Appendix H



CASE NO:

94-CF-2420

## DEPARTMENT OF COURT SERVICES

# PRESENTENCE REPORT

**NAME:**   WEILBURG, Daro Christopher

**PRESENT OFFENSE:**   Theft Exceeding $10,000.00 (Class 2 Felony)

| PLEA ENTERED | IN CUSTODY | CODEFENDANTS: |
|---|---|---|
| NOT GUILTY [X] | [X] SINCE: 09/15/97 | |
| GUILTY [ ] | [ ] OUT OF CUSTODY SINCE: | |

**DATE OF SENTENCING**   November 3, 1997, at 9:30 am

**NAME OF JUDGE**   Michael R. Morrison

**STATE'S ATTORNEY**   Scott G. Salemi

**DEFENSE ATTORNEY**   Francis M. Martinez

**PRESENTENCE INVESTIGATOR**   Stephen V. Smith

# DISPOSITION —

PRESENTENCE REPORT

DARO CHRISTOPHER WEILBURG                    CASE NO.:  94-CF-2420

I.   PRESENT OFFENSE

(X)  As of this writing, no statement of facts has been
     received from the Winnebago County State's Attorney's
     Office.
( )  The following statement of facts was received from the
     Winnebago County State's Attorney's Office:
==================================================================
II.  VICTIM CONTACT

( )  Not applicable.
( )  No victim information has been received as of this
     writing.
( )  Please  refer to the attached victim impact statement.
(X)  Victim information is as follows:

Ms. Barriga was contacted by telephone on 09/08/97.

She stated the theft had a severe impact on her, not only
financially, but mentally as well.  Estimated total loss as of this
date exceed $150,000.  $26,000.00 had to be repaid to suppliers and
customers.

Ms. Barriga stated she was hospitalized for two days following the
theft for a mental breakdown.  She also suffered memory loss for
two months and was able to regain her memory only through intense
therapy.

Last summer Ms. Barriga moved her business to 3504 E. State Street,
Rockford.  She operates the store by herself because she cannot
trust anyone to work for her at this point.

When asked what she would like the Court to impose for a punishment
on the defendant, Ms. Barriga stated she believes the wrong person
was convicted.

She believes the mother and daughter were responsible, along with
another employee who took his lunch earlier than he normally did
the day of the theft.

Jesenia Negron, the co-defendant and ex-employee who committed the
theft, asked Ms. Barriga for forgiveness last month, but Ms.
Barriga didn't believe she was sincere and could not forgive her.

1

Appendix I-1                                      C000177

Peoples EXHIR. 3

# Susan's Jewelry
### WHOLESALE JEWELRY

P.O. Box 44-1699
Miami, Fla. 33144

TELEPHONE:
(305) 226-9888

Date: 12/5/ 19 91

Name: Norms' Jewelry

Address: 527 W. Main
Rocford Il 61103

Phone: (815) 965.6787

| QUAN. | UNIT | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|---|
| 1 | pc | Zirline Gole 14 x | 22.00 | 22.00 |
| 2 | pc | Tario's Ring x | 49.00 | 98.00 |
| 51.00 | | Awillos Ring x | 14.80 | 754.80 |
| 5.15 | pr | Medallon Queen x | 15.50 | 79.87 |
| 10.52 | pc | Awillos Fancy x | 17.80 | 181.55 |
| 2.49 | pr | Placa Santo x | 15.75 | 39.96 |
| 1.40 | pc | Arettes Fancy Dim | 12.75 | 17.837 |
| 5.37 | pc | Dzs Oriano x | 12.85 | 17.71 |
| 20.50 | pc | Aros Tick x | 14.95 | 306.47 |
| | | | | 1521.39 |
| | | Norma Borrica | | |
| | | | TOTAL | |

Appendix J

C000319

Peoples Exhibit 4

# Susan's Jewelry
**WHOLESALE JEWELRY**

P.O. Box 44-1699
Miami, Fla. 33144

TELEPHONE:
(305) 226-9888

Date: _3/26/_ 199_2_

Name: _Adonis' Jewelry_

Address: _527 W. Main_

_Rocford Il. 61103_

Phone: _815. 965 6282_

| QUAN. | UNIT | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|---|
| 73 7/10 | Dz | Anillos Fancy | 17 25 | 6887 |
| 6.70 | Dz | Argolita Baby | 17 50 | 1175 |
| 5.10 | Dz | Patitas con medalla | 16 40 | 8364 |
| 2.70 | Dz | Roarca pie | 16 50 | 445 |
| 18.00 | Dz | Medalla I | 14 70 | 2646 |
| 3 | Dz | Maritas | 1 50 | 460 |
| 2 | | Guru Negro | 4 00 | 88 |
| 3 | | Cauotry | 18 00 | 54 |
| 6 | | Medalla Grd | 17 75 | 1050 |
| 9 | | Medalla pe | 4 75 | 475 |
| 2 | | Trios pe | 14 00 | 1400 |
| 8.00 | Dz | Dije cato | 12 50 | 1270 |
| 4.20 | Dz | Argollas fabril | 14 90 | 638 |
| 3.80 | Dz | | 14 50 | 3480 |
| 5.10 | Dz | Chala | 14 40 | 1025 |
| 4.60 | Dz | Anillos pe | 14 50 | 6770 |
| 9.00 | Dz | Anillas Grd | 15 50 | 13950 |
| (1870) | | pe (1110) | (15 50) | 15585 |
| (1780) | | pe (1391) | (37 50) | 36530 |
| | | | | 20137 |

NuGold Bow TOTAL

Peoples EXHI T 2

## Susan's Jewelry
WHOLESALE JEWELRY

TELEPHONE:
(305) 226-9888

P.O. Box 44-1699
Miami, Fla. 33144

29.50
12.00
1.90

Date: 8/29/ 19 91

Name: Normas Jewely

Address:

Phone: ( Continuacim )

| QUAN. | UNIT | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|---|
| 3 | dd | Arabral Cte | 1 50 | 4 50 |
| 6 | dd | Ambrah dej Crj Crod | 3 40 | 20 40 |
| 6 | dd | Ambrd Cte | 1 90 | 11 40 |
| 3 | | Argallr Hrnbe | 5 25 | 15 75 |
| 3 | | Ofir 3 Arrullo | 11 35 | 34 01 |
| 3 | | Ambrch Cte cy | 1 50 | 4 50 |
| 11 00 D | | Arrillos Rg | 14 75 | 118 08 |
| 6 00 D | | Arrillos Rg (3Mirm) | 16 75 | 97 87 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | Pasa Barros | |
| | | | TOTAL | |

Appendix J-2

Ex D
(Cont)

People's EXHIBIT 6

# Susan's Jewelry
### WHOLESALE JEWELRY

P.O. Box 44-1699
Miami, Fla. 33144

TELEPHONE:
(305) 226-9888

Date: 6 - 13 - 1991

Name: _Alex mas Jewelry_

Address: _527 W. State_

_Rocford, Ill_

Phone: _____

| QUAN. | UNIT | DESCRIPTION | PRICE | AMOUNT |
|-------|------|-------------|-------|--------|
| 48 | | Argolla Fancy 14kr | 16.15 | 79.94 |
| 8 | ct | Medium L 14kr | 7.50 | 60.00 |
| 44.75 | | Nicllo Ring 14kr | 15.40 | 689.15 |
| 36.75 | | Nicllo Fols 14kr | 18.45 | 678.68 |
| 49.55 | | Malillas 14kr 14kr | 15.85 | 736.95 |
| 16.36 | | Casting Cm Medium | 15.75 | 248.99 |
| 15.95 | | Casting Ring | 18.55 | 166.88 |
| 2 | | Uros Mc Beads | 19.75 | 39.__ |
| 2 | | Urios 14k | 18.5 | __ |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | _Vania Bock_ | |
| | | | | |
| | | | | |
| | | | | |
| | | | | TOTAL | |

Appendix J-3

C000322

People's EXHIBIT 7

# Susan's Jewelry
### WHOLESALE JEWELRY

P.O. Box 44-1699
Miami, Fla. 33144

(305) 226-9888

Date: 11/7/ 19 91

Name: Norms Jewelry

Address: 527 W. Main

Rocford Il. 61103

Phone: 815. 965. 6484

| QUAN. | UNIT | DESCRIPTION | PRICE |
|---|---|---|---|
| 3L 30 | Ds | Dijo Caster 14kt | 497 35 |
| 6660 | Ds | Abrillos Rq 14kt | 984 35 |
| 4890 | ar | Medallos I 1550 | 597 95 |
| | Ds | Argollos Rq 14kt | 550 00 |
| 190 | Ds | Argollos Rq Blue 1490 | 78 31 |
| | Ds | Argollos chico 14k | 762 |
| | | | 60 |
| | | | 93 50 |
| | | | 130 48 |
| | | | 188 |
| | | | 86 18 |
| | | | 50 21 |
| | | | 789 76 |

C000323

PEOPLES EXHIBIT

## Susan's Jewelry
### WHOLESALE JEWELRY

P.O. Box 44-1699
Miami, Fla. 33144

TELEPHONE:
(305) 226-9888

Date: 2-28 19 91

Name: NOYMA Jewelry

Address: 527 W Main Rocford

Chicago IL

Phone: _____

| QUAN. | UNIT | DESCRIPTION | PRICE | AMOUNT |
|-------|------|-------------|-------|--------|
| 630 | dwt | Argollas Fancy | 15 90 | 100 17 |
| 48 | | Fine Casting | 13 25 | 658 80 |
| 24 80 | | Anillos Fancy | 16 50 | 409 20 |
| 82 5 | " " | R | 15 95 | |
| 5.6 | | Argollas | | |
| 2 | | Set Anillo S/p | 3500 | |
| 2 | | S/p | 7100 | |

Appendix J-5

C001324

1  Daro Weilburg
   PO Box #3132                                    *10  6  99*
2  Rockford, IL 61106
   In Propria Personam
3
                                                      *8*
4

5

6

7

8                     STATE OF ILLINOIS

9       IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT

10                   COUNTY OF WINNEBAGO

11                                  )
12  PEOPLE OF THE STATE OF          ) No. 94 CF 2420
                                    )
13  ILLINOIS,                       )
                                    )
14       Plaintiff,                 ) STATEMENT OF DEFENDANT ON
                                    )
15       vs.                        ) EXERCISING HIS CONSTITUTIONAL
                                    )
16  DARO WEILBURG,                  ) RIGHT OF LIBERTY ABSENT DUE
                                    )
17  _____Defendant_____   PROCESS OF LAW

18       COMES NOW the Defendant, **DARO WEILBURG**, in *pro per* and

19  hereby provides his statement on exercising his Constitutional

20  right to liberty absent due process of law and for his statement

21  sets forth as follows:

22

23              **STATEMENT OF DARO WEILBURG**

24       On September 3, 1999, this court, contrary to the rulings as

25  dictated by the higher courts including, but not limited to, the

26  United States Supreme Court, denied the Defendant's Motion for a

27  New Trial.  Subsequently, ordering the Defendant to be sentenced

28

                    Appendix K                    C000350

1   on September 30, 1999 for a crime that the defendant is not
2   guilty of committing.

3       The numerous U.S. and Illinois Constitutional violations of
4   the Defendant's rights were presented by the Defendant and are
5   hereby juxtaposed as follows:

6           1) Denial of a Fast and Speedy Trial;

7           2) Ineffective assistance of counsel;

8                   A. Allowing a juror to sit in judgment over
9                       the defendant with a close association to
10                      Defendant;

11                  B. Not allowing the statement of Jesenia
12                      Negron that the Defendant had been
13                      recently released from prison to be read
14                      back during a colloquy in chambers and not
15                      ordering a new trial;

16          1) Unlawful prompting of a State's witness by the
17              Prosecutor to prejudice the jury against the
18              Defendant;

19          2) Prosecutorial misconduct by deceiving the Court into
20              believing the Defendant had a violent past in order
21              to deprive the Defendant of his freedom on bond;

22          3) The Trial Court's fundamental error of allowing a
23              witness Lonnie Cochron, to change his testimony;

24          4) The trial Court's error of allowing fictitiously
25              addressed invoices to be allowed into evidence;  And,

26          5) The Trial Court's failure to act upon misconduct by
27              an officer of the Court, to wit, Frances Martinez who
28              clearly violated the Code of Professional

Appendix K-1

1    Responsibility and Cannon of Ethics by allowing a
2    juror with an association to the Defendant to sit
3    upon a jury in judgment over that Defendant.

4

5    The Defendant is innocent of the charges he stands convicted
6    of, and he can prove it. The evidence does not justify upholding
7    a conviction that for all practical purposes is a mockery of
8    justice.
9    Contrary to this court's ruling of "There is so much
10   overwhelming evidence in this case!"  The Defendant has the
11   transcripts, and there is absolutely no evidence against the
12   defendant.  Other than the testimony of a disgruntled convicted
13   teenager trying to blame the world for her shortcomings.
14   In re: **THE PAWN TICKET**  Neither this court, nor the
15   Assistant District Attorney, nor the jury are handwriting
16   specialist so the signature on the pawn ticket is not proof of
17   who signed it!
18   The other testimony and evidence, does not indicate the
19   Defendant is guilty either solely or collectively.  And to hold
20   so, goes against everything the U.S. and the Illinois
21   Constitutions prescribe.
22   In re: **JEROME VESECKY, Witness for the State:**        This
23   Defendant has an eyewitness who can place him at the trailer park
24   at the time of the alleged offense.  The People's own witness,
25   Mr. Jerome Vesecky, spoke with the Defendant on the morning of
26   June 24, 1994, while Jesenia and Noemi Negron were robbing the
27   Jewelry Store.  Noemi and Jesenia had the only car and the
28

Appendix K-2                                                  C000352

1  Defendant spoke with Mr. Jerome Vesecky regarding a Direct
2  Current Converter within the motor Home which had to be replaced.
3      This court heard testimony from Frances Martinez, the
4  Defendant's Trial Lawyer that he only pretried one of the state's
5  numerous witnesses.
6      The Defendant was at the Trailer Park, without a car, he
7  could not have been at the jewelry store with Jesenia and Noemi.
8  Regardless of procedure, and hearings, this Defendant is
9  innocent.
10      This court held that because the Defendant gave a fictitious
11  name at the trailer park that it was evidence against him.. It
12  is not illegal to give a fictitious name, so long as no one is
13  defrauded and certainly, Mr. Jerome Vasecky testified the
14  Defendant did not defraud him.
15      In 1949, a convicted felon, imprisoned within the state of
16  Washington, escaped from the Walla Walla State Penitentiary.
17  During the interim of this escape, a prison guard was killed.
18  This prisoner obtained proof of his innocence while he was on the
19  loose.  When he was finally apprehended, he was eventually tried
20  and sentenced to death.  Sounds reasonable, but that ruling of
21  that court holds a  special interest in this case at bar.  The
22  concept of that Washington court's ruling is applicable in this
23  case.  That prisoner made a fatal mistake in judgment, he took
24  another prisoner with him who was guilty of the crime he
25  committed.
26      Subsequently, that Washington court held that, if he had not
27  taken the other prisoner with him, he had the right to escape and
28  he had the right to even take a prison guard's life in the

Appendix K-3

C000353

1  process of that escape, because he was innocent of that crime. Be
2  that as it may,  he was guilty of aiding and abetting an escape
3  and he was also an accessory to murder because of the other
4  prisoner he took with him.  This defendant is likewise innocent!

5  All of the evidence in this case could have been refuted by
6  competent effective counsel.  Unfortunately, the Defendant was
7  represented by an idiot who defended the Prosecutor better than
8  his own client, an officer of the court who violated the Rules of
9  Professional  Conduct  and  the  Cannon  of  Ethics  by  his  own
10 admission.   He  even  misrepresented  the  truth  upon  the  stand
11 regarding whether the Defendant intended to take the stand on his
12 own behalf during the trial.

13 This court held that the evidence was overwhelming.  Citing
14 the canisters of propane found in the motor home, not realizing
15 that the defendant was in Maintenance and used the propane to
16 solder copper piping as part of his job..  This court held that
17 the pawn ticket was evidence..  Thus, this court set itself up as
18 an expert in handwriting analysis.  The pawn ticket does not bare
19 this defendant's signature, Plain and Simple!

20 This court did not take notice that only women's clothes
21 were found in the motor home and nothing of the defendant's…. Of
22 course, the defendant's idiot attorney didn't bring that out at
23 trial, nor did this court consider that the defendant was in
24 Rockford when he was apprehended.   This court stated that it
25 could not understand why Jesenia came back to Rockford to testify
26 against the Defendant, but ignored the fact that the defendant
27 never left Rockford and had no jewelry on his person.   Jesenia
28 Negron admitted pawning jewelry all across Arizona/Texas and

Appendix K-4

C000354

California, this defendant didn't pawn any jewelry. There is one other factor why the defendant has chosen to take this avenue. He has filed a Civil Rights Complaint pursuant to Title 42 USCA Section 1983 against the Sheriff of Winnebago County and other officers of the Jail. He fears for his life and well being and cannot allow this court to send him back to the defendant's listed in his civil rights complaint. This Defendant could not allow himself to again be kept from fresh air or made to suffer pain waiting three days for aspirin or kept from access to a law library when other people have full access or kept from his religious beliefs while others are allowed to practice their convictions or religious beliefs.

This Court can sentence this Defendant as it has authority to do so, but, it will have to do so in abstentia. According to the Inalienable right perfected by the US Constitution of Liberty this Defendant has chosen his liberty because he is innocent!

While fighting this case for almost five (5) years this defendant was a model citizen of Rockford, even a hero when he assisted in saving three (3) lives from a fire at Eighth and Broadway Streets in Rockford.

This defendant worked hard and received lead intoxication from a local Rockford business, after that business learned of the Defendant's ailment, they terminated him. This defendant informed the court that he had lost part of his memory before the trial and at that time requested counsel be appointed to represent him. The counsel appointed to represent the defendant was ineffective and incompetent. This counsel even misrepresented the truth while under oath.

Appendix K-5

C000355

1    This court has the authority to sentence this Defendant but,
2    cannot justifiably hold that he is guilty, quite frankly there is
3    no evidence against this defendant that any competent effective
4    attorney couldn't refute in any court of law.

5    This Defendant demanded a Fast and Speedy trial.  HE was
6    denied the same.  He demanded a New Trial and had ample case law
7    and statutory law to support his demand.  He was denied a fair
8    trial...he was denied a fast and Speedy Trial.

9    This Defendant will not allow this court to again take away
10   his freedom for the third time, for a crime that happened 20
11   years ago.  For a crime that this Defendant paid for and served
12   his time.  Jeopardy attaches and that Jury heard this Defendant
13   had been  released from Prison by the State's prompted witness.

14   While I am free, I will commit no crimes just as I have been
15   a model citizen here in Rockford, I will continue to do so and
16   when this court's arm reaches me one day.  I hope and pray that
17   it will see the error of it's way and grant me a new trial.  I am
18   totally and unequivocally innocent of this crime.  I must flee
19   to protect my rights.  I do so reluctantly and with remorse
20   because I know in my heart I am innocent but, because of
21   incompetent counsel, lead intoxication at the time of trial, and
22   ineffective assistance of Counsel...a Jury was duped into finding
23   me guilty.  I am forced to leave a good life here in Rockford.
24   Just since being released in October of 1998, I had made a great
25   comeback from the cell block I was unlawfully imprisoned within.
26   I never missed a day of work and, made the company I worked for
27   thousands of dollars.

28

Appendix K-6

C000356

1   I cannot let my freedom be taken again absent due process of
2   law.   Yes, I could await an appeal, but, I would lose everything
3   I had worked for and I would rather start over somewhere else
4   even to the point of constantly looking over my shoulder then to
5   face the peril of being put in jail/prison for something I did
6   not do, then to be placed in jeopardy and in the custody of
7   Defendant's in a Civil Rights Complaint and wonder each night
8   what they might do to me because I exercised my constitutional
9   rights to civil redress.

10   I will start over somewhere else.   In the back of my mind, I
11   will be haunted by the knowledge that I am wanted for a crime I
12   did not commit! I will be taunted with the fact that justice
13   eluded me by one incompetent-ineffective lawyer who sold me out
14   at trial!

15   On two separate occasions my freedom was stripped from me
16   without reason.   Once on October 28, 1994, when I was arrested
17   for this crime I did not commit because a teenager said I did it!
18   Your honor made a statement regarding why Jesenia Negron would
19   come back to Rockford when she could have gotten away.   But, your
20   Honor failed to mention that I was here too, working, making my
21   own way.   Why?   Why would I stay here in Rockford when I too
22   could have made my way anywhere else?   Jesenia Negron had a
23   reason to blame me,  she wanted to keep me away from her mother.
24   Call it jealousy, call it revenge.   But, never confuse it as
25   justice.

26   Once again I was stripped of my freedom when the Prosecutor
27   lied in this court regarding a bond hearing on Sept. 15, 1997,
28   wherein he told this court I had violent conviction.   Needless to

Appendix K-7

C000357

1  say, it was after I wrote this court and informed this court that

2  I had known a member of the jury and had informed my court

3  appointed counsel of this acquaintance. I was incarcerated

4  because I spoke up. And, for no other reason!

5      I will not allow this court to strip my freedom a third time

6  for a crime I did not commit. The Constitution of the United

7  States prescribes a fair trial for every citizen. This court

8  knows the Jury was informed by the State's own witness of a

9  previous conviction, that the Defendant had been in prison

10 before, if that fact was on one jurors mind, if just one juror

11 thought I was guilty because I was in prison before, I received

12 an unfair trial.

13     I have the right to liberty and I hereby exercise that right

14 I will not allow myself to be put into prison because I went to

15 prison for another crime in the past. When your Honor sentences

16 me in abstentia, I hope you can say with a clear conscious that

17 not one of those jurors considered the State's very first witness

18 who was prompted to say: "From what I understand, he had

19 recently been released from prison."

20

21     RESPECTFULLY SUBMITTED this 30th day of September, 1999

22

23     BY _Daro Weilburg_

24         DARO WEILBURG

25         In Propria Personam

26

27

28 Original of the foregoing was mailed this
    30th day of September, 1999, To:

Appendix K-8

C000358

1

Clerk of the 17th Judicial Court

2   400 West State Street
Rockford, IL 61101

3

A true copy of the foregoing was mailed this

4   _____ day of September, 1999, to:

5

Wendy Larsen

6   Assistant State's Attorney
400 West State Street

7   Rockford, IL 61101

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Appendix K-10

E-FILED
Wednesday, 28 June, 2006 10:27:37 AM
Clerk, U.S. District Court, ILCD

1              STATE OF ILLINOIS

2    IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT

3              COUNTY OF WINNEBAGO

4    THE PEOPLE OF THE STATE OF )
     ILLINOIS,                  )
5                               )
                     People,    )
6                               )
              vs.               )   94-CF-2420
7                               )
                                )
8    DARO WEILBURG,             )
                                )
9                  Defendant.   )

10

11            REPORT OF PROCEEDINGS in the

12   above-entitled cause in Rockford, Winnebago County,

13   Illinois, in the Winnebago County Court House by the

14   Honorable Michael Morrison, Judge of said Court on the

15   Eleventh day of June, A. D. 1999.

16   APPEARANCES:

17

18            ATTORNEY WENDY LARSON
              appeared on behalf of the People.

19            DARO WEILBURG appeared
              Pro Se.

20

21   Melvyn D. Shutt, CSR
     Lic. No. 084-002004

22

23

24

R001978

Appendix L

1    the case so if you serve anything on Attorney

2    Larson if Mr. Karner comes in it's serve on

3    him, whoever you are serving those on.   I mean

4    I don't know that you would need too -- if you

5    need to serve anything on them Attorney Larson

6    would be the one, and once they notified you if

7    Karner is going to be co-counsel or Karner is

8    taking over for her he can let you know that he

9    is taking over.

10       MS. LARSON:   Judge, also just a detail, I

11   need Mr. Weilburg's current address.

12       THE COURT:   Do we have your current

13   address?

14       THE DEFENDANT:   Yes, sir.   I gave it to

15   Mr. Salemi.

16       THE COURT:   I should have it for sending

17   notices out for the Clerk's office too.

18       THE DEFENDANT:   Post office box 3142 --

19   3132 Rockford 61106.

20       MS. LARSON:   61106?

21       THE DEFENDANT:   Yes, ma'am.

22       THE COURT:   One other thing I failed to

23   address about the thing about proceeding pro

24   se, they point out here a lawyer could provide

(Appendix L-1)

1              STATE OF ILLINOIS

2   IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT

3              COUNTY OF WINNEBAGO

4   THE PEOPLE OF THE STATE OF )
    ILLINOIS,                  )
5                              )
                      People,  )
6                              )
            vs.                )   94-CF-2420
7                              )
                               )
8   DARO WEILBURG,             )
                               )
9                   Defendant. )

FILED
ate: 5-16-05
Marc A. Gasparini
Clerk of the Circuit Court

10          REPORT OF PROCEEDINGS in the

11  above-entitled cause in Rockford, Winnebago County,

12  Illinois, in the Winnebago County Court House by the

13  Honorable Michael Morrison, Judge of said Court on the

14  Thirtieth day of September, A. D. 1999.

15  APPEARANCES:

16

17          ATTORNEY WENDY LARSON
18          appeared on behalf of the People.

19          NO ONE appeared on behalf
20          of the Defendant.

21  Melvyn D. Shutt, CSR
    Lic. No. 084-002004

22

23

24

R002094

Appendix M

1        THE CLERK:  People versus Daro Weilburg.

2        THE CLERK:  I think have you that file.

3    Is that the '94?

4        MS. LARSON:  You had it while were in

5    hearings.

6        THE COURT:  I put a note on it and sent it

7    back.

8        THE CLERK:  That's one we can't find

9    anywhere.  It was in Court last on the 8th, or

10   something.

11       THE COURT:  I can't remember.

12       THE CLERK:  It was indicated that Kate was

13   your Clerk that day, but --

14       THE COURT:  I don't know that Kate stayed

15   in here.  I think I may have made a note on the

16   file so when she came in afterward -- did Kate

17   look for it?

18       THE CLERK:  I spent a couple of hours this

19   morning looking for it and couldn't find it.

20       MS. LARSON:  Well, Judge --

21       THE COURT:  This comes on for the purposes

22   of sentencing.  The Defendant has failed to

23   appear and it's now 2:50 p.m. and it was set

24   for 2:30.  The docket entry says 9:00 o'clock

1    and see if you see a bond sheet?

2         THE CLERK:  There's a bond sheet in here

3    dated October of '98.

4         THE COURT:  That would have been it.

5         THE CLERK:  That would have been -- his

6    address then is 1226 Seventeenth Avenue.

7         MS. LARSON:  I wish I would have taken

8    this down.

9         THE COURT:  What was the bond amounted in

10   that?  I'm sorry, does he have cash?  Do you

11   want to do another one?

12        THE CLERK:  $7,500.

13        MS. LARSON:  These are old.

14        THE COURT:  They have the old statute

15   number on them.

16        MS. LARSON:  Does that affect the

17   legitimacy of the Order?

18        THE COURT:  Probably scratch that out and

19   put -- instead of Chapter 38 put in --

20        THE CLERK:  725 --

21        THE COURT:  725 ILCS-5/and then whatever

22   the section number that's in there.

23        MS. LARSON:  Bond forfeiture day?

24        THE COURT:  November -- Let's use

1      MS. LARSON:  I think I am seeing where you

2  are.

3      THE COURT:  Towards the middle.  Trial in

4  Defendant's absence shall be by jury unless the

5  Defendant has previously waived trial by jury.

6  The absented defendant must be represented by a

7  retained or appointed counsel.  The problem is

8  he was pro se, and while it speaks to a trial I

9  would assume that for sentencing I have to look

10  at that, and while I know he waived counsel and

11  he waived it of record, and I believe after

12  sufficient admonishment, I don't know whether

13  or not I could proceed at this time.  What is

14  clear I can do -- well, I am not sure it's

15  clear, but it says at least when we are talking

16  about a trial date it says the Court may set a

17  case -- it says the Court may set the case for

18  trial which may be conducted under the section

19  despite the failure of the defendant to appear

20  at hearing at which trial date is set.  When

21  such trial date is set Clerk must send notice

22  to the Defendant by certified mail at his last

23  known address indicated on his bond slip notice

24  of the new date which has been set for trial.

Appendix M-5

R002099

1   absentia hearing date, have the Clerk send

2   notice to his last known address.

3        MS. LARSON:  That would be fine.

4        THE COURT:  And if you want to research

5   the law to see if there's any case law showing

6   that if somebody waived counsel before --

7        MS. LARSON:  All right, I will see what I

8   can find.

9        THE COURT:  The Defendant failed to

10  appear.  Because of legal issues about whether

11  or not this Court can proceed to sentence this

12  Defendant without an attorney, the Court will

13  reset the matter for sentencing on --

14       MS. LARSON:  What I am going to ask is if

15  we can do it after the bond forfeiture

16  finalization date so if he appears on

17  November 18th --

18       THE CLERK:  The date we used was

19  November 18th.

20       MS. LARSON:  Then he could get notice at

21  that time.

22       THE COURT:  How about Friday,

23  November 19th at 1:30?

24       MS. LARSON:  That's fine.  Actually I'm

*Appendix M-7*                    R002101

```
 1                    STATE OF ILLINOIS

 2    IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT

 3                  COUNTY OF WINNEBAGO

 4

 5          I, Melvyn D. Shutt, Official Court Reporter,

 6    Seventeenth Judicial Circuit, State of Illinois, do

 7    certify that I reported in stenograph the testimony

 8    given in the hearing of said cause, and that the

 9    foregoing transcript is a true and correct transcription

10    of my stenographic notes so taken as aforesaid, and

11    contains all the testimony given at the hearing of the

12    said cause.

13          I further certify that I am not connected by

14    blood or marriage to any of the parties in this action,

15    nor am I a relative or employee or attorney or counsel

16    of any of the parties, nor am I a relative or employee

17    of such attorney or counsel, or financially interested

18    in said action, or interested directly or indirectly in

19    the matter in controversy.

20          IN WITNESS WHEREOF I have hereunto set my hand

21    and seal this Twenty-29th day of April, A.D., 2005.

22

23          ------------------------------------------------
                       Official Court Reporter
24
```

Appendix M-8

1

```
 1                    STATE OF ILLINOIS

 2     IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT

 3                  COUNTY OF WINNEBAGO  FILED
                                        Date: 6 / 21 /05
 4   THE PEOPLE OF THE STATE OF )
     ILLINOIS,                   )       Marc A. Gasparini
 5                               )       Clerk of the Circuit Court
                      People,    )
 6                               )   By_____CJW_____ Deputy
                 vs.             )   94-CF-2420  Winnebago County, IL
 7                               )
                                 )
 8   DARO WEILBURG,              )
                                 )
 9                 Defendant.    )

10           REPORT OF PROCEEDINGS in the

11   above-entitled cause in Rockford, Winnebago County,

12   Illinois, in the Winnebago County Court House by the

13   Honorable Michael Morrison, Judge of said Court on the

14   Third day of September, A. D. 1999.

15   APPEARANCES:

16

17
             ATTORNEY WENDY LARSON
18           appeared on behalf of the People.

19           DARO WEILBURG appeared
             on behalf of Himself.
20

21

22

23   Melvyn D. Shutt, CSR
     Lic. No. 084-002004
24
```

Appendix N

S000074

1   are subject to cross-examination.  The

2   statement in elocution the State's Attorney

3   doesn't have a right to cross-examine you on.

4       I am pointing out one issue about a

5   sentencing hearing.  You spent a lot of time

6   researching the law on other issues and were

7   quite capable of doing that.  The question is

8   do you want to have an attorney to represent

9   you for the sentencing, and can you hire your

10  own attorney if you did want one?

11      THE DEFENDANT:  Yes, I can hire my own

12  attorney.

13      THE COURT:  At this time do you know

14  whether or not you are going to hire an

15  attorney for that?

16      THE DEFENDANT:  I am not sure just yet, I

17  will have to research the law and see what it

18  encompasses.

19      THE COURT:  Sentencing hearing in 30 days?

20      MS. LARSON:  I ask we set it.  If Mr.

21  Weilburg hires an attorney we can status it up.

22      THE COURT:  That's what I am getting at,

23  set a sentencing date in 30 days; is that fine?

24      THE DEFENDANT:  That's fine with me, your

Appendix N-1

E-FILED
Wednesday, 28 June, 2006  10:27:58 AM
Clerk, U.S. District Court, ILCD

## AFFIDAVIT OF AFFIRMATION UNDER PENALTY OF PERJURY

I, _DARO WEILBURG_____, affiant, do hereby declare and affirm under penalty of perjury as defined in 735 ILCS 5/1-109 that everything contained herein is true and accurate to the best of my knowledge and belief. I further declare and affirm that the contents of the foregoing documents are known to me and are accurate to the best of my knowledge and belief. Finally, I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

Signed on this _26th_ day of _JUNE_____, 200 _6_.

_Daro Weilburg_____

**Affiant**

**FILED**

**JUN 2 7 2006**

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

IN THE

UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF ILLINOIS

DARD WEILBURG

    PETITIONER-PLAINTIFF

            v.

GREGORY SIMS,

    RESPONDENTS-DEFENDANTS-

)
)
)
)
)
)
)
)
)

CASE NO. 06-3125

## PROOF/CERTIFICATE OF SERVICE

TO: CLERK OF THE COURT

  151 Federal Building

  600 Monroe

  Springfield, IL. 62701

TO: Attorney General

  500 South Second Street

  Springfield, IL.

        62706

**PLEASE TAKE NOTICE** that on June 26 ,2006 , I have placed the attached document(s) in the institutional mail at Taylorville C.C. properly addressed to the parties listed above for mailing through the United States Postal Service at: Memorandum in Support of Petition for Writ for Habeas Corpus

I swear that I mailed the attached document(s) as above addressed under penalty of law.

         So Sworn,

         Dard Weilberg

         PRO SE, # R32180

         P.O. Box 900,

         TAYLORVILLE IL, 62568.