E-FILED
Monday, 16 October, 2006  12:11:36 PM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DARO WEILBURG, | ) | |
| | ) | |
| Petitioner, | ) | |
| vs. | ) | 06-3125 |
| | ) | |
| GREGORY SIMS, Warden,[1] | ) | The Honorable |
| | ) | Richard Mills, |
| Respondent. | ) | Judge Presiding. |
| | ) | |

**ANSWER**

Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United

States District Courts, respondent, Gregory Sims, by his attorney, Lisa Madigan,

Attorney General of Illinois, answers petitioner's petition for writ of habeas corpus

as follows:

1.     Petitioner, Daro Weilburg, is under the custody of Jesse Montgomery, the

Deputy Director of the Parole Division for the Illinois Department of Corrections.

---

[1]  Jesse Montgomery is currently the Deputy Director of the Parole Division for the Illinois
Department of Corrections and thus the proper respondent in this *habeas* action, since petitioner
has been released from prison and is serving a term of mandatory supervised release.
Accordingly, Mr. Montgomery should be substituted in Mr. Sims' stead.  Fed.R.Civ.P. 25(d)(1);
*Hogan v. Hanks*, 97 F.3d 189, 190 (7th Cir. 1996).  Although petitioner has filed a request to
serve his parole term in Arizona under the Interstate Compact for Adult Supervision Act, 45
ILCS 170/1, *et seq.*, and has apparently already relocated to Arizona, according to an October 4,
2006 conversation with petitioner's parole officer, Paul Addotta, petitioner's request for transfer
has not yet been approved.

2.      On August 29, 1997, following a jury trial, petitioner was convicted in the Circuit Court of Winnebago County of theft (No. 94 CF 2420).  (Exhibit A; Exhibit D at 1).  Petitioner failed to appear for a September 30, 1999 sentencing hearing.  As a result, on that day, his bond was forfeited and he was sentenced in absentia to seven years' imprisonment.  *Id.*  Petitioner was subsequently indicted for the offense of violation of bail bond (No. 00 CF 3174) (Exhibit B), for failing to surrender on the theft conviction, and was extradited from Arizona.  Petitioner ultimately pled guilty, and was sentenced to 30 months' imprisonment, to run consecutively to the sentence imposed for theft in 94 CF 2420.  (Exhibit C).

3.      Petitioner unsuccessfully challenged his conviction for violation of bail bond.  *See People v. Weilburg*, No. 2-05-0007 (Rule 23 order) (Exhibit D).  He thereafter filed a federal habeas corpus petition challenging the violation of bail bond conviction.  That challenge was unsuccessful in both the District Court for the Northern District of Illinois, and in the Court of Appeals for the Seventh Circuit. *Weilburg v. Sims*, No. 03 C 50451 (Exhibit E); *Weilburg v. Sims*, No. 05-1103 (Exhibit F).

4.      Petitioner never perfected an appeal from his theft conviction. However, he did file several motions in the state appellate court regarding that conviction.  First, prior to sentencing, petitioner filed a motion in the appellate court seeking release from confinement and the appointment of counsel.  On

2

November 14, 1997,[2] the Illinois Appellate Court, Second District, entered an order denying that motion on the basis that there was no perfected appeal, and petitioner had failed to cite any proper rule under which that court could obtain jurisdiction. *People v. Weilburg*, No. 2-97-1073 (Exhibit G).

5.    Thereafter, on September 30, 2003, petitioner filed a motion to file a late notice of appeal with the state appellate court (Exhibit H), which was denied on October 21, 2003. *People v. Weilburg*, No. 2-03-1089 (Exhibit I).

6.    Notwithstanding the foregoing unsuccessful attempts to perfect an appeal, on November 3, 2005, petitioner filed an "opening brief for defendant-appellant" from his theft conviction in the state appellate court, raising the following issues: (1) the State of Illinois violated petitioner's speedy trial rights; (2) the prosecutor prompted its first witness to inform the jury that petitioner had been in prison before; (3) the prosecutor tampered with a witness' testimony; (4) the prosecutor presented fictitious invoices; (5) petitioner received ineffective assistance of counsel when counsel neglected to use a peremptory challenge to exclude a juror who had a close association with petitioner; (6) petitioner received ineffective assistance of counsel when counsel failed to challenge the fictitiously addressed invoices; (7) the trial court erred by not holding an evidentiary hearing to voir dire a juror about his association with petitioner; (8) the trial court erred by sentencing petitioner in absentia; (9) the State withheld exculpatory evidence; and (10) the

---

[2]  Since petitioner was not sentenced until September 30, 1999, his motion filed in the appellate court was filed prior to the final date of his conviction.

3

State was guilty of selective prosecution when it decided not to prosecute certain individuals for the same theft for which petitioner was convicted. (Exhibit J). On December 5, 2005, the State filed a motion to dismiss petitioner's appeal on the ground that a timely notice of appeal was never filed as required by Illinois Supreme Court Rule 606(b). (Exhibit K). On December 12, 2005, the petitioner filed an objection to the State's motion to dismiss. (Exhibit L). On December 21, 2005, the Illinois Appellate Court, Second District, granted the State's motion to dismiss the appeal for failure to comply with Supreme Court Rule 606. *People v. Weilburg*, No. 2-04-1240. (Exhibit M).

7.     Petitioner filed a petition for leave to appeal (PLA) in the Illinois Supreme Court. (Exhibit N). On May 24, 2006, the Illinois Supreme Court denied the PLA. *People v. Weilburg*, No. 102158. (Exhibit O). Petitioner never filed a post-conviction petition challenging his theft conviction.

8.     On June 1, 2006, petitioner filed the instant petition for writ of habeas corpus challenging his theft conviction (94 CF 2420) alleging: (1) his right to a speedy trial was violated; (2) trial counsel was ineffective for not challenging a juror for cause or using a peremptory challenge, and the trial court erred in refusing to conduct further voir dire of that juror once it became known that he and petitioner knew one another; (3) prosecutorial misconduct occurred when the prosecutor elicited testimony that petitioner had been in jail before; (4) the trial court erred in allowing a State's witness to twice testify; (5) the State withheld certain exculpatory information; (6) trial counsel was ineffective for failing to insure that

4

petitioner receive a speedy trial; (7) the trial court erred in admitting certain evidence; (8) the trial court improperly sentenced petitioner in absentia; and (9) the failure of the State to issue an arrest warrant resulted in petitioner's absence from his trial proceedings.

9.    On August 2, 2006, this Court ordered respondent to respond. Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, the following state court materials, deemed relevant by respondent, have been filed as Exhibits under separate cover:

Exhibit A: Bill of Indictment, No. 94 CF 2420;

Exhibit B: Bill of Indictment, No. 00 CF 3174;

Exhibit C: Certified Copy of Conviction, No. 00 CF 3174;

Exhibit D: Appellate court order, *People v. Weilburg*, No. 2-05-0007;

Exhibit E: *Weilburg v. Sims*, No. 03 C 50451;

Exhibit F: *Weilburg v. Sims*, No. 05-1103;

Exhibit G: Appellate court order, *People v. Weilburg*, No. 2-97-1073;

Exhibit H: Motion to file late notice of appeal;

Exhibit I: Appellate court order denying motion to file late notice of appeal, *People v. Weilburg*, No. 2-03-1089;

Exhibit J: Petitioner's brief in appellate court;

Exhibit K: Motion to dismiss petitioner's appeal;

Exhibit L: Petitioner's reply to motion to dismiss petitioner's appeal;

Exhibit M: Order granting State's motion to dismiss petitioner's appeal, *People v. Weilburg*, No. 2-04-1240;

Exhibit N: PLA, *People v. Weilburg*, No. 102158; and

Exhibit O: Order denying PLA, *People v. Weilburg*, No. 102158.

10.  Upon information and belief, because petitioner did not perfect an appeal of his theft conviction, the proceedings at his state trial have not been transcribed. The petition can be disposed of based upon the filed pleadings and the exhibits submitted herewith. *See Simental v. Matrisciano*, 363 F.3d 607, 612 (7th Cir. 2004) (decision whether transcripts are necessary left to sound discretion of the district court; review of state court transcript quite rare); *see also United States ex rel. Green v. Greer*, 667 F.2d 585, 586-90 (7th Cir. 1981) (examination of record not required if petitioner fails to identify any incompleteness or inaccuracies in the facts before the district court).

11.  Petitioner has exhausted his state court remedies in that the time for filing state court proceedings has expired.  However, some issues that should have been raised in state court were not, making them procedurally defaulted before this Court.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 841-42 (1999).

## THE PETITION IS TIME-BARRED

Petitioner's habeas corpus petition is time-barred and should be dismissed with prejudice for that reason.

The Antiterrorism and Effective Death Penalty Act (AEDPA), effective April 24, 1996, ushered in, under Section 2244(d) of Title 28 of the United States Code, a one-year limitations period for habeas corpus actions under Section 2254.  Section 2244(d) (1) provides:

6

A 1- year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

(A)　　the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)　　the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action;

(C)　　the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)　　the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

_____Petitioner's conviction in this case became final on October 30, 1999, 30 days after he was sentenced in absentia.  Petitioner did not appeal from his September 30, 1999, judgment of conviction, but is afforded 30 days within which he could have filed his notice of appeal.  ILCS S.Ct. Rule 606(b).  Therefore, the time for the filing of petitioner's habeas petition began to run on October 30, 1999, when the time for seeking direct review expired.  28 U.S.C. § 2244(d)(1)(A).  Thus, his habeas petition was due October 30, 2000.  The petition, filed on June 1, 2006, is almost 6 years late.

While petitioner made some attempts at perfecting a direct appeal from his conviction,  including a motion to file a late notice of appeal, and a brief, the

7

appellate court denied petitioner's filings and dismissed his appeal. *See United States ex rel. Baines v. Briley*, 2001 WL 1195826 *3 (N.D.Ill. 2001) (motion to file a late notice of appeal does not toll the one year statute of limitations). Thus, petitioner never properly filed any state appeal. *See generally Fernandez v. Sternes*, 227 F.3d 977, 978 (7th Cir. 2000). Therefore, his judgment was final on October 30, 1999, 30 days after he was sentenced, and the time was not tolled thereafter. 28 U.S.C. § 2244(d)(1)(A).

The habeas petition, filed June 1, 2006, is therefore time-barred, and should be dismissed with prejudice.

### PROCEDURAL DEFAULT/MERITS

Because petitioner never perfected an appeal from his theft conviction, the issues raised in his current habeas petition are procedurally defaulted since he never presented the claims to the state courts. *O'Sullivan*, 526 U.S. at 844-45. In *Buelow v. Dickey,* 847 F.2d 420 (7th Cir.1988), the Seventh Circuit held that the petitioners' failure to perfect their state appeal within the statutory time limit was a procedural default and therefore the petitioners forfeited their claims for federal relief. *Id.* at 424-25; *see also Coleman v. Thompson,* 501 U.S. 722 (1991). Similarly, in this case, petitioner never perfected an appeal to the Illinois Appellate Court. The failure to timely perfect the appeal constitutes a procedural default under state law. *See Buelow,* 847 F.2d at 424-425; *United States ex rel. Johnson v. People of Illinois,* 779 F.Supp. 81, 82 (N.D. Ill. 1991); *United States ex rel. Mark v. Chrans,*

8

670 F.Supp. 1401, 1402 (N.D. Ill. 1987); *United States ex rel. Bickham v. Lane,* 662 F.Supp. 77, 79-80 (N.D. Ill. 1987); *United States ex rel. Brim v. Peters,* 1990 WL 78260 *1 (N.D. Ill. June 4, 1990).  Therefore, petitioner has procedurally defaulted all of his habeas claims.

Of course, federal courts may review such defaulted claims if a petitioner demonstrates valid cause for the default and prejudice, as a result or a miscarriage of justice.  *See, e.g.*, *Coleman*, 501 U.S. at 750 (habeas relief can only be granted on defaulted claims when petitioner demonstrates cause for the default and prejudice or that a fundamental miscarriage of justice would result if the claim were not considered); *Thomas v. McCaughtry*, 201 F.3d 995, 999 (7th Cir. 2000) (same); *see also Harris v. Reed*, 489 U.S. 255, 263 (1989) (federal courts cannot review questions of federal law if state court decision rests on a state procedural ground that is independent of the federal question and adequate to support the judgment).

Petitioner has not attempted to justify the default; nor could he.  In Illinois, a defendant who fails to appear and is sentenced in absentia waives the right to be informed of his appellate rights pursuant to Supreme Court Rule 605.  *People v. Woolridge*, 686 N.E.2d 386, 387-388 (Ill.App. 1997).  The 30 day period within which to file motions and a notice of appeal pursuant to Supreme Court Rules 605 and 606 begins running on the date that the sentencing in absentia occurs, and not later.  *Id*. at 388.  Specifically, a "wilful failure to appear ought properly be viewed as a self-inflicted wound."  *Id.* at 389 (citing *People v. Burcham*, 566 N.E.2d 832, 835

9

(Ill.App. 1991)).  Therefore, petitioner cannot argue that the failure to perfect his appeal was anything but his own fault.

Nor has petitioner argued or can he show a miscarriage of justice.  To show miscarriage of justice requires proof that a constitutional violation has probably resulted in the conviction of one who is actually innocent.  *Murray v. Carrier*, 477 U.S. 478, 496 (1980).  There is no such proof in this case.   Accordingly, this Court should deny this habeas corpus petition.

## CONCLUSION

WHEREFORE, based on the foregoing, respondent respectfully requests that this Court dismiss the petition with prejudice, or deny the petition because the claims raised are procedurally defaulted.  If this Court should conclude that the petition is timely, or that petitioner's claims are not procedurally defaulted, respondent requests the opportunity to address the merits of these claims in a subsequent submission.

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois

BY:    /s Colleen M. Griffin
COLLEEN M. GRIFFIN
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601
(312) 814-4684
cgriffin@atg.state.il.us
Reg. Number 6198598

11

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DARO WEILBURG, | ) | |
| | ) | |
| Petitioner, | ) | |
| vs. | ) | 06-3125 |
| | ) | |
| GREGORY SIMS, Warden, | ) | The Honorable |
| | ) | Richard Mills, |
| Respondent. | ) | Judge Presiding. |
| | ) | |

Certificate of Service

I hereby certify that on October 16, 2006, I electronically filed an answer with the Clerk of Court using the CM/ECF system and I hereby certify that on October 16, 2006, I mailed by United States Postal Service, the document to the following non registered participant:

Daro Weilburg
14812 North Caliente Dr.
Fountain Hill, AZ 85268

By:    s/Colleen M. Griffin
COLLEEN M. GRIFFIN
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601
(312) 814-4684

E-FILED
Monday, 16 October, 2006 12:12:10 PM
Clerk, U.S. District Court, ILCD

**STATE OF ILLINOIS**
**IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT**
**COUNTY OF WINNEBAGO**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS | ) No. 94CF2420 |
| | ) |
| DARO C. WEILBURG | ) |
| | ) |
| Defendant. | ) |

**BILL OF INDICTMENT**

The Grand Jury charges:

**COUNT I:**

That on or about the 24th day of June, 1994, in the County of Winnebago and State of Illinois, **DARO C. WEILBURG** committed the offense of **FELONY THEFT** in that said defendant knowingly exerted unauthorized control over property of Norma's Jewelry, being cash, AND jewelry and gems, having a total value exceeding $10,000 but not exceeding $100,000, intending to deprive Norma's Jewelry permanently of the use of the property, in violation of 720 ILCS 5/16-1(a)(1)(A). **(Class 2)**

**COUNT II:** DISMISSED

That on or about the 24th day of June, 1994, in the County of Winnebago and State of Illinois, **DARO C. WEILBURG** committed the offense of **FELONY THEFT** in that said defendant knowingly exerted unauthorized control over property of Norma's Jewelry, being cash, jewelry and gems, having a total value in excess of $300.00, intending to deprive Norma's Jewelry permanently of the use of the property, in violation of 720 ILCS 5/16-1(a)(1)(A). **(Class 3)**

A TRUE BILL

*Betty Sparks*
Foreman

EXHIBIT A

E-FILED
Monday, 16 October, 2006  12:12:23 PM
Clerk, U.S. District Court, ILCD

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
COUNTY OF WINNEBAGO

THE PEOPLE OF THE STATE OF ILLINOIS,  )
                                    Plaintiff,  )
                                                 )
                --vs--                       )      No. 00 CF 3174
                                                 )
DARO WEILBURG,                         )
                               Defendant,  )

**BILL OF INDICTMENT**

The Grand Jury charges:

On or about September 30, 1999 in the County of Winnebago and State of Illinois,

DARO WEILBURG committed the offense of VIOLATION OF BAIL BOND, in that after being

continued on bail on September 3, 1999 for appearance in Courtroom #311 of the Circuit Court

of Winnebago County, a court of record of this State, for Sentencing Hearing on September 30,

1999, after being convicted in 94 CF 2420 for Burglary, a class 2 felony, and having incurred a

forfeiture of his bail bond on November 18, 1999, he wilfully failed to surrender himself within

thirty (30) days following this date of forfeiture in violation of 720 ILCS 5/32-10. (Class 3

felony-- mandatory consecutive sentence)

                                       A TRUE BILL

**FILED**
Date: 10-21-03
   Marc A. Gasparini
   Clerk of the Circuit Court
By _____ Deputy
     Winnebago County, IL

                                         Foreman

EXHIBIT B

STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
COUNTY OF WINNEBAGO

THE PEOPLE OF THE STATE OF ILLINOIS,      )
                          Plaintiff,      )
                                          )
            --vs--                        )        No. 00 CF 3174
                                          )
DARO WEILBURG,                            )
                          Defendant,      )

## BILL OF INDICTMENT

The Grand Jury charges:

On or about September 30, 1999 in the County of Winnebago and State of Illinois,

DARO WEILBURG committed the offense of VIOLATION OF BAIL BOND, in that after being

continued on bail on September 3, 1999 for appearance in Courtroom #311 of the Circuit Court

of Winnebago County, a court of record of this State, for Sentencing Hearing on September 30,

1999, after being convicted in 94 CF 2420 for THEFT, a class 2 felony, and having incurred a

forfeiture of his bail bond on November 18, 1999, he wilfully failed to surrender himself within

thirty (30) days following this date of forfeiture in violation of 720 ILCS 5/32-10. (Class 3

felony-- mandatory consecutive sentence)

A TRUE BILL

Foreman

r. true, perfect and complete cop;
the original on file in my office.

Clerk of the Circuit Court
Winnebago County, Illinois

By
     Deputy Clerk
         7/10/23

SJB

### STATE OF ILLINOIS
### IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
### COUNTY OF WINNEBAGO

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.    00 CF 3174 |
| | ) | |
| DARO C. WEILBURG, | ) | |
| Defendant. | ) | |

COPY

### FIRST SUPERSEDING BILL OF INDICTMENT

The Grand Jury charges:

That on or about November 18, 1999, in the County of Winnebago and State of Illinois, **DARO C. WEILBURG** committed the offense of **VIOLATION OF BAIL BOND**, in that, after being admitted to bail for appearance in Courtroom 311 of the Circuit Court of the 17th Judicial District, Winnebago County, a court of record of this State, on September 30, 1999, at 9:00 AM, for case number 94 CF 2420, and on that date he incurred a forfeiture of his bail, and thereafter wilfully failed to surrender himself within thirty (30) days following the forfeiture, in violation of 720 ILCS 5/32-10(a).  (Class 3 Felony - **Mandatory consecutive sentence to 94 CF 2420**)

A TRUE BILL

_____
Foreperson

SEP-22-2004 WED 11:40 AM                    FAX NO.

E-FILED
Monday, 16 October, 2006  12:12:38 PM
Clerk, U.S. District Court, ILCD

COURT DOCKET - WINNEBAGO COUNTY CIRCUIT CLERK          1   CSP048
                                                       Date:  9/22/2004
              CRIMINAL FELONY                          Time:  11/32/35
                                                       Page:   1
    2000 CF 003174  Judge: GRUBB GERALD F        From 0/00/0000 To 99/99/999
                                                       User: ENDAS
        Case Names_____  Attorney Names_____  Wsid: CC 85G0
                    VS                                  All Entries For
              WEILBURG DARO C          PD

__Date__
12/03/2000 Charge 02 Count 001 VIO BAIL BOND/CLASS 2 OFFENSE Nov 18,1999
           Defendant WEILBURG DARO C
           Agency: COUNTY OF WINNEBAGO  Charge Instr: FIRST SUPERSEDING BILL OF I

12/13/2000 Charge 01 Count 001 VIO BAIL BOND/CLASS 2 CONVIC Nov 18,1999
           Defendant WEILBURG DARO C
           Statute 720 5/32-10  Class 3  Orig.
           Agency: COUNTY OF WINNEBAGO  Charge Instr: INDICTMENT

12/13/2000  Defendant WEILBURG DARO C
           WARRANT Dec 13,2000 99:99PM Rm108

12/14/2000 UPON ARREST TO BE SET BEFORE JUDGE MORRISON

10/02/2003 WARRANT RETURNED SERVED
           APPEARANCE Oct 02,2003 01:30PM Rm210   Judge NO JUDGE Canceled

10/02/2003
           APPEARANCE Oct 02,2003 01:30PM Rm311  Judge GRUBB
           Judge:GRUBB GERALD F   Clerk:HJ    M

10/02/2003  Judge VIDAL RICHARD W
           The people  present by Prosecuting Attorney NO S/A PRESENT.
           Defendant present in open court prose.  Judge Grubb is not
           available today.  PD is appointed.  Case is continued for
           presentment on Indictment.  Defendant remanded.
           ARRAIGNMENT Oct 09,2003 01:30PM Rm311  Judge GRUBB
           Judge:GRUBB GERALD F   Rep:DYKE JOANN E   Clerk:DHM    M

10/02/2003 PUBLIC DEFENDER APPOINTED
           Document NOTPD Was Printed
           Judge:GRUBB GERALD F   Rep:DYKE JOANN E   Clerk:DHM    M

10/02/2003 PRE TRIAL SERVICES REPORT
           Judge:GRUBB GERALD F   Rep:DYKE JOANN E   Clerk:DHM    M

10/02/2003 JAIL ORDER
           Judge:GRUBB GERALD F   Rep:DYKE JOANN E   Clerk:DHM    M

10/09/2003 MINUTE - ARRAIGNMENT NOT GUILTY
           People of the State of Illinois present by Assistant State s
           Attorney, MEASON for  STEVEN J. BIAGI.  Defendant appears with and
           by PD HERRMANN.  Defendant furnished with copy of Bill of
           Indictment.  Defendant waives reading of charges  and explanation
           of rights. Deft advised of penalites. Deft pleads not guilty.Deft
           makes a Motion for Demand for Speedy Trial. Cause continued for
           status on when time started to run due to Deft was incarcerated in
           AZ pending extradition hearing. Cause set for Jury Trial. Deft
           remanded.
           STATUS Oct 23,2003 01:30PM Rm311  Judge GRUBB
           Judge:GRUBB GERALD F   Rep:LEWIS DONETA MARIE   Clerk:KEC   M


     C O N T I N U E D   O N   N E X T   P A G E

                                      EXHIBIT C

COURT DOCKET - WINNEBAGO COUNTY CIRCUIT CLERK                2   CSP048
                                                        Date:  9/22/2004
            CRIMINAL FELONY                             Time:  11/32/35
                                                        Page:    2
       2000 CF 003174  Judge: GRUBB GERALD F      From  0/00/0000 To 99/99/999
                                                        User: ENNAS

__Date__
10/09/2003
            SET FOR JURY Nov 03,2003 09:00AM Rm311  Judge GRUBB Canceled
            Judge:GRUBB GERALD F    Rep:LEWIS DONETA MARIE    Clerk:KEC    M

10/09/2003 Order jail

10/14/2003 MOTION FOR DISCOVERY BEFORE TRIAL Filed
            Judge:GRUBB GERALD F    Clerk:ML     M

10/23/2003

10/23/2003
            The people  present by Prosecuting Attorney STEVEN J. BIAGI.
            Defendant present in open court with PD HERRMANN.  Cause continued
            for Status.  Case remains set for trial 11-3-03.  Deft remanded.
            STATUS Oct 30,2003 01:30PM Rm311  Judge GRUBB
            Judge:GRUBB GERALD F    Rep:OLSON JOYCE M    Clerk:NCC    M

10/23/2003 ANSWER TO DEFENDANT'S MOTION FOR DISCOVERY BEFORE TRIAL
            MOTION FOR DISCLOSURE TO THE PROSECUTION
            JAIL ORDER
            Judge:GRUBB GERALD F    Rep:OLSON JOYCE M    Clerk:NCC    M

10/30/2003
            The people  present by Prosecuting Attorney STEVEN J. BIAGI.
            Defendant present in open court with PD HERRMANN.  Deft gives
            permission for 402 Conference.  Parties hold 402 Conference.  On
            deft's motion case is continued.  Case is taken off jury call on
            11-03-03 and reset.   Matter is also continued for status.  Deft
            remanded.
            STATUS Nov 13,2003 01:30PM Rm311  Judge GRUBB
            Judge:GRUBB GERALD F    Rep:OLSON JOYCE M    Clerk:WF    M

10/30/2003 SUPPLEMENTAL ANSWER TO DEFENDANT'S MOTION FOR DISCOVERY BEFORE TRIAL
            JAIL ORDER
            Judge:GRUBB GERALD F    Rep:OLSON JOYCE M    Clerk:WF    M

10/30/2003
            SET FOR JURY Dec 01,2003 09:00AM Rm311  Judge GRUBB
            Judge:GRUBB GERALD F    Rep:OLSON JOYCE M    Clerk:WF    M

11/13/2003
            The people  present by Prosecuting Attorney STEVEN J. BIAGI.
            Defendant present in open court with PD HERRMANN. ON MOTION OF
            DEFENDANT MATTER CONTINUED FOR STATUS ON JURY TRIAL, NOTICE ISSUED.
            SET FOR JURY Dec 01,2003 09:00AM Rm311  Judge GRUBB
            Judge:GRUBB GERALD F    Rep:SHUTT MELVIN D    Clerk:NCC    M

11/13/2003
            FINAL PRE-TRIAL CONF Nov 20,2003 01:30PM Rm311  Judge GRUBB
            Judge:GRUBB GERALD F    Rep:SHUTT MELVIN D    Clerk:NCC    M

        C O N T I N U E D   O N   N E X T   P A G E

SEP-22-2004 WED 11:41 AM                                FAX NO.

COURT DOCKET - WINNEBAGO COUNTY CIRCUIT CLERK          ●3   C3P048
                                                       Date:  9/22/2004
                    CRIMINAL FELONY                    Time:  11/32/35
                                                       Page:    3
        2000 CF 003174  Judge: GRUBB GERALD F     From 0/00/0000 To 99/99/999
                                                            User: ANNAS

__Date__
11/20/2003
            The people  present by Prosecuting Attorney STEVEN J. BIAGI.
            Defendant present in open court with PD HERRMANN. DEFENDANT ORAL
            MOTION TO HAVE PD WITHDRAW FROM CASE AND LET HIM PROCEED PROSE
            HEARD, OVER STATES OBJECTION, AFTER ARGUMENTS HEARD, IS GRANTED.
            AND PD GIVEN LEAVE TO WITHDRAW. HOWEVER PD'S INVESTIGATOR IS TO
            ASSIST DEFENDANT AS NEEDED. DEFENDANT IS TO BE GIVEN PRIORTY TO
            LAW LIBRARY IN JAIL. SEE ORDER FILED. MATTER TO REMAIN SET AS
            ALREADY SET.
            Judge:GRUBB GERALD F   Rep:GIERWIATOSKI JANET S   Clerk:HKC   M

11/20/2003 ORDER FILED
           JAIL ORDER FILED
           Judge:GRUBB GERALD F   Rep:GIERWIATOSKI JANET S   Clerk:HKC   M

12/01/2003
            The people  present by Prosecuting Attorney STEVEN J. BIAGI.
            Defendant present in open court with DARO WEILBURG ,Pro Se. Cause
            comes on for jury trial.  Deft files Motion to Dismiss BOI.
            Arguments heard.  Court reserves ruling as transcripts are needed
            re:BOI amendment.  States motion to continue jury trial is heard
            and granted.  Defts motion for copies to be made 94cf2420 and this
            file is granted.  Deft given leave to file further motions
            regarding BOI.  Deft remanded.
            SET FOR JURY Dec 08,2003 09:00AM Rm311  Judge GRUBB
            Judge:GRUBB GERALD F   Rep:MCNEELEY ANN M   Clerk:RJJ   M

12/01/2003 Order /Jail
           Judge:GRUBB GERALD F   Rep:MCNEELEY ANN M   Clerk:RJJ   M

12/03/2003 SUPERSEDING BILL OF INDICTMENT FILED Judge GILL TIMOTHY R
           Judge:GRUBB GERALD F   Clerk:MJH   M

12/03/2003 Disposition 01/00  Count 001  No Fine & Cost Signed
           Judge GILL TIMOTHY R  Defendant WEILBURG DARO C
           Asst States Attorney OCONNOR MARGIE
           Disposition: Dismiss/Superseded by Indictment or Information VIO BAIL
           Disposition Type: Court Action   Defendant Plea: No Plea Entered
           Statute 720 5/32-10  Class 3  Orig.
           Sentence: 12/03/2003
           No Fine & Cost              .00
           Judge:GILL TIMOTHY R

12/04/2003 MINUTE - ARRAIGNMENT NOT GUILTY
           People of the State of Illinois present by Assistant State's
           Attorney, STEVEN J. BIAGI. Defendant appears  and by DARO
           WEILBURG ,Pro Se.  Defendant furnished with Superceeding BOI.
           Defendant waives reading and pleads not guilty.  Cause remains set
           for jury trial.   NCC/rj
           Judge:GRUBB GERALD F   Rep:BRASSFIELD SANDRA   Clerk:RJJ   N

12/04/2003 Order /Jail
           Judge:GRUBB GERALD F   Rep:ANDERSON KATHI A   Clerk:RJJ   M

           C O N T I N U E D   O N   N E X T   P A G E

COURT DOCKET - WINNEBAGO COUNTY CIRCUIT CLERK

CRIMINAL FELONY

2000 CF 003174  Judge: GRUBB GERALD F

4    CSP048
Date:  9/22/2004
Time:  .1/32/35
Page:     4
From  0/00/0000 To 99/99/999
User: ENNAS

__Date__

12/05/2003 MOTION TO DISMISS Filed , Defendant WEILBURG DARO C
           AMENDED MOTION FOR NEW TRIAL OR IN THE ALTERNATIVE MOTION FOR NEW
           SENTENCE
           Judge:MORRISON MICHAEL R    Clerk:NEH    M

12/05/2003 SUBPOENA RETURNED SERVED Filed
           Judge:GRUBB GERALD F    Clerk:LSL    M

12/08/2003
           The people  present by Prosecuting Attorney STEVEN J. BIAGI
           Defendant present in open court with DARO WEILBURG ,Pro Se.Cause
           comes on for jury trial proceedings.  Court finds that Deft was
           not in Illinois until Sept 25, therefore, no violation of Speedy
           trial rights were made.  Court rules on States Motions in Limine,
           as follows:  First motion is heard and granted; Second motion is
           heard and granted; Third motion is heard and denied; Forth motion
           is heard and denied; Fifth motion is heard and granted; Sixth
           motion is denied, at this time; Seventh motion is heard and
           granted;  Jury selection begins.  Twelve jurors and two Alternate
           jurors are impaneled and sworn at 4:30 p.m.  Cause cont for
           further jury trial proceedings.  Deft remanded.
           SET FOR JURY Dec 09,2003 09:00AM Rm311 Judge GRUBB
           Judge:GRUBB GERALD F    Rep:LEWIS DONETA MARIE    Clerk:RJJ    M

12/08/2003 PEOPLES MOTION IN LIMINE #1
           PEOPLES MOTION IN LIMINE #2
           PEOPLES MOTION IN LIMINE #3
           PEOPLES MOTION IN LIMINE #4
           PEOPLES MOTION IN LIMINE #5
           PEOPLES MOTION IN LIMINE #6
           PEOPLES MOTION IN LIMINE #7
           JAIL ORDER
           Judge:GRUBB GERALD F    Rep:LEWIS DONETA MARIE    Clerk:RJJ    M

12/08/2003 Disposition 02/00  Count 001  No Fine & Cost Signed
           Judge GRUBB GERALD F  Defendant WEILBURG DARO C  Atty PD
           Asst States Attorney BIAGI STEVEN J
           Disposition: Guilty VIO BAIL BOND/CLASS 2 CONVIC
           Disposition Type: By Jury    Defendant Plea: Guilty
           Statute 720 5/32-10(a)  Class 3  Orig.
           Sentence: 08/06/2004
           Sentence: Department Of Corrections  30Mos Sentence In Force
           Sentence: Credit Time Served  382Days Sentence In Force
           Sentence: Fines and/or Cost/Penalties and Fees  Sentence In Force
           No Fine & Cost           .00
           Status:CLOSED  Report:Closed  Dec 08,2003
           Judge:GRUBB GERALD F

12/09/2003
           The people  present by Prosecuting Attorney STEVEN J. BIAGI.
           Defendant present in open court with DARO WEILBURG ,Pro Se. Cause
           comes on for further jury trial proceedings.  Openning Statements

C O N T I N U E D   O N   N E X T   P A G E

COURT DOCKET - WINNEBAGO COUNTY CIRCUIT CLERK          5   C3P048
                                                    Date:  9/22/2004
            CRIMINAL FELONY                         Time:  11/32/35
                                                    Page:    5
    2000 CF 003174  Judge: GRUBB GERALD F    From 0/00/0000 To 99/99/999
                                                    User: ENNAS

__Date__
12/09/2003 given.  Testimony taken.  Jury retires at 3:50 pm  in charge of
           Baliff Al Hagi, a duly qualified officer of the Court.  LATER;
           All parties appear.  Jury returns verdict into Open Court finding
           the Deft Guilty of Violation of Bail Bond.  Court enters Judgment
           of Conviction.  Jury is thanked and excused from service.  Cause
           set for sentencing.  Court Orders a PSI report.  Deft remanded.
           SENTENCING Dec 18,2003 01:30PM Rm311  Judge GRUBB
           Judge:GRUBB GERALD F   Rep:LEWIS DONETA MARIE   Clerk:RJJ   M

12/09/2003 Order /JAIL
           GIVEN JURY INSTRUCTIONS
           COPIES OF PEOPLES JURY INSTRUCTIONS
           COPIES OF PEOPLES W/DRAWN JURY INSTRUCTIONS
           VERDICT FORM
           WITNESS AND JURY RECORD
           ORDER FOR PRESENTENCE INVESTIGATION AND REPORT
           Judge:GRUBB GERALD F   Rep:LEWIS DONETA MARIE   Clerk:RJJ   M

12/17/2003 MOTION TO VACATE JUDGEMENT OR IN THE ALTERNATIVE Filed
           MOTION FOR NEW TRIAL
           Judge:GRUBB GERALD F   Clerk:SST   M

12/18/2003 MINUTE - CONTINUANCE GENERAL
           People of the State of Illinois present by FREDRICK JAMES BRUN.
           Defendant appears in person and by DARO WEILBURG ,Pro Se.  Matter
           continued for sentencing.  Deft remanded.
           SENTENCING Feb 02,2004 09:00AM Rm311  Judge GRUBB
           Judge:GRUBB GERALD F   Rep:MCNEELEY ANN M   Clerk:RJJ   M

12/18/2003 Order /Jail
           Judge:GRUBB GERALD F   Rep:MCNEELEY ANN M   Clerk:RJJ   M

 2/02/2004
           The people  present by Prosecuting Attorney STEVEN J. BIAGI.
           Defendant in WCJ  - not present in court.  Presentence
           Investigation and Report not completeed.  Cause continued for
           Sentencing.  Case set in 210 tomorrow -per court - to inform
           defendant of proceedings of 2-2-04.  Defendant remanded.
           SENTENCING Mar 08,2004 09:00AM Rm311  Judge GRUBB
           Judge:GRUBB GERALD F   Rep:GIERWIATOSKI JANET S   Clerk:MJJ   M

 2/02/2004
           STATUS Feb 03,2004 09:00AM Rm210  Judge COPLAN
           Judge:GRUBB GERALD F   Rep:GIERWIATOSKI JANET S   Clerk:MJJ   M

 2/02/2004 JAIL ORDER FILED  .
           Judge:GRUBB GERALD F   Rep:GIERWIATOSKI JANET S   Clerk:MJJ   M

 2/03/2004
           The people  present by Prosecuting Attorney RANDALL S. WOODARD.
           Defendant present in open court from custody pro se.  Leave given
           to Deft to file Prose Motion for material and transcripts taken on

          C O N T I N U E D   O N   N E X T   P A G E

COURT DOCKET - WINNEBAGO COUNTY CIRCUIT CLERK                    6    CSP048
                                                        Date:   9/22/2004
                    CRIMINAL FELONY                     Time:   11/32/35
                                                        Page:   6
        2000 CF 003174  Judge: GRUBB GERALD F      From 0/00/0000 To 99/99/999
                                                        User: ENNAS

__Date__
2/03/2004 hearing heard on 12/1/03.  Motion heard and granted.  Court
          reporter to provide transcripts to deft.  Cause remains set for
          sentencing on 3/8 Judge Grubb.  Deft remanded.   SEE ORDER.
          Judge:COPLAN ROBERT G   Rep:NONE PRESENT   Clerk:CJL    M

2/03/2004 JAIL ORDER FILED
          WRITTEN ORDER FILED
          Judge:GRUBB GERALD F   Rep:NONE PRESENT   Clerk:CJL    M

2/03/2004 DEFTS PROSE MOTION FILED
          Judge:COPLAN ROBERT G   Rep:NONE PRESENT   Clerk:CJL    M

2/03/2004 CLERK SENT COPY OF DEFTS MOTION AND DOCKET ENTRY TO COURT REPORTER AMM
          Judge:COPLAN ROBERT G   Rep:MCNEELEY ANN M   Clerk:CJL    M

2/23/2004 MOTION FOR SUBSTITUTION OF JUDGE Filed  Atty PD
          Judge:NO JUDGE   Clerk:MCP    M

3/08/2004
          The people  present by Prosecuting Attorney STEVEN J. BIAGI.
          Defendant present in open court Pro Se.  Matter comes before the
          Court for Sentencing.  PSI Report is not completed.  Mr. Laxberg
          has a heavy caseload and is behind.  Deft's Motion to Dismiss is
          heard and denied.  Court continues the case before Judge Zenoff
          for hearing on deft's Motion for Substitution of Judge.  Deft
          remanded.
          REASSIGNMENT Mar 10,2004 01:30PM Rm311  Judge ZENOFF
          Judge:GRUBB GERALD F   Rep:THUSING KIM L   Clerk:WF    M

3/08/2004 Order jail
          Judge:GRUBB GERALD F   Rep:THUSING KIM L   Clerk:WF    M

3/10/2004
          The people  present by Prosecuting Attorney STEVEN J. BIAGI.
          Defendant present in open court Pro Se.  Case comes on regarding
          deft's Motion for Substitution of Judge.  Court sets case for
          hearing on said motion.  Court will order transcript from 3-1-04.
          Transcript is to be provided by Court Report Thusing by 3-26-04.
          Court denies deft's request for transcripts from 7-9-03, 10-1-03,
          10-9-03, and 12-8-03.  Deft remanded.
          HEARING Mar 31,2004 03:00PM Rm311  Judge ZENOFF
          Judge:ZENOFF KATHRYN E   Rep:THUSING KIM L   Clerk:WF    M

3/10/2004 Order JAIL
          Judge:GRUBB GERALD F   Rep:THUSING KIM L   Clerk:WF    M

3/19/2004 MOTION TO FILE ATTACHMENTS Filed  Defendant WEILBURG DARO C
          Judge:GRUBB GERALD F   Clerk:BRP    M

3/24/2004 MOTION FOR COURT APPOINTED ATTORNEY AND MOTION FOR ACCELERATED HEARING
          Filed
          Judge:GRUBB GERALD F   Clerk:SST    M


          C O N T I N U E D   O N   N E X T   P A G E

COURT DOCKET - WINNEBAGO COUNTY CIRCUIT CLERK              7   CSP048
                                                   Date:  9/22/2004
             CRIMINAL FELONY                       Time:  11/32/35
                                                   Page:    7
      2000 CF 003174  Judge: GRUBB GERALD F    From 0/00/0000 To 99/99/999
                                                   User: ENNAS

__Date__
3/31/2004  Judge ZENOFF KATHRYN E
           The people  present by Prosecuting Attorney STEVEN J. BIAGI.
           Defendant present in open court PROSE. MATTER IN COURT ON HEARING
           OF DEFENDANT'S MOTION FOR SUBSTITUTION OF JUDGE.  PRIOR TO
           HEARING, DEFENDANT STATES TO COURT HE HAS BEEN DENIED WRITING
           MATERIAL NEEDED TO FILE FURTHER MOTIONS. COURT ADMONISHES
           DEFENDANT THAT THE ONLY MOTION BEFORE THIS COURT IS THE MOTION FOR
           SUBSTITUTION OF JUDGE. DEFENDANT IS PERSISTENT IN HIS DEMAND FOR
           WRITING MATERIALS, OR TO BE RETURNED TO JAIL CELL.  COURT AGAIN
           ADMONISHES DEFENDANT THAT THE ONLY MOTION BEFORE THIS COURT IS THE
           MOTION FOR SUBSTITUTION OF JUDGE. DEFENDANT CONTINUES HIS DEMAND
           TO RETURN TO JAIL CELL. COURT ADVISES DEFENDANT THAT IT WILL NOT
           HEAR MOTION ON WRITING MATERIALS, AND THE COURT WILL NOT RULE ON
           THIS MOTION. THAT THE MOTION FOR SUBSTITUTION OF JUDGE WILL
           PROCEED IN ABSENTIA. DEFENDANT IS GIVEN LEAVE TO BE RETURNED TO
           JAIL. AFTER DEFENDANT LEAVES COURTROOM, ARUGMENTS ON MOTION FOR
           SUBSTITUTION OF JUDGE HEARD, AND MOTION IS DENIED.  COURT'S RULING
           AND TRANSCRIPTS TO BE PROVIDED TO COURT, AND COURT WILL GIVE TO
           DEFENDANT. ON MOTION OF DEFENDANT MATTER CONTINUED BEFORE JUDGE
           GRUBB FOR STATUS ON FURTHER DATES.
           STATUS Apr 12,2004 09:00AM Rm311  Judge GRUBB
           Judge:GRUBB GERALD F   Rep:THUSING KIM L   Clerk:CJL    M

3/31/2004  JAIL ORDER FILED
           Judge:GRUBB GERALD F   Rep:THUSING KIM L   Clerk:CJL    M

4/08/2004  PRESENTENCE REPORT Filed
           Judge:GRUBB GERALD F   Clerk:BRP    M

4/12/2004
           People of the State of Illinois, present by STEVEN J. BIAGI.  Defendant
           appears Pro Se.  MATTER IN COURT BEFORE JUDGE GRUBB, BEING RETURNED TO
           HIM BY JUDGE ZENOFF. MOTION OF DEFENDANT TO APPOINT A COURT APPOINTED
           ATTORNEY, IS HEARD, AND OVER OBJECTION OF STATE, GRANTED. PD IS
           APPOINTED. DEFENDANT IS ADMONISHED THAT THE ATTORNEY WILL BE IN CHARGE
           OF CASE, AND OF FILING OF APPROPRIATE MOTIONS. DEFENDANT IS WAITING FOR
           RULING ON MOTION FILED WITH SUPREME COURT. ON MOTION OF DEFENDANT
           MATTER CONTINUED FOR STATUS. NOTICE ISSUED.
           Document NOTPD Was Printed
           STATUS Apr 26,2004 09:00AM Rm317  Judge GRUBB
           Judge:GRUBB GERALD F   Rep:GESMER MARY S   Clerk:HKC    M

4/26/2004
           The people  present by Prosecuting Attorney STEVEN J. BIAGI.
           Defendant present in open court with PD PERRI. PD STATES HAS IT HAD
           TIME TO MEET WITHE DEFENDANT, ON MOTION OF DEFENDANT MATTER IS
           CONTINUED FOR SENTNECING,NOTICE ISSUED.   ALSO THE MATTER OF
           DEFENDANT'S PROSE MOTION FOR HABEAS CORPUS IS ADDRESSED, COURT
           ORDERS THAT ANY JUDGE CAN HEAR THIS MATTER, PD IS APPOINTED, AND
           MATTER CONTINUED BEFORE JUDGE ZENOFF,NOTICE ISSUED.
           SENTENCING Jun 18,2004 09:00AM Rm311  Judge GRUBB
           Judge:GRUBB GERALD F   Rep:GESMER MARY S   Clerk:HKC    M

          C O N T I N U E D   O N   N E X T   P A G E

COURT DOCKET - WINNEBAGO COUNTY CIRCUIT CLERK            8    C3P048

                                                    Date:   9/22/2004
             CRIMINAL FELONY                        Time:   11/32/35
                                                    Page:      8
     2000 CF 003174   Judge: GRUBB GERALD F    From 0/00/0000 To 99/99/999
                                                    User: ENNAS

__Date__

5/13/2004  FILE WENT INTO COURTROOM 478 FOR REVIEW PURPOSES ONLY WITH 04MR121
           Judge:MORRISON MICHAEL R   Rep:NONE PRESENT   Clerk:WF   M


5/28/2004
           The people   present by Prosecuting Attorney STEVEN J. BIAGI.
           Defendant present in open court PRO SE.  PD APPOINTED.  PD DELBERT
           STANDS IN. NO PD ASSIGNED TO CASE AS OF TODAY.  CAUSE CONTINUED
           FOR STATUS ON HABEAS CORPUS.  PD NOTICE SENT AGAIN.
           STATUS Jun 04,2004 09:00AM Rm478  Judge COLLINS
           Judge:COLLINS ROSEMARY M   Rep:MCNEELEY ANN M   Clerk:CJL   M


6/04/2004  FILE CONT WITH 04MR121 IN 478 FOR REVIEW PURPOSES ONLY
           STATUS Jun 16,2004 09:00AM Rm478  Judge COLLINS
           Judge:COLLINS ROSEMARY M   Rep:NONE PRESENT   Clerk:WF   M


6/15/2004  ADDENDUM TO THE PRESENTENCE REPORT Filed
           Judge:NO JUDGE   Clerk:BRP   M


6/16/2004  OFF RMC CALL.  LEAVE AS PREVIOUSLY SET. Judge COLLINS ROSEMARY M
           Judge:GRUBB GERALD F   Clerk:RJJ   M


6/18/2004
           The people   present by Prosecuting Attorney STEVEN J. BIAGI.
           Defendant present in open court with PD MORRISON FOR PD DELBERT.
           ON MOTION OF DEFENDANT SENTENCING IS CONTINUED, NOTICE ISSUED.
           SENTENCING Jun 25,2004 10:30AM Rm311  Judge GRUBB
           Judge:GRUBB GERALD F   Rep:OLSON JOYCE M   Clerk:HKC   M


6/22/2004  SECOND ADDENDUM TO THE PRESENTENCE REPORT Filed
           Judge:GRUBB GERALD F   Clerk:NEH   M


6/25/2004
           The people   present by Prosecuting Attorney STEVEN J. BIAGI.  PD
           DELBERT APPEARS FOR THE DEFT.  DEFT IS IN THE WCJ AND STATES THAT
           HE IS ILL TODAY.  ON DEFTS MOTION MATTER IS CONTINUED FOR
           SENTENCING.  JAIL ORDER FILED.
           SENTENCING Aug 06,2004 03:30PM Rm311  Judge GRUBB
           Judge:GRUBB GERALD F   Rep:BRASSFIELD SANDRA   Clerk:NCC   M


7/16/2004  *********FILE WALKED INTO COURT********* Jul 16,2004 09:00AM Rm478
           Judge GRUBB


8/06/2004
           The people   present by Prosecuting Attorney STEVEN J. BIAGI.
           Defendant present in open court with PD DELBERT.  Case comes on
           for Sentencing Hearing.  Deft's Motion to Continue is heard and
           denied.  Sentencing Hearing proceeds.  Court sentences defs to 30
           months DOC with cts for 382 days CONSECUTIVE sentence to
           94CF2420.  See DOC Sentencing Order regarding fines, costs, and
           fees.  Matter continued for Hearing on deft's Motion to Vacate
           Judgment and Motion for New Trial at which time deft will be
           advised of right to appeal.  Deft remanded.
           HEARING Aug 20,2004 03:30PM Rm311  Judge GRUBB
           Judge:GRUBB GERALD F   Rep:PAVLICK CARRIE A   Clerk:WF   M


           C O N T I N U E D   O N   N E X T   P A G E

COURT DOCKET - WINNEBAGO COUNTY CIRCUIT CLERK          9   CSP04B
                                                       Date:   9/22/2004
                  CRIMINAL FELONY                      Time:   11/32/35
                                                       Page:    9
      2000 CF 003174  Judge: GRUBB GERALD F     From  0/00/0000 To 99/99/999
                                                       User:  ENNAS

__Date__

8/06/2004 DEPARTMENT OF CORRECTIONS SENTENCING ORDER FILED
          STATEMENT OF CREDIT FOR TIME SERVED FILED
          JAIL ORDER FILED
          Judge:GRUBB GERALD F    Rep:PAVLICK CARRIE A    Clerk:WF     M


8/10/2004 JUDGMENT/DOC MITTIMUS FILED


8/16/2004 STATEMENT BY THE STATE'S ATTORNEY Filed  STATES ATTORNEY LOGL: PAUL A
          Judge:NO JUDGE    Clerk:BRP    M


8/20/2004 DEFT IN DOC. BY AGREEMENT OF PARTIES CASE RESET.
          HEARING Sep 17,2004 03:00PM Rm311   Judge GRUBB
          Judge:GRUBB GERALD F    Clerk:RJJ    M


8/27/2004  Judge MCGRAW JOSEPH G
           ASA BIAGI IN COURT REQUESTING THAT THIS MATTER BE PUT ON STATUS IN
           #467THE DEFT NEEDS TO BE WRIT BACK FROM DOC AND REMANDED TO THE WCJ IN
               ORDER TO HAVE TIME TO SPEAK WITH ATTY'S BEFORE HEARING DATE OF
           9/17/04
           STATUS Sep 09,2004 09:00AM Rm467  Judge GRUBB


8/30/2004 PETITION FOR ORDER OF HABEAS CORPUS AD PROSEQUENDUM Filed
          Asst States Attorney BIAGI STEVEN J
          ORDER OF HABEAS CORPUS AD PROSEQUENDUM
          Judge:NO JUDGE    Clerk:BRP    M


9/09/2004  Judge MCGRAW JOSEPH G
           The people  present by Prosecuting Attorney STEVEN J. BIAGI.
           Defendant present in open court with PD KULKARNI FOR DELBERT  THE
           DEFENDANT IS REMANDED TO THE WINNEBAGO COUNTY JAIL. MATTER
           CONTINUED FOR HEARING THAT HAS BEEN PREVIOUSLY SET.
           Judge:GRUBB GERALD F    Rep:ANDERSON KATHI A    Clerk:MFM    M


9/17/2004
           The people  present by Prosecuting Attorney STEVEN J. BIAGI.
           Defendant present in open court with PD DELBERT. MATTER IN COURT
           ON POST TRIAL MOTIONS. DEFENDANTS MOTION FOR NEW TRIAL OR
           ALTERNATIVE FOR NEW SENTENCE IN CASE 94CF2420 IS TAKEN UNDER
           ADVISEMENT. BRIEFING ORDER ISSUED. WRITTEN DECISION WILL BE GIVEN.
           DEFENDANT'S MOTION TO VACATE JUDGMENT OR IN THE ALTERNATIVE FOR
           NEW TRIAL ON 00CF3174 IS HEARD AND DENIED. DEFENDANT IS ADMONISHED
           TO RIGHTS OF APPEAL (SCR605) SEE ORDERS FILED.
           Judge:GRUBB GERALD F    Rep:GESMER MARY S    Clerk:NCC    M


9/17/2004 JAIL ORDER FILED
          ORDER FILED
          Judge:GRUBB GERALD F    Rep:GESMER MARY S    Clerk:NCC    M

*This Order Is Not Precedential And Is Not To Be Cited*

No. 2--05--0007

**FILED**

MAY 1 5 2006

ROBERT J. MANGAN, CLERK
APPELLATE COURT 2nd DISTRICT

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) ) | No. 00--CF--3174 |
| v. | ) ) ) | |
| DARO WEILBURG, | ) ) | Honorable |
| Defendant-Appellant. | ) ) | Gerald F. Grubb, Judge, Presiding. |

### RULE 23 ORDER

Defendant <u>pro se</u>, Daro Weilburg, appeals from his conviction for violation of bail bond (720 ILCS 5/32--10(a) (West 1998)). For the reasons that follow, we affirm.

On August 29, 1997, defendant was convicted after a jury trial of the class 2 felony offense of theft. Defendant failed to appear in court for a sentencing hearing on September 30, 1999. As a result, his bond was forfeited, and defendant was sentenced <u>in absentia</u> to seven years' imprisonment. A grand jury bill of indictment dated December 13, 2000, appears in the record and charged defendant as follows:

"On or about September 30, 1999[,] in the County of Winnebago and State of Illinois, [defendant] committed the offense of VIOLATION OF BAIL BOND, in that after being continued on bail on September 3, 1999[,] for appearance in *** a court of record of this State, for Sentencing Hearing on September 30, 1999, after being convicted in 94 CF 2420

EXHIBIT D

No. 2--05--0007

for ~~Burglary~~ THEFT, a class 2 felony, and having incurred a forfeiture of his bail bond on November 18, 1999, he wilfully failed to surrender himself within thirty (30) days following this date of forfeiture in violation of 720 ILCS 5/32-10. (Class 3 felony-- mandatory consecutive sentence)[.]" (Parenthesis and strikeout in original).

The indictment has the word "Burglary" stricken out in blue pen and the word "THEFT" handwritten above it in blue pen and all capital letters. The only witness to testify at the grand jury was Wendy Larson, an assistant state's attorney who prosecuted defendant's sentencing hearing for his theft conviction. During her grand jury testimony, she incorrectly testified that defendant had been charged with burglary instead of theft.

Defendant, who had relocated to Arizona, was apprehended and brought into custody in Illinois in October 2003. In an October 2, 2003, status hearing, defendant told the trial court that "the indictment [was] in error." The trial judge noted defendant's claim of error and informed him that he could make any proper motions against the indictment with the help of his attorney. Defendant later waived his right to counsel and proceeded pro se, and trial was set for December 1, 2003.

On December 1, defendant challenged the validity of the grand jury indictment on the basis that it came pursuant to Larson's incorrect testimony. The trial court noted that it was "clear" that the grand jury indictment had been altered to replace the word "Burglary" with the word "THEFT." The trial court inquired as to how the indictment had been changed, and the prosecutor responded that he did not know and that the State had presumably been granted a motion to amend the indictment. Larson, who was also present at the hearing but was not the principle prosecutor, interjected as follows:

-2-

No. 2--05--0007

"MS. LARSON: Your honor, I was before your Honor and moved to amend the

Indictment because we didn't realize --

THE COURT: What date was that?

MS. LARSON: It was shortly after [defendant] was picked up in the State of

Arizona."

Aside from Larson's comment, there is no indication in the record that the State moved for

or was granted leave to amend the indictment. After a recess in which the trial judge consulted the

record of previous proceedings in this case, the trial court concluded that there was "a big question

as to whether or not *** leave was in fact given to amend the Indictment." The prosecutor moved

to amend the indictment, but the trial court noted that the error was "more than just a scrivener's

error." The following colloquy ensued:

[PROSECUTOR]: That's fine. I would move to continue the trial a week.

THE COURT: For the purpose[] of filing a Superseding Bill of Indictment.

[PROSECUTOR]: And as I'm sure the Court can hear, my voice is very raw at this

point. *** I don't know if I can sit through jury selection, do an opening statement and

present evidence today and perhaps tomorrow as well with my voice the way it is right now,

and this is as high as I can speak at this point."

The trial court inquired as to how long defendant had been in custody and then granted the

State's motion for a continuance, "over [defendant's] objection."

On December 3, 2003, a grand jury entered a first superseding bill of indictment, which was

identical in substance to the original indictment except that it listed the date of the offense as

November 18, 1999 (the date defendant's bond forfeiture was finalized), instead of September 30,

-3-

3:06-cv-03125-RM     # 11-5     Page 4 of 10

No. 2--05--0007

1999 (the date defendant first failed to appear in court), and it did not identify the previous offense for which defendant had been convicted and placed on bail bond.

On December 8, 2003, the trial court denied defendant's motion to dismiss the original and the superseding indictment. Among its rulings on the State's several motions in limine, the trial court denied the State's motion to prevent defendant from cross-examining Larson regarding her incorrect grand jury testimony. On December 9, a jury found defendant guilty of violation of bail bond.

The text of defendant's argument on appeal presents what we have parsed into eleven contentions of error, and we address each in turn. At the outset, however, we must address the State's motions to strike defendant's statement of facts and defendant's entire opening brief for failure to comply with Supreme Court Rule 341 (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341, eff. October 1, 2001). We agree with the State that defendant's brief contains inaccuracies, but we decline the State's invitation to dismiss defendant's brief on that basis. To the extent defendant's statement of facts contains argument or his brief contains inaccurate portrayals of the record on appeal, we ignore the improper portions.

Defendant's first argument is that he cannot be convicted of violation of bail bond because he notified the court of his intention to leave the jurisdiction and police did not prevent him from doing so. We agree with the State that defendant had a duty to obey the terms of his bail bond, including the requirements that he appear in court as ordered (725 ILCS 5/110--10(a)(1) (West 1998)) and not depart the State without leave of court (725 ILCS 5/110--10(a)(3) (West 1998)). We reject defendant's position, which would have defendants charged with any offense be declared immune from prosecution based on the State's failure to prevent the criminal act defendant is charged with committing.

-4-

No. 2--05--0007

Defendant's second argument is that Larson's testifying before the grand jury violated Rule 3.7(a) of the Rules of Professional Conduct, which provides that "[a] lawyer shall not accept or continue employment in contemplated or pending litigation if the lawyer knows or reasonably should know that the lawyer may be called as a witness on behalf of the client [except under certain circumstances]." 134 Ill. 2d R. 3.7(a). We agree with the State that, even assuming that Rule 3.7(a) applies as a bar to the State's actions in this case, it operates only to bar a lawyer from appearing as both an advocate and a witness in the same case. Here, defendant alleges that Larson participated as a prosecutor in the sentencing phase of defendant's theft conviction, and she appeared only as a witness before the grand jury that indicted him for bail bond violation. Thus, defendant does not allege that she appeared as an advocate and a witness in the same case.

Defendant's third argument is that Larson knowingly provided false grand jury testimony when she incorrectly stated that defendant had been convicted of burglary instead of theft. He also claims that her grand jury testimony that defendant was sent notices of hearings was incorrect. According to defendant's theory, Larson's "knowing[]" "perjurious testimony [and] misstatements of material facts" should have voided the indictment. However, the State argues, and we agree, that the exact class 2 felony offense for which defendant had been convicted was not material to the charge of violation of bail bond, which applies where a defendant:

"[has] been admitted to bail ***, incurs a forfeiture of the bail and willfully fails to surrender himself within 30 days following the date of forfeiture, commits, if the bail was given in connection with a charge of felony ***, a felony of the next lower Class ***." 720 ILCS 5/23--10(a) (West 1998).

-5-

Defendant fourth argues that he suffered a violation of his due process rights as a result of Larson's incorrect testimony, because, according to defendant, the false testimony was "undertaken to punish [defendant] because he has done what the law plainly allows him to do. U.S. v. Polland, [994 F. 2d 1262 (7th Cir. 1995)]." However, defendant does not identify any plainly legal activity that he might have engaged in to bring about vindictive prosecution. Further, as defendant himself notes, a showing of actual vindictiveness sufficient to require investigation into a possible due process violation "requires objective evidence of some kind of genuine prosecutorial animus. U.S. v. Dickerson, [975 F. 2d 1235, 1251 (7th Cir. 1992)]." Here, the only support defendant offers for his allegation of animus is a July 11, 2003, letter from Larson to an Arizona prosecutor. That letter recites the facts of defendant's conviction and bail bond indictment, and then states as follows:

"Apparently, [defendant] was arrested [in Arizona] at the end of June. He was able to gain his release from your county jail after my office agreed to extradite him to Illinois. ***
I am very concerned that [defendant] will be able to confuse things enough in your jurisdiction to avoid his sentence in [Illinois], thus the motivation for this letter.

[Defendant] is, perhaps, the most talented con-man I have ever encountered. He appears to be totally reasonable and forthright. He is, in fact, manipulative and deceptive in the extreme. He need[s] to go to prison. He needs to be prosecuted for what amounts to escape from custody. I would be pleased to do this!

So, I need your help to accomplish my goal. I would appreciate anything you can do. I have requested a Governor's Warrant now that I know where [defendant] is. I would also like to see [defendant] back in custody in Arizona while we accomplish this end."

No. 2--05--0007

The above letter offers no indication that Larson sought to prosecute defendant as a response to his engaging in a plainly legal activity. In fact, the letter states quite the opposite: it states that Larson seeks to prosecute defendant for his violation of bail bond.

Defendant also argues that an inference of prosecutorial animus may be drawn here because the State "actually invite[d] [defendant] to commit an offense by refusing to initiate any preventative measures" to forestall his violating his bail bond. As discussed above, the State's failure to prevent defendant from committing a crime does not forestall its prosecution of defendant for that crime.

Defendant's fifth contention is that Larson improperly altered the original indictment. Indeed, the indictment appears to have been altered, and the record does not contain any indication that the trial court granted any party leave to alter it. However, we agree with the State that, to the extent the original indictment was improperly modified or defective, those problems became moot upon the State's filing the superseding indictment.

Defendant's sixth argument is that the superseding indictment should be quashed because Larson "made misstatements of material facts *** to persuade the court to allow the State to seek a superseding indictment." In his argument on this point, defendant refers to the portion of the December 1, 2003, transcript in which Larson told the trial court that she had obtained leave to amend the original indictment. However, the transcript shows that the trial court investigated the matter and found nothing in the record to support Larson's recollection. As noted above, the trial court indicated hesitation to allow an amendment to the indictment, and the State sought to continue defendant's trial, which was set for that day, until the following week. The trial court granted the State's motion, and, during the continuance, the State obtained the superseding indictment. Thus, the

-7-

No. 2--05--0007

continuation that led to the State's obtaining a superseding indictment was not caused by any misstatement from Larson.

Defendant's seventh argument is that the superseding indictment should have been barred by the three-year statute of limitations for defendant's offense. See 720 ILCS 5/3--5(b) (West 1998). However, the State argues that the period from the return of the original indictment on December 13, 2000, to the return of the superseding indictment on December 3, 2003, is excluded from the period of limitations because a prosecution was pending against defendant for the same conduct under the original indictment. See 720 ILCS 5/3--7(c) (West 1998) (limitations period does not include any period in which a prosecution is pending against the defendant for the same conduct, even if the indictment which commenced the prosecution is quashed). We agree. In December 2000, the State indicted defendant with violation of bail bond in connection with his November 19, 1999, bail bond forfeiture, and it indicted him for the same offense in December 2003. Defendant argues that the original indictment was void from its inception, and thus did not toll the statute of limitations, for two reasons. First, defendant argues that the indictment was void ab initio because it was improperly altered. However, any improper alteration of the indictment would not void it from its inception but instead would invalidate the improper amendment. See People v. Patterson, 267 Ill. App. 3d 933, 938-39 (1993) (remanding case for sentencing on lesser charge in original indictment where amendment to indictment to include greater charge was improper). Second, defendant argues that the indictment is void because it was obtained pursuant to Larson's incorrect grand jury testimony. This contention is discussed and rejected above.

Defendant's eighth argument is that the superseding indictment is fatally defective because it refers to a December 3, 2003, grand jury, and, "[u]pon information and belief," defendant asserts that

-8-

No. 2--05--0007

no grand jury met on that day.  However, both the superseding indictment and the grand jury transcript appearing in the record are dated December 3, and we have no reason to question the validity of those documents.  Accordingly, we reject defendant's eighth argument.

Defendant's ninth argument is that the grand jury transcript does not support an indictment for the offense of violation of bail bond, because neither the offense of violation of bail bond nor the corresponding statute are mentioned in the transcript.  However, the superseding indictment, which bears the grand jury foreperson's signature, refers to the offense of violation of bail bond and also cites the appropriate statute.  Therefore, we reject defendant's argument.

Defendant's tenth argument is that the trial court erred by barring him from questioning Larson regarding her misstatements during her December 2000 grand jury testimony.  We reject this argument because, as the State points out, and as noted above, the trial court denied the State's motion in limine on this point and thus did allow defendant to question Larson regarding her incorrect testimony to the grand jury.

Defendant's eleventh argument is that the State improperly failed to disclose to him an ex parte communication between Larson and the court:

"Pursuant to [Larson's] response to a complaint filed with the ARDC by [defendant], a 'discussion' took place of this ongoing case.  Since the court docketing sheet shows no open court appearances by [Larson,] this alleged 'discussion' took place outside the court room."

Larson's response, which appears in the record, without any of the exhibits it references, as an attachment to one of defendant's posttrial motions, states as follows, in pertinent part:

-9-

No. 2--05--0007

"I believe I raised the issue [of the error on the original indictment] with Judge Grubb in July of 2003. I know that I did discuss this problem with either Judge Grubb or Judge Vidal before [defendant's] extradition from Arizona. (See Exhibit I, attached)[.]"

Nothing in the above paragraph justifies the inference that the discussion Larson referenced took place outside the courtroom, as defendant alleges. Further, if any hearing did take place regarding defendant's case in July 2003, defendant's absence from that hearing would have been a direct result of his violating his bail bond and absconding from Illinois to Arizona. In any event, we agree with the State that, in light of the fact that defendant was fully aware of the contested amendment to the indictment before trial and the fact that the original indictment and any amendments thereto became moot upon the filing of the superseding indictment, defendant cannot show prejudice based on his claim.

For the foregoing reasons, we find affirm the judgment of the circuit court of Winnebago County.

Affirmed.

O'MALLEY, J., with McLAREN and HUTCHINSON, JJ., concurring.

Minute Order Form (06/97)

JS-6

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 50451 | **DATE** | 12/30/2004 |
| **CASE TITLE** | Weilburg vs. Meyers | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]    For the reasons stated on the reverse memorandum opinion and order, the court denies the petition for writ of habeas corpus and the request for an evidentiary hearing and dismisses this cause in its entirety.

(11)  ■  [For further detail see order on the reverse side of the original minute order.]

| | | number of notices | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | |
| X | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | 1-2-05 date docketed | 35 |
| | Docketing to mail notices. | | |
| X | Mail AO 450 form. | | |
| X | Copy to judge/magistrate judge. | docketing deputy initials | |
| LC | courtroom deputy's initials | 1-3-05 date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

EXHIBIT E

# MEMORANDUM OPINION AND ORDER

Daro Weilburg, a state prisoner, filed a pro se petition pursuant to 28 U.S.C. § 2254 which has been amended by appointed counsel. The essence of Weilburg's § 2254 claims is that he is asking this court to "dismiss his state court case" on the bases that the State of Illinois violated his rights under the Interstate Agreement on Detainers (IAD), the Uniform Criminal Extradition Act (UCEA), and federal due process when it sought his extradition from Arizona for the offense of bail bond violation. More specifically, Weilburg contends either that the underlying indictment for the offense which ultimately gave rise to his bail bond offense was actually for the offense of theft whereas the offense identified in the extradition papers was burglary or that the underlying indictment was improperly amended by an assistant state's attorney who allegedly changed the charged offense in the indictment from burglary (Class 4 felony) to theft (Class 2 felony) without any authority to do so. Pursuant to this court's order, Weilburg and the State have filed supplemental briefs addressing the issue, under Reed v. Farley, 512 U.S. 339 (1994), of whether Weilburg's claims identify either a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.

Weilburg was originally indicted for the offense of theft. After he failed to appear while out on bail, the State obtained an indictment for bail bond violation based on the offense of burglary. The State subsequently sought his extradition from the State of Arizona based on the bail bond offense. For some reason, the indictment included with the extradition papers stated that the underlying offense was for burglary rather than theft but the word indictment had a line drawn through it and the word theft had been written in.

Weilburg objected to the extradition in state court in Arizona, eventually filing an appeal with the Arizona Court of Appeals. During the pendency of that appeal, Arizona extradited Weilburg to Illinois. The Arizona appellate court dismissed the appeal as moot because Weilburg was no longer in Arizona.

Following Weilburg's return to Illinois, the State obtained a superseding indictment for bail bond violation based on the underlying offense of theft. Weilburg was found guilty by a jury of the bail bond violation and sentenced to a term of imprisonment.

During the pendency of his state court prosecution for bail bond violation, Weilburg filed this habeas corpus action. This court dismissed the case pursuant to Rule 4 of the Rules Governing § 2254 Cases, and the Seventh Circuit Court of Appeals vacated and remanded.

Weilburg's claim based on federal due process is denied. The manner or method in which a fleeing felon is brought to trial from an asylum state does not impair the power of the requesting state to prosecute and convict him. Frisbie v. Collins, 342 U.S. 519, 522 (1952); United States v. Mitchell, 957 F. 2d 465, 470 (7th Cir. 1992).

As for his claim under regarding the UCEA, a court construing the UCEA is limited to determining whether: (1) the extradition documents are regular on their face; (2) the petitioner has been charged with a crime in the demanding state; (3) the petitioner is the person named in the extradition request; and (4) the petitioner is a fugitive. Coungeris v. Sheahan, 11 F. 3d 726, 728 (7th Cir. 1993). There are several problems with Weilburg's claim. First, he asserts that Illinois violated his rights under the UCEA. The UCEA applies to the asylum state and not the receiving state. See Coungeris, 11 F. 3d at 728. Weilburg has not raised any challenge in this case to Arizona's application of the UCEA.

Second, Weilburg has not shown that he ever challenged his extradition under the UCEA in Arizona. He cannot raise a claim under federal habeas corpus where he has not shown that he exhausted his state remedies regarding that claim.

Third, he has not shown that any violation of the UCEA occurred. The only factor that arguably has any vitality is the issue of whether the extradition papers were regular on their face. Based on the factual assertions of Weilburg, they were. The fact that the actual underlying offense may have been different or even doctored is not ascertainable from looking at the documents themselves. All the state of Arizona was required to do was to make sure the papers were facially appropriate. Any inquiries beyond that were to be raised in the state that issued them, in this case Illinois.

That leaves Weilburg's claim under the IAD. The IAD is both a state and federal law. Reed v. Farley, 512 U.S 339, 347 (1994). Because a prisoner who challenges his custody on the basis of a violation of the IAD does so on non- constitutional grounds, he must show the violation qualifies as either a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. Reed, 512 U.S at 348.

Here, Weilburg's claim boils down to the contention that the underlying indictment for the offense that gave rise to his bail bond violation was either not the actual underlying offense for which he was indicted or that it was changed by an assistant state's attorney without the authority to do so. Under either theory, his claim fails. What Weilburg ignores is that his bail bond violation was premised upon a Class 2 felony generally and not on a particular Class 2 felony offense. He does not dispute that burglary and theft as charged in his case are both Class 2 felonies. Thus, for purposes of the offense for which he was extradited, it made no difference what the specific underlying offense was so long as it was a Class 2 felony.

Under these circumstances, there was no identifiable basis for an Arizona court to have refused extradition let alone for this court to conclude that a fundamental defect resulting in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure occurred in this case. Whether the underlying indictment was inaccurate or had been improperly changed had no effect on the offense for which Illinois sought to extradite Weilburg.

For the foregoing reasons, the court denies the § 2254 petition in its entirety.

3:06-cv-03125-RM    # 11-7    Page 1 of 2

**E-FILED**
Monday, 16 October, 2006 12:13:37 PM
Clerk, U.S. District Court, ILCD

132 Fed.Appx. 665

Page 1 of 2

132 Fed.Appx. 665, 2005 WL 1253874 (C.A.7 (Ill.))

Briefs and Other Related Documents

This case was not selected for publication in the Federal ReporterUNPUBLISHED ORDERNot to be cited per Circuit Rule 53

This case was not selected for publication in the Federal Reporter.

UNPUBLISHED ORDER

Not to be cited per Circuit Rule 53

Please use FIND to look at the applicable circuit court rule before citing this opinion. Seventh Circuit Rule 53. (FIND CTA7 Rule 53.)

United States Court of Appeals,
Seventh Circuit.
**Daro WEILBURG**, Petitioner-Appellant,
v.
Gregory SIMS, Respondent-Appellee.
No. 05-1103.
Submitted May 19, 2005.<u>FN*</u>

<u>FN*</u> After examining the briefs and record, we have concluded that oral argument is unnecessary. Accordingly, this appeal is submitted on the briefs and record. *See* <u>Fed. R.App. P. 34(a)(2)</u>.

Decided May 20, 2005.

Appeal from the United States District Court for the Northern District of Illinois, Western Division. No. 03 C 50451. <u>Philip G. Reinhard</u>, Judge.
Daro Weilburg, Taylorville, IL, pro se.
<u>Colleen M. Griffin</u>, Office of the Attorney General, Chicago, IL, for Respondent-Appellee.

Before <u>BAUER</u>, <u>COFFEY</u>, and <u>MANION</u>, Circuit Judges.

ORDER

**\*1** Daro Weilburg was in Arizona at the time that Illinois brought charges against him for failing to surrender himself on a theft conviction. Weilburg was eventually extradited to Illinois, found guilty of violating his bail bond, and sentenced to thirty-months' imprisonment to run concurrently with his seven-year sentence for theft. He filed a petition for habeas corpus in the district court claiming, as relevant here, that his conviction should be overturned because the Assistant State's Attorney altered the indictment submitted to Arizona for his extradition. Specifically, the Assistant State's Attorney crossed out the description of the underlying crime for which he failed to surrender himself, which she had incorrectly listed as "burglary," and corrected it to read "theft." The district court denied the petition, concluding under <u>Frisbie v. Collins, 342 U.S. 519, 522, 72 S.Ct. 509, 96 L.Ed. 541, (1952)</u>, and <u>United States v. Mitchell, 957 F.2d 465, 470 (7th Cir.1992)</u>, that the manner of extradition was irrelevant to the power of the requesting state to convict Weilburg.
The Supreme Court has upheld this principle for over 100 years. *See* <u>Frisbie, 342 U.S. at 522, 72 S.Ct. 509</u>; and <u>Ker v. Illinois, 119 U.S. 436, 441, 445, 7 S.Ct. 225, 30 L.Ed. 421 (1886)</u> (collectively the " *Ker-Frisbie* doctrine"). Weilburg's only argument on appeal is that the Assistant State's Attorney's actions were so egregious that we should carve out an exception to the *Ker-Frisbie* doctrine as the Second Circuit did in <u>United States v. Toscanino, 500 F.2d 267, 275 (2d Cir.1974)</u>

EXHIBIT F

132 Fed.Appx. 665

(creating exception to the *Ker-Frisbie* doctrine where appellant was tortured and interrogated for seventeen days). However, we have already rejected that approach, and have declined to create any exceptions to the doctrine. *See* Mitchell, 957 F.2d at 470; Matta-Ballesteros v. Henman, 896 F.2d 255, 263 (7th Cir.1990) (declining to create exception where petitioner was tortured). We see no reason here to part with this longstanding precedent.

AFFIRMED.

Copr. (C) West 2006 No Claim to Orig. U.S. Govt. Works C.A.7 (Ill.),2005.

Weilburg v. Sims

132 Fed.Appx. 665, 2005 WL 1253874 (C.A.7 (Ill.))


Briefs and Other Related Documents (Back to top)

• 05-1103 (Docket) (Jan. 18, 2005)

END OF DOCUMENT

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

E-FILED
Monday, 16 October 2006 12:13:50 PM
Clerk, U.S. District Court, ILCD



STATE OF ILLINOIS APPELLATE COURT SECOND DISTRICT

OFFICE OF THE CLERK
847/695-3750

APPELLATE COURT BUILDING
ELGIN, ILLINOIS
60120-5558

Appeal from the Circuit Court of County of Winnebago

    Trial Court No.: 94CF2420

THE COURT HAS THIS DAY, 11/14/97, ENTERED THE FOLLOWING ORDER IN
THE CASE OF:

    Gen. No.: 2-97-1073

    People v. Weilberg, Daro

> Motion by Daro Weilburg for relief in this court,
> including release from confinement and the
> appointment of counsel.  Motion denied inasmuch as
> movant has failed to cite any proper rule under
> which this court can obtain jurisdiction or
> otherwise act.  There is no perfected appeal
> pending before this court.  All relief requested
> is hereby denied.


                    LOREN J. STROTZ
                    Clerk


cc: Daro Weilberg
    Honorable Paul A. Logli
    Martin P. Moltz, Deputy Director

EXHIBIT G

Daro weilburg
#305286
YAVAPAI COUNTY JAIL
255 E GURLEY
PRESCOTT, AZ 86301

03-1089

ORIGINAL
FILED

E-FILED
Monday, 16 October 2006 12:14:05 PM
Clerk, U.S. District Court, ILCD

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
COUNTY OF WINNEBAGE

2003 SEP 30 PM 12:11
CLERK OF APPELLATE COURT
SECOND DISTRICT

THE PEOPLE OF THE STATE )
OF ILLINOIS, )
              PLAINTIFF, )
VS. )
DARO C. WEILBURG, )
              DEFENDANT, )

CASE NO 94 CF 2420

NOTICE OF APPEAL

COMES NOW THE DEFENDANT, DARO C. WEILBURG, IN
proper and hereby serves NOTICE OF APPEAL on This COURT
Regarding the above Captioned matter. IT IS FURTHUR
Requested That this court appoint counsel to Represent
this defendant and provide This defendant a copy of ALL
hearings and the Record.
                RESPECTFULLY SUBMITTED This
19th day of September, 2003

                                        by _____
                                              IN PROPRIA PERSOUAm

RECEIVED
SEP 2 6 2003

ROBERT J. MANGAN, CLERK
APPELLATE COURT 2nd DISTRICT

EXHIBIT H

IN September, 1999, it became apparent That
The Lower Court would not rule according TO
Case Law and That The Appellant had been incarcerated
within the Winnebago JAIL 398 days in which he was only
allowed out of his cell to attend court. whereby he was
not allowed to see the Sun or breath The outside air
For his entire tenure at Jail. The Appellant informed
the Lower Court he was leaving The Jurisdiction.

The STATE obtained an indictment For violation of Bail
on November 18, 1999, Therein, The STATE was confused as to
The crime That The appellant was found guilty of committing.
IT should be noted. The STATE Failed To file a warrant until
14 months Later, December 2000. (See  00 CF 3174)

On May 24, 2000, The STATE of Illinois filed a TAX Lien
on The appellant. Thereafter, The appellant had various
correspondence with The Illinois Revenue service. The
appellant contends That The STATE of Illinois Knew
exactly Where The appellant has resided since 1999, 2000,
2001, 2002, 2003, and That The STATE of Illinois made
absolutely No Diligent effort To Serve a warrant on The
appellant, Nor any Notification To The existence of a
warrant. For 5 years, Illinois Knew Where the appellant Lived.

Wherefore, Based on The Foregoing The Appellant
Respectfully Request This Court To Vacate The NCIC warrant
Due To The Lack of Diligence on The Part of

— 2 —

The Winnebago County Attorney's Office in Notifying the Appellant that a warrant was issued and having knowledge of the Appellant's whereabouts the Statute of Limitation has run.

Further, that due to the Bill of Indictment issued on November 18, 1999, and that the State was confused as to the conviction of the Appellant, and being that that Grand Jury has been absolved for 4 years that the Statutes of Limitations has expired (See 00 CF 3174)

Further, that this Court appoint an appellate lawyer to amend this appeal) Petition. That this appellant is currently incarcerated pending a (Governor's Warrant in Yavapai County Jail, Prescott, Arizona

Further, that this Court serve this and all pleadings on the respected parties, including a copy for the appellant.

Further that this Court peruse the entire record for further abuses by the lower court.

RESPECTFULLY SUBMITTED this 19th day of September, 2003

By _Dave C Weelbey_

~ 4 ~

# IN THE ILLINOIS COURT OF APPEALS

DARD C. WELLBURG,
  APPELLANT,

Vs.

PEOPLE OF THE STATE
OF ILLINOIS,
  APPELLEES,

COURT OF APPEALS NO _____

WINNEBAGO COUNTY NO 94 CF 2420

APPELLANT'S OPENING
BRIEF OR IN THE ALTERNATIVE
WRIT FOR SPECIAL ACTION

FOR HIS OPENING BRIEF THE APPELLANT,
DARD C. WELLBURG, IN PRO PER and hereby alleges
as Follows:

THE TRIAL COURT ABUSED ITS DISCRETION
as Follows:

1.) ON or about November 15, 1994, WHILE
INCARCERATED WITHIN THE WINNEBAGO COUNTY JAIL, and
While THE APPELLANT WAS NOT represented by COUNSEL
THE APPELLANT SUBMITTED WRITTEN NOTICE FOR A FAST
and SPEEDY TRIAL. THE TRIAL COURT Refused to recognize
DUE PROCESS. IT TOOK 4 years

2.) ON or about AUGUST 15, 1997, THE TRIAL above
Referenced commenced. THE STATE's FIRST WITNESS
WAS INSTRUCTED by THE STATE's ATTORNEY to Tell THE
JURY, THE APPELLANT had been IN PRISON. By THE

TRIAL COURTS REFUSAL TO GRANT A MISTRIAL THE APPELLANT WAS DENIED A FAIR AND IMPARTIAL TRIAL.

3.) The STATE'S SECOND WITNESS, a Pawn Shop PROPRIETOR FROM NORTH DAKOTA, WHEN ASKED IN OPEN COURT IF he COULD IDENTIFY ANYONE IN THE COURT ROOM. HIS RESPONSE WAS, THAT he COULD NOT! AFTER SPENDING THAT EVENING WITH THE PROSECUTOR. THAT WITNESS WAS ALLOWED TO CHANGE HIS TESTIMONY THE NEXT DAY, AND POINT TO THE APPELLANT.

4.) IN ORDER TO SUBSTANTIATE THE AMOUNT OF THE ALLEGED THEFT IN EXCESS OF $10,000.00. THE STATE PRESENTED (6) SIX INVOICES WHICH WERE ADDRESSED TO A FICTICIOUS ADDRESS. ONE INVOICE WAS AFTER THE FACT. THIS SHOWS INEFFECTIVE ASSISTANCE OF COUNSEL, PROSECUTORIAL MISCONDUCT, AND AN UNFAIR AND PREJUDICIAL TRIER OF FACT.

## INTRODUCTION:

This CASE SPRINGS FROM THE YEAR 1994, WHEREBY THE STATE'S ENTIRE CASE REVOLVED AROUND A CONVICTED FELON, JESSENIA NEGRON, WHO, INTER alia, CLAIMED THE APPELLANT, WHILE SITTING IN A CAR, ACROSS THE STREET FROM NORMA'S JEWELRY, FORCED HER AND HER MOTHER NOEMI (NEGRON) WEILBURG AT GUN POINT TO ROB THE STORE. JUNE 1994. JESSENIA NEGRON WAS THE STEP-DAUGHTER AND INSTEAD OF ACCEPTING THE CONSEQUENCES FOR HER OWN ACTIONS AND HER MOTHER, WHO ADMITTEDLY PAWNED JEWELRY HALF WAY ACROSS THE U.S.

— 2 —

E-FILED
Monday, 16 October, 2006  12:14:16 PM
Clerk, U.S. District Court, ILCD



**STATE OF ILLINOIS APPELLATE COURT SECOND DISTRICT**

| OFFICE OF THE CLERK | APPELLATE COURT BUILDING |
|---|---|
| 847/695-3750 | 55 SYMPHONY WAY |
| 847/695-0092 TDD | ELGIN, ILLINOIS 60120-5558 |

Appeal from the Circuit Court of County of Winnebago

  Trial Court No.: 94CF2420

THE COURT HAS THIS DAY, 10/21/03, ENTERED THE FOLLOWING FINAL ORDER
IN THE CASE OF:

  Gen. No.: 2-03-1089

  People v. Weilburg, Daro C.

    Motion by defendant-appellant, Daro C. Weilburg,
    for leave to file late notice of appeal.  Motion
    by appellant for leave to file late notice of
    appeal is denied.  THIS ORDER IS FINAL AND SHALL
    STAND AS THE MANDATE OF THIS COURT.
    (Hutchinson, Grometer, McLaren, JJ.)


                        Robert J. Mangan
                        Clerk



cc: Daro C. Weilburg
    Honorable Paul A. Logli
    Martin P. Moltz, Deputy Director


EXHIBIT I

E-FILED
Monday, 16 October, 2006 12:14:37 PM
Clerk, U.S. District Court, ILCD

STATE OF ILLINOIS APPELLATE COURT

FOR THE SECOND JUDICIAL DISTRICT

RECEIVED

NOV 0 3 2005

ROBERT J. MANGAN, CLERK
APPELLATE COURT 2nd DISTRICT

FILED

NOV 3 2005

ROBERT J. MANGAN, CLERK
APPELLATE COURT 2nd DISTRICT

ORIGINAL

**PEOPLE OF THE STATE**

**OF ILLINOIS,**

Plaintiff-Appellee,

V.

**DARO WEILBURG,**

Defendant-Appellant.

Appeal No. 2-04-1246

Circuit Court No. 94-CF-2420

(Hon. Michael Morrison)

(Hon. Gerald F. Grubb)

ON APPEAL FROM THE 17th JUDICIAL CIRCUIT

COURT, COUNTY OF WINNEBAGO

# OPENING BRIEF

## FOR DEFENDANT-APPELLANT

### PRO-SE

DARO WEILBURG/R32180

In Propria Personam

P.O. BOX #900

Taylorville, Illinois

62568

EXHIBIT J

# TABLE OF CONTENTS

|  | Page |
| --- | --- |
| TABLE OF AUTHORITIES | iii |
| JURISDICTIONAL STATEMENT | 1 |
| ISSUES PRESENTED FOR REVIEW | 2 |
| STATEMENT OF CASE | 4 |
| SUMMARY OF ARGUMENT | 6 |
| STANDARD OF REVIEW | 9 |
| ARGUMENTS I–VIII | 10–27 |

The Appellant is entitled to a reversal of his conviction and dismissal of the charge with prejudice because the State of Illinois violated his speedy trial right; prompted its first witness to inform the jury the Appellant had been in prison previously; tampered with a witness' testimony; and presented (6) ficticiously adressed invoices with one invoice being dated 18 months after the fact to support the 4th proposition that the alleged amount was over $10K.

The appellant received ineffective assistance of counsel by counsel's neglect to pre-empt a juror with close association with the appellant; counsel's failure to challenge the (6) ficticiously adressed invoices. The trial court erred by not holding an evidentiary hearing to Voir Dire the juror about his failure to disclose his association with the Appellant. The trial court erred by sentencing the appellant in absentia, without any representation.

The State withheld exculpatory evidence that another suspect who worked at the store was implicated by the victim. The State failed to charge Jesenia

Negron's mother, Noemi Negron, whom the thief, Jesenia Negron accused of assisting her in the theft. That is tantamount to selective prosecution. The appellant was denied a speedy trial after filing a written demand on December 23, 1994 and numerous oral demands there after. The trial didn't occur until August 25, 1997, (31 month delay).

CONCLUSION                                    28

INDEX TO APPENDIX                             29

APPENDIX                                      A·i — A·62

# TABLE OF AUTHORITIES

|  | Page |
|---|---|
| People v. Cole, (1973) 54 Ill.2d 401,411, 298 N.E.2d 705 | 11 |
| Supreme Court Rule 615(a) | 11 |
| People v. Vargas, (1996) 220 Ill. Dec. 616 | 11 |
| People v. Stremmel, (2nd Dist. 1994) 197 Ill. Dec. 177 | 11 |
| People v. Kantu, (1999) 242 Ill. Dec. 92 | 11 |
| People v. Gaston, (1984) 125 Ill. App. 3d 7 (80 Ill.Dec. 519) | 11/14 |
| People v. Potts, (2nd Dist 1992) 224 Ill. App. 3d 938 | 11 |
| People v. Phillips, 102 S. Ct. 940 | 12 |
| U.S. v. Scott, (5th Cir. 1988) 854 F.2d 697 | 12 |
| McDonald v. Press, (1915) 35 S.Ct. 783 | 12 |
| Estes v. Texas, (1953) 74 S.Ct. 450 | 12 |
| U.S. Ex Rel. Tobe v. Bensinger, (1974) 493 F.2d 232 | 12 |
| People v. Jones, (1985) 105 Ill.2d 342 | 12 |
| People v. Tobe, (1971) 49 Ill.2d 538 | 12 |
| People v. Malmenato, (1958) 14 Ill.2d 52 | 12 |
| People v. Hunt, (1st Dist 1983) 112 Ill.App. 3d 138 | 12 |
| People v. Witte, (2nd Dist. 1983) 115 Ill. App. 3d 20 | 12 |
| People v. Dolgin, (1953) 415 Ill. 434 | 12 |
| People v. Rodgers, (2nd. Dist. 1985) 135 Ill. App. 2d 608 | 12 |
| People v. Hanks, (1st Dist. 2002) 269 Ill.Dec. 804 | 12 |
| People v. Olinger, (1997) 223 Ill.Dec. 588 | 13 |
| People v. Russel, (1972) 4 Ill.App.3d 26 | 13 |
| People v. Gaston, (1st Dist. 1984) 80 Ill.Dec. 519 | 14 |
| People v. Black, 317 Ill. 603, 148 N.E. 281 | 15 |
| People v. Decker, 310 Ill. 234, 141 N.E. 710 | 16 |
| People v. Johnson, (1st Dist. 1993) 11 Ill.App. 3d 745 | 16 |
| Bruton v. U.S., (1968) 88 S. Ct. 1620 | 16 |

# TABLE OF AUTHORITIES (con't)

| | Page |
|---|---|
| People v. Nelson, 124 Ill. App. 2d 280, 260 N.E. 2d 251 | 17 |
| People v. Lambert, (2nd Dist. 1997) 224 Ill. Dec 360 | 18 |
| People v. Hudson, (1980) 41 Ill. Dec 403 | 18 |
| People v. Smith, (1985) 93 Ill. Dec 512 | 19 |
| Brady v. Maryland, (1963) 83 S.Ct. 1194 | 21 |
| Giglio v. U.S, (1972) 92 S.Ct. 763 | 22 |
| U.S. v. Souffront, (7th Cir. 2003) 338 F.3d. 809 | 22 |
| U.S. v. Bagley, (1985) 105 S.Ct. 3375 | 22 |
| Kyles v. Whitley, (1995) 115 S.Ct. 1555 | 22 |
| People v. Garrett, (1990) 111 Ill. Dec. 214 | 24 |
| 725 ILCS 5/115-4.1 (a) | 25 |
| Home Depot U.S.A., Inc. v. Dept. of Revenue (2005) 291 Ill. Dec. 333 | 27 |
| People v. Mathis, (1st Dist. 2005) 293 Ill. Dec 51 | 27 |
| People v. Bonutti, (2004) 288 Ill. Dec. 131 | 27 |
| People v. Woodward, (1997) 222 Ill. Dec 401 | 27 |
| Benton v. Maryland, (1969) 395 U.S. 784 | 28 |
| Jeffers v. U.S, (1997) 432 U.S. 137 | 28 |
| Ohio v. Johnson, (1984) 467 U.S. 493 | 28 |

## JURISDICTION

The Appellant appeals from the judgment of 17th Judicial Circuit Court for the county of Winnebago, Illinois. This appellant filed his appeal on or about October 30, 2004 and was granted leave by this court to proceed pro se on or about October 12, 2005.

This court has jurisdiction pursuant to Supreme Court Rule 602, article VI, section 6 of the Illinois Constitution (1970) and pursuant to 725 ILCS 5/115-4.1 (g) which provides in pertinent part: "an absent defendant has a right to file for a new trial or new sentencing and also retains the right to request a review of the judgment and sentence not vacated by the trial court." (emphasis added)

## ISSUES PRESENTED FOR REVIEW

1.) Whether the appellant was denied a speedy trial by the (34) month delay in taking the case to trial, due process violation.

2.) Whether the trial court erred by not accepting the pro-se appellant's written demand for a speedy trial filed on December 23, 1994, treating said demand as a motion, and subsequently denying the demand.

3.) Whether it was ineffective assistance of counsel for attorney Gregory Clark's oral demand for a speedy trial, and his failure to present a follow up written demand.

4.) Whether it was ineffective assistance of counsel for attorney Francis Martinez' failure to pre-empt Juror John Murray after the appellant notified counsel Martinez that Murray and appellant worked together at a defunct Rockford company called Mattison Technologies, Inc., for (2) mths, during the jury selection.

5.) Whether it was court error by not voir diring Juror Murray during a post-trial evidentiary hearing to ascertain why Juror Murray withheld his association with the appellant.

6.) Whether the State's Attorney prompted Jesenia Negron, its first witness, to inform the jury that the appellant had been in prison before, and whether that constituted improper conduct, due process.

7.) Whether the trial court erred by not granting a mistrial after

-7-

the State's First witness informed the Jury the appellant had previously been in prison, or granted a directed verdict, The appellant did not testify.

8.) Whether it was court error to allow witness Lonnie Cochran to alter his previous testimony that he could not identify the appellant in open court one day. Cochran leaves the court with the prosecutor, spends the evening with the prosecutor, returns the following day with a positive identification, of a photo.

9.) Whether the court erred by allowing business records clearly made during the investigation, with one dated (18) months after the alleged offense, into the cache of evidence That went to the Jury.

10.) Whether it was ineffective assistance of counsel, prosecutorial misconduct and/or court error for the jury to receive (6) invoices to substantiate the proposition that the alleged offense was in Total, over $10,000., when the invoices were clearly addressed to a ficticious address, an adress that did not exist in Rockford, IL.

11.) Whether the (6) tainted invoices tainted all the evidence as those bogus invoices were sent to the jury room.

12.) Whether the state proved it's case of theft, over $10,000. a class 2 Felony against the appellant beyond a reasonable doubt.

13.) Whether the appellant was unlawfully sentenced in absentia without either retained or appointed counsel.

14.) Whether any of the foregoing elements constitutes due process violations.

# STATEMENT OF CASE

A. On June 24, 1994, Jesenia Negron and Noemi Negron allegedly deprived Norma's Jewelry, 224 N. Main St., Rockford, IL., County of Winnebago, of Jewelry and items, depending on who one chooses to believe, totalling somewhere between $300.00 to $75,000.00, (Jesenia (daughter) to Noemi)

B. On October 28, 1994, the appellant, was apprehended outside Parthenio's Restaurant and charged by complaint of theft, the appellant had resided in a homeless shelter, the appellant had just gotten a Job.

C. On or about November 9, 1994, the appellant was indicted for Theft over $30,000 a class 3 felony as count I and Theft over $10,000, a class 2 felony, count II. Count I was later dismissed.

D. Jesenia Negron was given a 30 month probation sentence for testifying against the appellant. Jesenia's mother was never charged.

E. On December 23, 1994, the appellant made a written demand for a Speedy Trial and filed same with the court.

F. On January 5, 1995, the appellant was released on a recognizance bond. The appellant was required to report to pre-trial services (4) times a week, which he did for over (2) years.

G. On August 25, 1997, a Jury was selected and on August 29, 1997 the appellant was found guilty.

H. On or about September 15, 1997 the court revoked the Appellant's bond and ordered him to Jail by granting the States Motion.

I. On or about October 5, 1998, the appellant was released on $2,500.00 10% cash bond.

J. On September 30, 1999, the date of Sentencing, the appellant wrote a motion to the court that he was vacating the jurisdiction, due in part to blatant violations of his due process rights.

K. On November 18, 1999, the court ordered the bond forfeited.

L. On November 19, 1999, the court sentenced the appellant in violation of the law. The appellant was NOT represented by counsel and was absent. The court punished the appellant with a maximum term of (7) years in prison.

# SUMMARY OF ARGUMENT

A-1    The appellant was not proved guilty of theft, over $10,000. beyond a reasonable doubt, he was denied a speedy trial, he was deprived of a fair trial, and he was sentenced in violation of the law. The appellant received extremely ineffective assistance of counsel and was forced by circumstance to proceed pro-se.

B-1    One has to wonder what a defendant charged with a crime has to do to get a speedy trial, in Winnebago County. The appellant filed a pro-se written demand for a speedy trial on December 23, 1994, and the court denied the demand as a motion. Court appointed counsel failed to procure a speedy trial, ineffective assistance resulted.

C-1    The appellant informs his court appointed counsel, "Hey, I know that Juror, I used to work with him either at Behr Metals or Mattison Technologies, Inc." His attorney fails to pre-empt the juror and the appellant gets convicted. The attorney admits the appellant informed him of the close association and admits ineffective assistance and the trial court refuses to call the juror back to ask the juror why he said he didn't know the appellant.

D-1    The State prompts its first witness to inform the jury that the appellant had a previous prison sentence and the court rewards the State by refusing to grant a mistrial.

E-1    Another witness of the State is unable to identify the appellant as someone who pawned scrap jewelry (3) years prior. The witness spends the evening with the prosecutor and comes back to court the next day and the court allows him to change his testimony.

F-1    On the day of trial the State produces (8) invoices. These invoices were not provided in discovery, and for good reason. One was dated (18) months after the fact, and (6) were made out to an address that doesn't even exist, the State duped the defense counsel to adopt the invoices and the bogus address escapes notice from the Defense, the judge and 12 jurors.

G-1    On the day of sentencing the court sentences the appellant to a (7) year imprisonment in absentia and fails to adhere to the Statute which provides in pertinent part at: 725 ILCS 5/115-4.1 (a) that:

> "The absent defendant _must_ be represented by either retained or appointed counsel."

H-1    During the post-trial proceedings, the presentence investigation specifically, the alleged victim provides that she believed the wrong guy was convicted and stated that Jesenia Negron, her mother, Noemi Negron and another employee were responsible. However, even though Jesenia Negron admitted to the theft during the trial, and implicated her mother as an accomplice, the mother was never charged nor did the State provide that another suspect, the other employee who was implicated by the victim, was questioned or investigated to the defense. The State failed to disclose exculpatory evidence.

I-1    To date the appellant has not been served an authentic warrant for the sentencing in _absentia_ signed by a judge. Therefore the (3) year Statute of Limitations lapsed since the State failed to make any attempt to serve any warrant for the (7) year court imposed prison sentence, for over (4) years. In fact, the appellant was extradited for the

Sole charge of Violation of Bail. There was no (1) year prison sentence on a class 2, theft provided in the rendition papers served on the Governor of Arizona by the Governor of Illinois.

# STANDARD OF REVIEW

This court reviews a circuit court's finding of fact and it's rulings of law for clear error. Fundamental errors are subject to review by this court and this case presents numerous fundamental errors. This Appellant respectively requests this court to consider the entire record of the proceedings in this case for errors not presented by this appellant.

## ARGUMENT I

THE TRIAL COURT ERRED BY NOT RECALLING
JUROR LIST NO. 118, SEQUENCE 193, JOHN
MURRAY ON SEPTEMBER 3RD 1999, DURING
THE HEARING TO VOIR DIRE HIM AS TO WHY
HE FAILED TO DIVULGE HIS CLOSE ASSOCIA-
TION WITH THE APPELLANT DURING SELECTION.

On August 25, 1997, Jury selection commenced. When Juror John Murray was asked by the court: "John, do you know any of the witness in this case?" Juror Murray answered: "No." The court then asked: "How about any of the participants at all, Defendant, any of the attorneys?" Juror Murray answers: "No." (See Appendix A-1, A-2)

The appellant informed counsel Francis Martinez (court appointed) the he (the appellant) knew Juror Murray and had worked with Mr. Murray. counsel's laxness prevented his use of a pre-empt and counsel failed to voir dire Juror Murray on the association issue. Counsel told the appellant to not say anything unless he was asked by the court.

On September 1, 1997, the appellant wrote the court, the State, and his court appointed counsel of the association. (See appendix A-3, A-4). The appellant provided proof of his employment at Mattison Technologies, Inc, and that he was discharged for suspected drug use. (See appendix A-5)

On September, 26, 1997, court appointed counsel files a motion for New Trial and admits his ineffectiveness by not pre-empting Juror Murray. (See Appendix A-6, A-7) After numerous pleas to the court for a new trial, evidentiary hearings, the appellant was placed in jail by the court revocating his bond on September 15, 1997, just (2 weeks) after he wrote the court of his association with Juror Murray.

The appellant, while in jail, embarked on a one man crusade to gain

access to the court. The appellant made many pleadings seeking an evidentiary hearing into Juror John Murray's failure to divulge his working with and knowing the appellant, for over (2) years.

The failure to afford a defendant a fair trial "violates even the minimal standards of due process" and requires a reversal. People v. Cole, (1973) 54 Ill. 2d 401, 411, 298 N.E.2d 705. The appellant asserts that the trial court should have held an evidentiary hearing to voir dire Juror Murray as to why he failed to divulge his close association, this hearing should have been sua sponte. However, the trial court believed because of the failure of defense counsel and the defendant to bring the matter to the court's attention during the jury selection, the matter was waived. This is not an adequate rendering based on Supreme Court Rule 615(a) which provides in pertinent part "that procedural defaults effecting substantial rights may be noticed even if the matters were not raised in the trial court." "If the error is of such a magnitude so as to deny a defendant a fair and impartial trial this court must review." People v. Vargas, (1996) 220 Ill. Dec. 616, 174 Ill.2d 355, 673 N.E.2d 1037, People v. Stremmel, (2nd. Dist 1994) 197 Ill. Dec. 177, 258 Ill. App. 3d 93, 630 N.E.2d 1301 People v. Kantu, (1999) 242 Ill. Dec. 92, 188 Ill.2d 157, 720 N.E.2d 1047

"Neither a trial judges inadvertant omissions, nor a jurors failure to divulge possibly pertinent information, nor a trial attorney's laxness can be allowed to impair the fundamental right to a fair and impartial jury." (See People v. Gaston, (1984) 125 Ill. App. 3d 7, 465 N.E.2d 631) that right must be guarded zealously. This court held similiarly in People v. Potts, (2nd Dist. 1992) 224 Ill. App. 3d 938, 586 N.E.2d 1376.

This appellant demonstrated that juror Murray was prejudiced towards him during the trial due to the juror's knowledge that the appellant had been discharged from Mattison Technologies, Inc. for suspected drug use. Actually,

If there is any doubt than a hearing must be held as provided by the United States Supreme Court. In the case of *People v. Phillips*, 455 U.S. 209, 222, 102 S.Ct. 940, 948, 71 L.Ed. 2d 78, 89 a Justice Noted:

"a hearing permits Counsel to probe the juror's memory, his reasons for acting as he did, and his understanding of the consequences of his actions. A hearing also permits the trial Judge to observe the juror's demeanor under cross-examination and to evaluate his answers in light of the particular circumstances of the case."

See also: *U.S. v. Scott*, 854 F.2d 697 (5th cir. 1988) and *Mcdonald v. Press*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed.2d 1300 (1915)

The United States Supreme Court has consistently held that in cases where jurors withhold vital information when voir dire constitutes denial of due process of Law. *Estes v. Texas*, (1953) 381 U.S. 227, 74 Ct. 450, 98 L.Ed.2d 654, *U.S. ex Rel. Tobe v. Bensinger*, 493 F.2d 232 (cert. denied, 1974) Illinois courts have held similiarly. *(People v. Jones,* (1985) 105 Ill.2d 342, 475 N.E.2d 832), *(People v. Dolgin* (1953) 415 Ill. 434, 114 N.E.2d 389), and *(People v. Tobe,* 49 Ill.2d 538, 276 N.E.2d 294 (1971) *(People v. Malmenato,* (1958) 14 Ill.2d 52, 150 N.E.2d 806

Illinois courts have collectively held that due process of law is violative if a juror withholds association with any party of the case at bar. *People v. Hunt,* (1st Dist 1983) 112 Ill.App.3d 138, 445 N.E.2d 408, *People v. Witte,* 115 Ill.App.3d 20, 449 N.E.2d 966 (2nd Dist. 1983) and *People v. Rogers,* (2nd Dist. 1985) 135 Ill.App.3d 608, 482 N.E.2d 639

Both the juror's failure to divulge his close association with the appellant and the trial court's failure to voir dire the juror at the evidentiary hearing dictate reversal of this case. In *People v. Hanks,* (1st Dist 2002) 269 Ill.Dec. 804, 335 Ill.App.3d 894, 781 N.E.2d 601, juror alvarez failed to disclose an employment association with defendant Hanks. The 1st Dist. Appellate court reversed because the trial court failed to hold an evidentiary hearing to voir dire that

## ARGUMENT II

### APPELLANT'S COUNSEL WAS INEFFECTIVE FOR NOT PRE-EMPTING JUROR JOHN MURRAY WHEN COUNSEL WAS APPRISED OF THE CLOSE ASSOCIATION BETWEEN JUROR MURRAY AND THE APPELLANT DURING JURY SELECTION

Appellant incorporates the entire Argument I within this Argument and reiterates A quote from People v. Gaston, (1st Dist. 1984) 80 Ill. Dec. 519, 125 Ill. App 7, 465 N.E.2d 631, "[a] defendant's right to trial by a fair and impartial jury is a constitutional cornerstone of our judicial system. This right should be guarded zealously; neither a trial judge's inadvertant omissions, nor a juror's failure to divulge possibly pertinent information nor a _trial attorney's laxness can be allowed to impair this fundamental right._" (Emphasis added). Both the juror's failure to divulge and counsel's laxness are evident in this case. It cannot be disputed that counsel was aware of the association between the juror and the appellant during jury selection, counsel admitted the appellant had informed him, and counsel admitted he was ineffective for not pre-empting the juror. The appellant filed an affidavit in support of his amended motion for evidentiary hearing, attesting that his counsel was aware of the association. Counsel could have moved the court to remove the juror for cause. The abbreviated hearing on the appellant's motion for a new trial can not be considered a meaningful inquiry, where no testimony was heard on allegations which might have shed light on the juror's actual prejudice toward this appellant because the appellant had been discharged for possible drug use from the company where both the juror and the appellant worked. (See Appendix A-8, A-9)

## ARGUMENT III

### THE TRIAL COURT ERRED BY NOT DECLARING A MISTRIAL DUE TO THE STATE'S THINLY VEILED QUESTION TO JESENIA NEGRON PROMPTING A RESPONSE TO INFORM THE JURY THAT THE APPELLANT HAD BEEN RECENTLY RELEASED FROM PRISON.

During the State's examination of H's First witness the following question was asked of Jesinia Negron: "Jesenia, back then when the defendant was working maintainance for your mother, what line of work was he in besides maintainance?" If the State had stopped there and allowed Jesenia to answer, her answer being "From what I understand he had recently been released from prison," would have been an unresponsive answer. However, the state follow the question with another question: "Was there anything else, any other line of work he was involved in back then that you were aware of?" Jesenia's answer is now invited. This court should note that Jesenia's use of the presenttense word "understand" instead of the pasttense word "understood" dictates prompting of the response. (see Appendix A-10)

Counsel for the defense promptly objected and the court not only sustained the objection, but ordered the jury to disregard. The appellant, defense counsel and the prosecutor were quickly ushered to chambers where a lengthy hearing transpired. That hearing delay compounded the jury's inability to ignore the response. However, the question raises the issue of improper conduct. Here, the appellant relies on the holding by the Illinois supreme court in the matter of <u>People v. Black</u>, 317 Ill. 603, 614, 148 N.E. 281, wherein: "There is no question more damaging to a defendant than one that suggests or intimates (or

invites) or intimates that he is a criminal or has been charged with a criminal offense." (see also People v. Decker, 310 Ill. 234, 141 N.E. 710)

During the colloquy in chambers, defense counsel defended the prosecutor, failed to allow the court to have the court reporter to recite the question and answer issue, and failed to cross-examine the witness as to why she answered that the appellant had been in prison, given that the State alleged that the witness was cautioned to not divulge the appellant's past. In fact, the witness could only have learned from the State that the appellant had been in prison previously because the appellant never disclosed his past to either Jesenia or Jesenia's Mother, Noemi. Thus, prompting the present tense use of the word "Understand" instead of the past tense use of the word 'Understood'. (see August 25-29, 1997, transcript excerpt or record of proceedings as Appendix A-10 — A-30)

The State presented the matter of People v. Johnson, (1st Dist. 1993) 11 Ill. App. 3d 745, 297 N.E. 2d 683, to support the position of not declaring a mistrial. The trial court agreed. However, reliance on Johnson, supra, in Appellant's case was misplaced. In Johnson, supra the witness made a reference to a criminal history sheet, the trial court Judge lied to the jury to assure the defendant a fair trial, but, that defendant took the stand so that case is and was not on point, the error was harmless. In Appellant's case, the trial court merely sustained the objection and ordered the jury to disregard. The trial court did not tell the jury the appellant had never been in prison.

In the matter of Bruton v. U.S. (1968) 391 U.S. 123, 88 S. Ct. 1620 the Justice noted that certain inadvertant mistakes creep in to virtually every trial, no one is guaranteed a perfect trial, But, something such as an implication that a defendant has been in prison, posed to a jury, compounded by a delay, all practicing attorneys know that any instruction to disregard

successfully removing the statement from the jury's collective minds is unmitigated fiction. While an instruction to disregard ordinarily cures error in its admission, People v. Nelson, 124 Ill.App 2d 280, 260 N.E.2d 251, certain errors cannot be cured by instruction, and this is one case that instruction to disregard failed. Take away the prompted answer of the appellant's prior imprisonment, take away the prejudiced juror, take away the (6) bogus invoices to support the proposition of theft over $10,000., take away the tampered testimony of Lonnie Cochran, and add that the State withheld exculpatory evidence, to wit: that there was another suspect as provided by the victim and the State is left without any evidence whatsoever, against this appellant. That is, with the exception of Jesenia Negron's testimony. A co-defendant who admitted her mother assisted her in a theft, yet the mother is never charged. That is selective prosecution, (prosecute the guy with the prison past, be sure to slip it to the jury). It should be noted the one who admitted to the theft, received a 30 month term of probation, compare that to appellant's (7) year maximum term in prison and the punishments are disproportionate.

## ARGUMENT IV

THE TRIAL COURT ERRED BY ALLOWING SIX (6) INVOICES INTO EVIDENCE WHICH THE JUDGE ADMITTED TO KNOWING THE INVOICES WERE ADDRESSED TO A STREET THAT DID NOT EXIST IN ROCKFORD, ILL.

On or about August 26, 1997, the state presented (8) invoices to the defense that were not previously disclosed in discovery. The defense adopted the invoices and submitted them as defense exhibits. One invoice was dated (18) months after the fact, (5) invoices were addressed to 527 W. Main, Rockford, ILL., (1) invoice was addressed to 527 W. Main, Rockford, Chicago, ILL.. However, the witness/victim, Norma Battiga, testified that Norma's Jewelry was located at 224 N. Main St., Rockford, ILL. on June 29, 1994 the date of the alleged offense.

Ironically, the trial Judge admitted he seen the W and noted the number difference, but allowed the exhibits to go to the jury. (See Report of Proceedings, September 3, 1998, page 13, Lns. 17-23) In fact, this court should take judicial notice of that entire transcript Stamped S000074 - S000158, by The clerk.

In light of this court's 1997 decision in People v. Lambert, 224 Ill.Dec 360, 288 Ill.App.3d 450, 681 N.E.2d 675 any erroneous admission of substantive evidence constitutes reversable error. This court held and the law is clear that: "[I]f there is a reasonable probability that erroneously admitted testimony (or evidence) contributed to a conviction, the error cannot be considered harmless." (Emphasis added) [Parenthesis mine], People v. Hudson, (1980) 41 Ill. Dec. 903, 86 Ill.App.3d 335; 408 N.E.2d 325.

Even if sufficient evidence was introduced to establish a defendant's guilt beyond a reasonable doubt, there is still reversable error when the improper admission (6 Ficticiously addressed invoices) clouds the evidence to such a degree that it is impossible to tell whether the Jury relied on it. (see People v. Smith, (1985) 93 Ill. Dec. 512, 139 Ill. App. 3d 21, 486 N.E. 2d 1347)

On November 19, 1999, when sentencing this appellant in *absentia* and without any representation, the court was also confused as to the amount alleged. (See Report of Proceedings, November 19, 1999, page 9, Line 20-Page 10, ln 4.) Wherein the trial court presents: " Quite frankly, in looking at all the arguments Mr. Weilburg made, the strongest argument he had was whether or not the State's evidence that was submitted, ... whether or not that was sufficient to prove that damage -- or not damage -- the amount stolen was in excess of $10,000.00." On page 10, Line 23-page 11, ln. 1 the judge reiterates his confusion: " I think of all Mr. Weilburg's arguments, the strongest again have to go to the amount of loss sustained by the victim in this case." 'Strongest argument' means the court agrees, or partially agrees. 'Strongest' means it is credible. If the argument was credible, then the State's case was not proved. Doubt- reasonable doubt existed even in the court's mind. (See Appendix A-31—A-33, excerpt from Report of Proceedings November 19, 1999) If the amount was in doubt, the State failed to prove it's case. The tainted invoices, tainted the testimony of the victim, and left the State with no evidence. Any tainted evidence, that goes into that jury room, with that jury, taints all the evidence. Lambert, supra and Smith, supra.

The trial court Judge then sentenced the appellant, not because of the amount, but because of the prior history, the past crime of the appellant. The trial court Judge admitted he knew the invoices were ficticiously addressed and allowed them into evidence. And, that is reversable error.

E-FILED
Monday, 16 October, 2006  12:15:11 PM
Clerk, U.S. District Court, ILCD

## ARGUMENT V

### THE TRIAL COURT ERRED BY ALLOWING LONNIE COCHRAN TO ALTER HIS TESTIMONY AFTER THE STATE LED THE WITNESS TO IDENTIY A PHOTO OF THE DEFENDANT RATHER THAN THE DEFENDANT AT TRIAL.

During the trial the state called Lonnie Cochran, a pawn shop broker from South Dakota. When asked by the state if the witness could identify anyone in the courtroom, the witness replied: "Honestly, No." The witness, after looking intently at the appellant in open court, spends the entire evening with the prosecutor. The next day, after instruction by the prosecutor, the witness is allowed to identify a photo of the appellant. If a witness cannot identify a defendant in open court, rhetorically, how can he identify a photo afterwords? The next day altering of the testimony, limiting said testimony to the photo and not the appellant was extremely prejudicial and violative of due process. The witness admitted he spent the evening with the prosecutor and the photo resembled the appellant to a tee, there was absolutely no distinguishable difference between the photo and the appellant. Reversable error occurred. (See trial transcript, August 25-29, 1997)

When testifying regarding the Pawn Ticket, Mr. Cochran again was instructed to testify that the pawned items were like new condition, "a ring with the stone removed was in new condition." However, the pawn slip referred to the items pawned as "scrap jewelry", the word scrap denotes, used, old, discarded, junk and or garbage. Ironically, he could recall the exact discription of the pawned items, but not the person who pawned the items.

## ARGUMENT VI
## THE STATE WITHHELD EXCULPATORY EVIDENCE THAT ANOTHER SUSPECT IN THE ALLEGED OFFENSE EXISTED, THE OTHER SUSPECT BEING ANOTHER EMPLOYEE OF THE VICTIM

On or about September 8, 1997, Stephen V. Smith, a Presentence investigator contacted the alleged victim Norma Barriga by Telephone. This telephonic interview took place less than (10) days after the trial. The Following colloquoy transpired: Mr. Smith stated: "When asked what she would like the Court to impose for a punishment on the defendant, Ms. Barriga stated <u>she believes the wrong person was convicted</u>. (Emphasis added) "She believes the mother (Noemi Negron) and daughter (Jesenia Negron) were responsible, <u>along with another employee who took his lunch earlier than he normally did the day of the theft.</u>" (parenthesis mine) (emphasis added)

This court must take notice of Jesenia Negron's testimony at trial. Ms. Negron, admitted to the theft and accused her mother of assisting in the theft. Ms. Negron also testified that the mother, ran off to Costa Rica with a man and got married. The mother was never charged and who's to say that other man wasn't that unnamed employee who took his lunch conveniently earlier than normal the day of the theft. (See Appendix A-34-A-35)

This court cannot retry this case. However, had the defense been apprised of the other employee whom the victim believed responsible, and had the defense inquired of Mr. Negron if the man the mother married and the employee reffered to by Ms. Barriga been one in the same. New light could shine through. A <u>Brady v. Maryland</u>, violation took place and this fact demands reversal.

In Brady v. Maryland, (1963) 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 our

highest Court, the United State's Supreme Court held that: "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment irrespective of the good faith or bad faith of the prosecution." The existance of that ex-employee who took his lunch earlier than normal the day of the theft is exculpatory evidence and falls within the Brady, Rule. (See Giglio v. U.S. (1972) 405 U.S. 150, 154, 92 S.Ct. 963, 31 L.Ed.2d 104 and U.S. v. Souffrant, (2003 7th Cir) 338 F.3d 809 at 819, and U.S. v. Bagley, (1985) 473 U.S. 667, at 676, 105 S.Ct. 3375, 87 L.Ed.2d 481) Such information or evidence also includes that given or known only to police and not the prosecutors, (See Kyles v. Whitly, (1995) 514 U.S. 419, 433-434, 115 S.Ct. 1555, 131 L.Ed.2d 490)

This appellant has established that either the police or the prosecution suppressed evidence, exculpatory evidence that there was another suspect and that evidence came from the victim herself, not the prosecution or the police and more importantly, after the trial. (Appendix A-34—A-35)   That evidence was material to an issue at trial. (See U.S. v. Silva, (7th Cir. 1995) 71 F.3d 667 at 670), similar to Bagley, supra, 473 U.S. at 675, where the government failed to assist the defense by disclosing information that might have been helpful in conducting cross-examination of Norma Barriga and Jesenia Negron, "such suppression of evidence amounts to a constitutional violation if it deprives the defendant of a fair trial," and that failure did deprive this appellant a fair trial. In addition, the effect that a particular piece of evidence/testimony is likely to have on the outcome of a trial must be determined in light of the full context of the weight and credibility of all the evidence actually presented at trial. Some evidence presented at this trial (6 tainted invoices) and exculpatory evidence withheld dictates reversal.

ARGUMENT VII

THE APPELLANT WAS DENIED A SPEEDY
TRIAL

While incarcerated within the Winnebago County Jail the Appellant made an oral demand for a Speedy trial on November 29, 1994 and a written pro se demand for a speedy trial on December 23, 1994. On January 5, 1995, the appellant was released on a recognizance bond of $50,000, (31) months later the trial commenced.

The appellant asserts that the 160 day speedy trial demand took immediate effect on January 5, 1995, the day of his release from Jail. During the entire year of 1995, neither the court nor the defense counsel took note of the written demand for speedy trial. Over the objection of the defendant, defense counsel Gregory Clark agreed to numerous continuances.

On January 8, 1996, counsel Gregory Clark presents an oral demand for a speedy trial but, fails to file a written demand. After many further court continuances, continued by the State, defense counsel Clark withdrew from the case, on September 17, 1996. (See appendix A-36—A-37)

On September 23, 1996, the appellant makes yet another demand for a speedy trial, that his written demand filed on December 23, 1994 stand. On November 27, 1996, the court denied the appellant's demand and treated that written demand for a speedy trial as a motion. The court then informed the appellant that he had to file a new demand for a speedy trial. (see September 23, 1996, Record of Proceedings page 9 Ln. 7 — page 10, Ln. 11) and (page 11, ln. 6 — page 13 Ln. 24) However, the court allowed the demand for a speedy trial to stand, or not. The relevent issue is the court abused it's authority by disregarding the Motion to dismiss and the speedy trial demand on one hand, then having a hearing on the Motion to Dismiss and the speedy trial

demand on November 27, 1996 on the other hand. If the demand for a speedy trial and the motion to Dismiss were disregarded because the appellant had no standing to file them _pro se_, then the hearing in which the Court denied  both pleadings was meaningless.

In it's argument the State relied on <u>People v. Garrett</u>, (1990) 111 Ill.Dec 214, 136 Ill.2d 318, the court adopted that reasoning. However, in <u>Garrett</u>, <u>supra</u> and every case cited by the State, not one defendant made any post release demand for a speedy trial and none made any written demand pre-trial. This appellant made one written demand and numerous verbal demands for a speedy trial. Reliance on <u>Garrett</u>, <u>supra</u> was truly misplaced.

A demand for a speedy trial is a notice, not a motion. The State and the court were well aware of this appellant's demand for a speedy trial, which is the legislative purpose for requiring the demand to be in written form after release from custody. The Court could neither disregard nor deny any demand, written or oral, for a speedy trial, to do so was an abuse of a constitutionally protected right and a denial of due process.

## ARGUMENT VIII

THE TRIAL COURT ERRED BY PLACING A
LIMITATION, AN EXCEPTION, And/or
A CONDITION UPON 725 ILCS 5/115-4.1(a)
NOT EXPRESSED BY LEGISLATIVE
INTENT WHEN SENTENCING THE
APPELLANT IN ABSENTIA WITHOUT
EITHER APPOINTED OR RETAINED
COUNSEL.

On September 3, 1999, the appellant appeared pro se to argue his Motion for New trial. The crux of the appellant's argument were the issue of the juror, the issue of the (6) pieces of tainted evidence crouched within an effective assistance of counsel claim, inter alia. The Strickland v. Washington, 2 prong test was clearly presented and substantiated by counsel's own admission. The pleading preserved pretty much the same arguments now before this court of review. The case law referenced in support of the motion for New trial overwhelmingly dictated the due process of law denial. Interestingly, the trial court presented that it could reduce the charge. (See September 3, 1999 record of proceedings page 6 - lns. 16 - page ??; ln. 8) again the court presents skeprisim regarding the amount of the alleged theft.

The trial court inquired of the Appellant whether he wanted an attorney to represent him on the sentencing matter, and asked the appellant if he could hire his own attorney. The court then asked if he (the appellant) was going to hire an attorney for sentencing and the appellant responded that he wasn't sure. (September 3, 1999 record of proceedings page 80 lns. 4 - 18) The court then set the sentencing date as September 30, 1999.

On September 30, 1999, the appellant failed to appear and sent a notice of his decision to both the State and the court specifying his reasons. (see Appendix A-38 — A-47) During the hearing of September 30, 1999, the court ordered the clerk to serve the notice of bond forfeiture upon the appellant at 1226 17th avenue, by certified mail. (See Appendix A-48 — A-57) The court further expressed it's confusion as to whether it could sentence the appellant in _absentia_, without counsel. (see Appendix A-51, Ln. 7 – A-54 ln. 1). The State then requests that the court appoint counsel and rather to concern itself with the appellant's rights, the court denies the State's request so as to prevent being unfair to an attorney. (see Appendix A-54 lns. 10-20).

The court's order to the clerk to serve the Bond Forfeiture hearing notice upon the appellant at 1226 17th avenue was error. As early as February 2, 1999, the appellant provided to the State and the court his current address as P.O. Box # 3132, Rockford, Ill (see Appendix A-58 — A-59/A-59 lns 13-15), again on March 11, 1999 (see Appendix A-60) and again on June 11, 1999 (see A-61 – A-62/A-62 lns. 16-21) The appellant never received any subsequent notices of any hearings after September 30, 1999 at his provided address.

725 ILCS 5/115-4.1 (a) provides in pertinent part: "The absent defendant _must_ be represented by retained or appointed counsel." (emphasis added) The sentencing court held an exception, a limitation or placed a condition upon that statute as if a _pro se_ defendant fails to appear, said defendant waives the applicability of the statute to his case. Firstly, to even sentence a defendant in _absentia_ is discretionary. "The court _may_," the statute does not mandate that the court _must_. However, the word 'must' utilized within the statute is used only in reference to the issue of representation. Thereby, the word 'must' located within 725 ILCS 5/115-4.1 (a) referenced to the absent defendant being represented

by counsel is not discretionary. Must denotes mandatory. _Home Depot U.S.A., Inc v. Dept. of Revenue_, (2005) 291 Ill. Dec. 333, 355 Ill. App. 3d. 370, 823 N.E.2d 625.    725 ILCS 5/115-4.1 (a) is clear and unambiguous, the trial court when sentencing this appellant should have given it effect as it was written, without reading into it exceptions, limitations or placing any condition which the legislature did not express within the statute itself. (see _People v. Mathis_, (2005 1st Dist.) 293 Ill. Dec. 51, 827 N.E.2d 932)

The controlling principles of statutory construction are well established by precedent. The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature, not the whims of the state prosecutor or the speculations of the sentencing court. (_People v. Bonutti_, (2004) 288 Ill. Dec. 131, 212 Ill. 2d 182, 817 N.E.2d 489. The best evidence of legislative intent is the language itself, which _must_ be given its plain and ordinary meaning. (_Bonutti_, _supra_ 212 Ill. 2d at 188) (See also _People v. Woodward_, (1997) 222 Ill. Dec. 401, 175 Ill. 2d 435, 677 N.E.2d 935. The sentencing in _absentia_, without any representation in violation of 725 ILCS 5/115-4.1(a) is unlawful and must be set aside. No limitations, exceptions or conditions can be used by the sentencing court to usurp legislative intent.

## ARGUMENT IX
## THE TRIAL COURT ERRED BY IMPOSING
## WHAT IS TANTAMOUNT TO MULTIPLE
## PUNISHMENTS FOR THE SAME OFFENSE

On January 5, 1994, the Appellant was released on a $50,000. recognizance bond. As a condition of that release, the appellant was required to report to pre-trial services (4) times a week until March 7, 1997, (26) months. (See Apendix A-62) Pre-trial services is operated out of the probation Department. In fact, the appellant was required to conform to the stipulations set by the Probation Department. Checks are made at the place of employment, the home of the accused, and the accused is required to provide a urine sample upon demand. The Appellant faithfully adhered to conditions.

Usually, a probationer is required to report (1) time a month, or (2) times a month. If the probationer is a problem even once a week. But, (4) times a week, for (26) months is tantamount to 10 years probation. The trial court failed to consider that time when sentencing this appellant because there was no Attorney to speak on the Appellant's behalf at the Sentence hearing held on November 19, 1999.

The unusual imposition placed upon this appellant of reporting to the probation department (4) times per week for (26) months was a sentence of probation. A double jeopardy claim results when multiple punishments for the same offense occur, the Appellant received two Sentences, once before he was convicted, of (26) months probation conditional release and once after conviction of (7) years imprisonment. The 5th Amendment guarantees protection against multiple punishments for the same offense. Benton V. Maryland, (1969) 395 U.S. 784, Jeffers V. U.S., (1977) 432 U.S. 137, Ohio V. Johnson, (1984) 467 U.S. 493, the imposition placed on this Appellant violates the 5th amendment and the 8th amendment protection against cruel and unusual Punishment

## ARGUMENT X

THE STATE FAILED TO USE DILIGENCE
IN SERVING ANY WARRANT UPON
THE APPELLANT AFTER THE TRIAL
COURT SENTENCED THE APPELLANT
TO (7) YEARS IN PRISON.

On November 19, 1999, the trial court sentenced this appellant to a (7) year term of prison. The State failed to use diligence in serving any warrant upon this appellant at his provided address. In fact, the Appellant has never received a written warrant, signed by a judge for the (7) year prison sentence. Since there was never a written warrant, the Statute of Limitations lapsed. Since the state failed to use diligence in serving any warrant, the (3) year statute of limitations also applied.

The appellant did receive a warrant, upon his arrival in Winnebago county, but it was for a bogus charge of att. Theft Grand, and it was unsigned by any Judge. This appellant was never charged with Attempted Theft Grand and the Appellant is unlawfully imprisoned as a result of that warrant. (See Appendix

## CONCLUSION

Speedy trial violation, prejudiced juror, improper conduct by the prosecutor or police withholding exculpatory evidence of another suspect, improper prosecutorial thinly veiled question prompting it's witness to inform the jury of the appellant's criminal past, failure of trial court to declare a mistrial, allowing the state to program a witness identification of a photo after the witness looks intently at the appellant, trial court's allowing (6) tainted pieces of evidence to go to the jury with an obviously written address that doesn't even exist, trial counsel's admitted ineffectiveness and the sentencing court's sentencing this appellant to (4) years imprisonment in <u>absentia</u>, without counsel is clearly violative of due process.

WHEREFORE based on the foregoing this appellant respectfully requests this court to reverse this case and dismiss with prejudice.

by David Wellbury
In Propria Personam

## INDEX TO APPENDIX

AUGUST 25, 1997 VOIR DIRE OF JUROR JOHN MURRAY          A·1—A·2

SEPTEMBER 1, 1997 LETTER INFORMING COURT OF ASSOCIATION    A·3—A·4

PROOF APPELLANT WORKED WITH JUROR MURRAY               A·5

FRANCIS MARTINEZ ADMITION OF INEFFECTIVE ASSISTANCE     A·6—A·7

APPELLANT'S AFFIDAVIT THAT HE TOLD COUNSEL OF THE ASSOCIATION    A·8—A·9

QUESTION AND ANSWER INFORMING JURY OF APPELLANT'S PAST CRIME    A·10—A·30

EXCERPT OF NOVEMBER 19, 1999 SENTENCE IN ABSENTIA       A·31—A·33

VICTIM'S STATEMENT OF ANOTHER SUSPECT                  A·34—A·35

COURT DOCKETING SHEET SHOWING SPEEDY TRIAL DEMAND      A·36—A·37

APPELLANT'S MOTION TO VACATE JURISDICTION (NOTICE)     A·38—A·47

SEPTEMBER 30, 1999 RECORD OF TRIAL COURT ERROR ON ADDRESS    A·48—A·57

APPELLANT'S ADDRESS CHANGE NOTICE TO COURT & STATE      A·58—A·62

COURT'S VACATING APPELLANT'S REPORTING TO PROBATION DEPT.    A·63

BOGUS WARRANT SERVED ON OCT. 1, 2003                   A·64

Aug. 25, 1999  VOIR DIRE
OF John MURRAY

1    JUROR JOHNSON:  Thank you.

2    THE COURT:  Mike, I will give you his

3    card.  The other jurors are on a recess so why

4    don't we take a recess, if we are giving the

5    jurors a break.  We will start in about 10

6    minutes.

7    MR. SALEMI:  Fine.

8    (Whereupon there was a short

9    recess, after which the

10   proceedings continued in open

11   Court.)

12   THE COURT:  Call a replacement for

13   Maurice Johnson, and I dismissed him for cause.

START—14   THE CLERK:  Okay.  List No. 118, call

15   sequence 193, John Murray.

16   THE COURT:  John, do you know any of

17   the witnesses in this case?

18   JUROR MURRAY:  No.

19   THE COURT:  How about any of the

20   participants at all, Defendant, any of the

21   attorneys?

22   JUROR MURRAY:  No.

23   THE COURT:  Any reason why you

24   couldn't serve as a juror in this case?

30

A-1

C000218

1      A.    21 years.

2      Q.    And your children, can you tell me

3 about them, what they do?

4      A.    My daughter is a teacher in Rockton

5 grade school, and my son is a senior in college

6 up in Kenosha.

7      Q.    Tell me about your job, what you do

8 on a daily basis?

9      A.    I am a machine repair mechanic.  I

10 take care of the production machines.  They

11 break done and we repair them.

12      Q.    Daytime shift?

13      A.    Day shift.

14      Q.    And you haven't been doing that for

15 very long?

16      A.    The company I worked for just

17 closed down in January called Madison

18 Technology.

19      Q.    How long were you with them?

20      A.    22 years.

21      Q.    Ever been called down for jury

22 service before?

23      A.    No.  I had, but I couldn't go

24 because I wasn't a citizen.

40

A-2

C000228

Juror John Murray
ISSUE.

**DARO WEILBURG**

DARO WEILBURG
1226 17th, Avenue #6
Rockford, Illinois 61104
Winnebago

Fax 815-964-5722
Home Phone 815-964-5722
Email Daro@Rockford.Com

September 01, 1997

Honorable Michael P. Morrison
Judge of the 17th Judicial Circuit Court
401 West State Street
Rockford, Illinois 61101

RE. *People vs. Weilburg*, 94 CF 2420

Dear Judge Morrison,

Please be advised that this is not an exparte communication. I have dispatched copies to both Mr. Scott Salemi and Mr. Frank Martinez.

While, I was not impressed with Mr. Salemi's intentional introduction of my past imprisonment to the jury. I do not herein argue that shoddy tactic. Nor, do I wish to argue the fact that Mr. Salemi tampered with the testimony of Mr. Lonnie Cochran. I do not wish to attack the questionable closing statement from Mr. Martinez of "Show me and you got us!" It was obvious that he should have been the prosecutor.

Those elements are best served on any appeal that may result. I will take this opportunity to address a tainted jury that could have been prevented had my attorney informed the court that I personally knew one of the jurors and had worked with that juror for a little under 6 months.

The Juror in question was Mr. John Murray. He and I worked at Mattison Technologies, Inc., from August of 1995 through January 1996. I was a Service Engineer and he was a Maintenance man. We did not work in the same department, but saw each other on a daily basis.

I was terminated from Mattison Technologies on February 28, 1996, for suspected use of marijuana. (See enclosed letter dated February 28, 1996 from Mattison Technologies). I had worked under the auspices of Gaffney Employment Services. Mattison paid Gaffney and Gaffney paid me. I took a second test, passed said test but, decided against remaining at Mattison because Mattison had financial difficulties. They filed Bankruptcy a short time later and eventually went out of business.

None-the-less, it was a small shop and news of terminating an employee for suspected drug use travels fast. I do not know why Mr. Murray failed to inform the court that he knew me. When I brought the matter to Frank Martinez' attention. He told me to remain silent unless asked by the court if I knew any of the Jurors. I was never asked. (See my jury selection notes)

I would have brought this matter up sooner but, I needed to find the attached letter to prove my association with Mr. Murray. If Mr. Murray informed others jurors of that past event I could not have

A•3

received a fair and impartial trial. Even if Mr. Murray said nothing to the other jurors, if he used it to formulate his own verdict I was still not afforded a fair and impartial trial as prescribed by law.

I have presented this issue in letter form because technically, I am still represented by an attorney. I also felt that I would allow the court to investigate on its own and move of its own volition. I believe that sufficient grounds exist to vacate/overturn the courts entering judgment of guilt, the jury's verdict and order a new trial.

I do not wish to proceed in pro per at this time. Based on the prior trial results I certainly couldn't do much worse by representing myself. However, I am still inclined to utilize the services of a lawyer.

RESPECTFULLY SUBMITTED this 2nd. day of September, 1997 by certified mail.

*Daro Weilburg*

DARO WEILBURG

CC  Mr. Scott Salemi
    Mr. Frank Martinez

A-4

C0062-18

EXHIBIT 2

# MATTISON TECHNOLOGIES INC.



February 28, 1996

Daro Weilburg
1226 17th Avenue
Rockford, IL 61104

Dear Daro:

Regarding our conversation of this afternoon about the results of your drug test, as we discussed, we are unable to proceed with the hiring process due to a positive drug result. You indicated that you would go to a lab of your choosing and not back to Physician's Immediate Care for another drug test as you said you did not do drugs. While we may receive a favorable result from this 2nd test, it does not ensure you being hired at Mattison.

Since our conversation ended rather suddenly, I was unable to give you the following information. Because you have been working with Mattison for the past several months, we would like to afford you the opportunity, if you wish, to speak to Dr. Koehler. You may call Physicians Immediate Care at 874-8000 and schedule an appointment with Dr. Koehler. There is a $20.00 fee for this consultation. He will go over the results of your test with you and answer any questions you may have. If it is determined that your drug screen showed positive due to reasons that are satisfactory to Dr. Koehler and to Mattison, the hiring process will proceed and Mattison will then pay the $20.00 consultation fee. However, it is Mattison's policy that a positive drug screen prevents the potential new hire from being considered for employment for a twelve month period following the screening.

Please contact me if you have any questions.

Sincerely,

Shelly J. Volden, PHR
Human Resource Manager

A-5

C000214

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
COUNTY OF WINNEBAGO

**FILED**

Date: *9 26 97*

*Marc A. Gasparini*

Clerk of the Circuit Court

By_____ Deputy
Winnebago County, IL

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | |
| Plaintiff, | ) ) | CASE NO.:  94 CF 2420 |
| vs. | ) ) | |
| DARO C. WEILBURG, | ) ) | *WITHDRAWN 7/19/99* |
| Defendant. | ) | **MOTION FOR A NEW TRIAL** |

**NOW COMES** the Defendant, DARO C. WEILBURG by his attorney, FRANCIS M. MARTINEZ, and moves this Court to vacate the finding of the jury and grant the Defendant a new trial and on behalf of his motion states:

1.   It was error for the Court to deny the Defendant's Motion to Declare a Mistrial after the State's witness made a statement.

2.   It was error to allow Lonnie Cochran to testify a second time as to his identification of the photograph of the Defendant.

3.   It was ineffective assistance of counsel for defense counsel to not excuse a juror, John Murry, because of an alleged acquaintance with the defendant.

4.   It was error for the Court to allow the testimony of Chris Davis as expert testimony that certain items found in the abandoned RV could only be used to work with jewelry.

5.   It was error for the Court to deny the Defendant's Motion for  Directed Verdict at the close of the State's case.

*A - 6*

**WHEREFORE,** the Defendant prays that this Court grant this Motion for a New

Trial.

DARO C. WEILBURG, Defendant

BY: *Francis M Mart*

(FRANCIS M. MARTINEZ, His Attorney

FRANCIS M. MARTINEZ #362
SEVENTH STREET LAW OFFICES
311 Seventh Street
Rockford, IL 61104
(815) 964-7933

**PROOF OF SERVICE**
The undersigned certifies that the foregoing instrument was served
upon all parties to the above cause by depositing a copy thereof in the
U.S. Mail, postage prepaid, in envelopes addressed to each of the
attorneys of record herein at their respective addresses disclosed on the
pleadings, on _September 26_ , 19 97

*Marie a. Hagerman*

# STATE OF ILLINOIS
## IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
## COUNTY OF WINNEBAGO

PEOPLE OF THE STATE )
OF ILLINOIS, )
     Plaintiff, )
     Vs. )
DARO WEILBURG, )
     Defendant )

CASE NO. __94 CF 2420__

AFFIDAVIT IN SUPPORT OF AMENDED MOTION FOR POST-TRIAL EVIDENTIARY HEARING

I, DARO WEILBURG, being First duly sworn upon my oath deposes and says that the following is true and correct except as to the matters stated herein upon my Belief and as to those matters, I believe them to be true:

THAT:

1) I'm the defendant in the above captioned matter and the movant in the Amended Motion For Post-Trial Evidentiary Hearing;

2) That I knew Juror John Murray when I worked at Mattison Technologies, Inc. As a service engineer;

3) John Murray and I spoke on occasion usually about the company's Financial insolvency;

4) John Murray was indignant that I made more money than he did; yet we basically did the same thing. He repaired machines in house, I repaired machines on the road;

5) John Murray and I spoke often at breaks and at company meetings & at Leo Wier's Retirement Party;

A-8

0000266

6) I told my attorney that I knew John Murray and he told me to not say anything unless I was specifically asked if I knew any of the jurors by the court;

7) I was terminated for suspected use of marijuana after a failed urine analysis;

8) John Murray and Bob Lawson (foreman in assembly) and everyone else in the plant knew I had been terminated for suspected marijuana use;

9) When not on the road fixing machines, I worked in assembly and metal work (lathe, welding, etc.);

10.) I knew John Murray and he knew me, after making eye contact on Aug 26, 1997, John Murray avoided making eye contact and purposely slouched behind another juror throughout the remainder of the trial.

FURTHER AFFIANT SAYETH NAUGHT!

SUBSCRIBED and SWORN to before me this 2nd day of APRIL FR

_Orill Det_ DATE: 4-2-98
WITNESS

_Dave Willberg_
AFFIANT

_____ DATE 4-2-98
WITNESS

A-9

C000267

TESTIMONY OF Jesenia Newton, August 26, 1997
and Colloquy in chambers

1    days, and my mom decided to give up everything that

2    she had worked for in Massachusetts and move out to

3    Arizona to take care of him.

4        Q    In Arizona, that's where she got the job

5    then managing the apartment complex?

6        A    Eventually.

7        Q    Do you know how she came into contact with

8    the Defendant?

9        A    She hired him.  I suppose that he must

10    have filled out an application, and she accepted.

11        Q    Eventually did the Defendant do

12    maintenance work at the apartment complex your

13    mother managed?

14        A    Yes, he did, that was his position.

15        Q    Jesenia, back then when the Defendant was

16    working maintenance for your mother, what line of

17    work was he in besides maintenance?  Was there

18    anything else, any other line of work he was

19    involved in back then that you were aware of?

20        A    From what I understand he had recently

21    been released from prison.

22        MR. MARTINEZ:  Objection, Judge.

23        THE COURT:  Sustained.  The jury is

24    ordered to disregard that.

25        MR. MARTINEZ:  Judge, may we approach?

000767

A-10

Colloquoy in chambers Regarding Negron
answer To Question

```
 1                    (Whereupon a conversation was

 2                    had outside the hearing of the

 3                    Court Reporter.)

 4          THE COURT:  We will go to chambers.

 5                    (Whereupon the proceedings

 6                    Continued in chambers out

 7                    of the presence of the Jurors.)

 8          MR. MARTINEZ:  Judge, I have to formally

 9     move on the record for a mistrial, and do so

10     emphatically.  We had a Motion in Limine that

11     discussed what was admissible, was not

12     admissible and for what purposes.  It's not

13     clear whether my client will testify yet, but

14     the fact of the matter is now the jury has been

15     contaminated.  It's my belief that when the

16     Court instructs -- admonishes them to disregard

17     it, and it, in fact, reinforces they will now

18     wonder what he was in prison for.

19          During Jesenia's cross-examination she is

20     going to be impeached with information that the

21     deal she made -- if the deal she made is a jail

22     eligible prison eligible offense and she

23     escaped it with probation.  Between that and

24     what the Defendant -- what they now know that

25     he has been in jail now they are speculating
```

000768

1    what he was in jail for, another jewelry heist,

2    another theft, is he a three time loser, I

3    believe it's permanently prejudiced and

4    contaminated this jury.  I don't think an

5    admonition is sufficient.

6        MR. SALEMI:  For Mr. Martinez'

7    consumption, and for the record after you

8    granted -- or after you ruled on that motion, I

9    believe it was an oral motion you brought,

10    Frank, regarding that?

11        MR. MARTINEZ:  Probably.  I didn't file a

12    written motion.

13        MR. SALEMI:  I specifically indicated she

14    could in no way, shape or form mention the

15    Defendant's prior incarceration or prior

16    criminal record?

17        MR. MARTINEZ:  My comments aren't directed

18    --

19        MR. SALEMI:  I want to make sure the

20    record is clear.  I specifically, last evening

21    when I pre-tried her on this case, indicated to

22    her unequivocally that in no circumstances

23    could she mention it.

24        MR. MARTINEZ:  I think the Court has to

25    declare a mistrial.  I am ready to start

000769

A-12

21

1    picking a new jury.  I am not trying to

2    postpone this a week or a month, I just think

3    we have to start over, and this jury cannot

4    start over this case given the situation.

5        MR. SALEMI:  I think the Court quickly

6    granted -- I'm not happy with the situation,

7    but the Court did quickly grant the motion or

8    the objection.  You quickly instructed the jury

9    to disregard.  It was done with no delay at

10   all.  There was no thought process involved by

11   the bench.

12       THE COURT:  In light of the State's

13   Attorneys statements, does that affect you at

14   all?

15       MR. MARTINEZ:  No.

16       THE COURT:  You might be able to question

17   her on the issue as to whether or not she was

18   informed not to mention that he was in custody.

19       MR. MARTINEZ:   I believe I have no

20   problem with Mr. Salemi.

21       THE COURT:  But you might be able to use

22   that as an impeachment.

23       MR. MARTINEZ:  That just makes it worse.

24   That's not sufficient.  The damage is done by

25   her statement, and I personally believe she did

K000770

1    it on purpose.  She is a 4.0 student.  You

2    know, I am sure she has a vendetta against Mr.

3    Weilburg and probably didn't realize she was

4    doing the damage, but I believe it's a little

5    dig, but it's a dig that's costly to my client,

6    and again I don't believe Mr. Salemi has

7    absolutely any responsibility for it, but it

8    does contaminate the case.

9        THE COURT:  If I knew your client were

10    going to testify I wouldn't think the harm is

11    that great because they are going to be aware

12    of a prior record, but if he not going to

13    testify -- and I am concerned about putting him

14    in a situation of being forced because of it --

15        MR. MARTINEZ:  It's been our intention

16    that he not testify, barring something

17    unforeseeable in this trial that would require

18    him to explain something, but my intention was

19    not.

20        THE COURT:  Mr. Salemi, there's a

21    possibility we could start with the jury today,

22    if I declared a mistrial.  It's your case.  You

23    know, I don't know, I don't know how critical

24    it is.  I haven't had occasion to look at any

25    case law on it.  I almost, you know, spur of

X000771

E-FILED
Monday, 16 October, 2006 12:15:43 PM
Clerk, U.S. District Court, ILCD

```
 1      the moment I would almost like to recess and

 2      see if there's anything that might --

 3          MR. MARTINEZ:  I would rather have the

 4      decision done right.  If you are ruling against

 5      me, I am preserving my objection.  If you feel

 6      more comfortable -- I am certainly not

 7      demanding an instantaneous ruling, but I am

 8      arguing strongly for my position.

 9          THE COURT:  I would like to take a 15

10      minute recess to see if we can find any case

11      law.

12          MR. SALEMI:  I will look.

13          MR. MARTINEZ:  Let's take a break and we

14      can all do our things.

15          THE COURT:  Let's go back in the

16      courtroom, and I will take a 15 minute recess.

17                      Whereupon the proceedings

18                      continued in open Court in

19                      the jury's presence.)

20          THE COURT:  We are back in open Court at

21      this time.  At the present time I am forced to

22      ask for or order a recess in this case.  I am

23      going to take about a 15 minute recess.  We are

24      going to recess until five, maybe ten minutes

25      after 10:00, so it could be 15 to 20 minutes.
```

A000772

A-15

1     I would caution the jury not to discuss any of

2     the issues that might be presented by what's

3     transpired so far, and I will see you back in

4     five or ten minutes after 10:00.  I will have

5     to send Mike to bring you back into the

6     courtroom.  The witness may step down.

7          MR. MARTINEZ:  May we be excused, Judge?

8          THE COURT:  Yes.

9               Whereupon there was a short

10              recess, after which the

11              proceedings continued out of the

12              presence of the Jury.)

13          THE COURT:  For the Court record, we are

14     now in the courtroom, the jury has been excused

15     and is not present.  The Defendant and Mr.

16     Martinez are here, and Mr. Salemi is here.

17     Anybody find any authority?

18          MR. MARTINEZ:  Well, Judge, I just

19     reviewed the authorities under mistrials in the

20     Illinois Digest and looked for cases.  I

21     couldn't find anything that was directly on

22     point, but I did find cases which indicate

23     language that would, I believe, support our

24     motion.  People versus King, 109 Ill. 2d 514.

25     People versus Swain, 164 Ill. App. 3d 997.

000773

1    Both indicate that the standard is when

2    evidence is admitted or an act is committed

3    that so prejudices or that denies the Defendant

4    a fair trial, a mistrial is appropriate,

5    mistrial is within the discretion of the Court,

6    and there's a plethora of cases that say that,

7    and I believe that the Court would be wise in

8    this case to exercise its discretion.

9        A lot of the mistrial cases involve, where

10   mistrials were denied, involve, for example,

11   something not being exposed about the

12   defendant, and that can be remedied by

13   disclosure or remarks where the Court found

14   that the jury may not have been contaminated

15   because, they may not have understood the

16   remark.  I believe it's the King case where a

17   police officer made a remark about a prior

18   trial, that this King case was on a retrial,

19   and a police officer made a remark involving a

20   prior hearing and the Court found that the jury

21   may not have understood the significance of

22   that, but that's a world away from what was

23   said here.

24       JEsenia Negron got on the stand and

25   verbally told the jurors that he had just

000774

1    gotten out of prison, and everybody understands

2    prison, the big house, and again with the

3    admonition to the jury then we research --

4    recessed, I'm sorry, after that remark.  I

5    don't think there's any doubt that the jury now

6    is contemplating that her prison remark has

7    created quite a stir, and that will certainly

8    weigh in this matter.

9        MR. SALEMI:  Okay, let's talk about the

10   law now.  Do you have your Hunters volume II?

11       THE COURT:  I brought the other one.  I

12   hate the two volume edition.

13       MR. SALEMI:  Yeah.

14       THE COURT:  It's on my desk, Mike.  I had

15   it open.  I notice there's a difference between

16   the two volumes and the cases they cite because

17   there's one case that I found in the old

18   edition which I didn't find in the new one.

19       MR. SALEMI:  I marked my old one too.  A

20   couple of things before you then.  I think it's

21   agreed then, I want to set -- make sure the

22   chronology is correct for the record.  My

23   interpretation, and it will be supported by the

24   record.  The time frame is immediately when

25   this information came out Mr. Martinez made his

..000775

```
 1        objection.  I believe you granted his objection

 2        without more than a second passing after he

 3        made it.  You didn't wait for a response from

 4        me.  You didn't appear to deliberate on your

 5        own at all.  You immediately granted the

 6        objection, and I think if I remember correctly,

 7        you also added the instruction to the jury to

 8        disregard.  I believe that was the case.

 9             THE COURT:  It is.

10             MR. SALEMI:  I also think for the record,

11        and I don't know if counsel will agree with me,

12        I don't believe my question was in any way,

13        shape or formed designed to elicit that

14        testimony, so I think we have to consider her

15        response at this point to have been an

16        unresponsive answer by her.  That's significant

17        for me, because of some of the cases that I

18        found in your second volume of Hunters under

19        the -- I believe it's page 701 at the very

20        bottom.

21             THE COURT:  Mike, I need the other book

22        too.  Wait, maybe this is the one.

23             MR. SALEMI:  It's volume -- I'm sorry, it

24        was Volume I, I'm sorry.  Do you have I?

25             THE COURT:  I have II.
```

A-19

1    MR. SALEMI: I'm sorry. Page 701 at the

2 very bottom there's a single sentence that says

3 "Where a police officer-- " and for the record

4 Hunters cites People versus Johnson at 11 Ill.

5 App. 3d 745, and they cite in Hunters page 701

6 of the most recent edition, Volume I, "Where a

7 police officer has referred to the defendant's

8 criminal history sheet the Court refused to

9 reverse the conviction since it appeared the

10 Judge immediately instructed the jury to

11 disregard the remark, and it was promptly

12 stricken. It was not directly responsive to

13 the question, and they go on to talk about

14 another part of the error in that case, but it

15 was not reversible error.

16    I Am conceding clearly that the

17 information she elicited is error. I do not

18 believe, however, under these circumstances

19 that it is reversible error, I do not concede

20 that. I believe in this situation your Honor

21 acted quickly and appropriately. She was

22 unresponsive, and we are in the situation we

23 are in, but I do not believe that after all the

24 work we have done, two days worth of picking a

25 jury, arrangements for witnesses from around

A-20

1     the country to be here, I don't think under all

2     of these circumstances of this case that that

3     single comment rose to the level of error,

4     reversible error.

5          I Will also cite for the record, I don't

6     know the exact cite, but in a recent case,

7     People versus Ricky Lambert, which was a case

8     that came out of the Second District, it was

9     reversed by the Second District Appellate Court

10    for the failure to give an instruction, and in

11    that opinion the Appellate Court noted that, in

12    disagreeing with the committee comments on an

13    instruction in the IPI book, the Second

14    District specifically stated that it had great

15    faith in the ability of jurors to follow legal

16    instructions, and that it specifically

17    disagreed with the note of the committee

18    comments in a particular case where the

19    committee noted they did not believe an

20    instruction was warranted because they did not

21    believe it would be followed.  I think this

22    situation is what the Appellate Court speaks up

23    to even in Lambert where it spoke to their

24    belief that a jury will follow jury

25    instructions.

000778

1          MR. Martinez says it's error, says that

2     it's reversible because of all the

3     circumstances, the fact we have taken a break.

4     I don't believe that to be the case. I believe

5     you immediately objected to it, asked that it

6     be stricken, and they will follow -- and we

7     have to presume they are going to follow your

8     direction.  At this point in the trial we have

9     begun five or so minutes into the testimony.

10     There is no reason to believe they forgot the

11     admonitions you gave 5 or 10 minutes before

12     opening statements when you told them what we

13     were going to do, and you might be faced with

14     granting objections to evidence.  They were

15     instructed on what you might do, and there's no

16     reason to believe they wouldn't follow that

17     instruction.

18          THE COURT:  Well, it's clear in my opening

19     statements or comments I did inform the jury if

20     I sustained an objection they were ordered to

21     disregard.  In fact, I told them to erase it

22     from their mind, but I also don't want to

23     commit error that's going to -- and I am

24     unclear as to the state of the law at this

25     time.  I have looked at some cases which seem

A00779

1    to imply both ways, and so I know and

2    understand that it's within my discretion, but

3    one of the cases that was cited in the older

4    Hunters, the Sixth Edition, and I now have the

5    Seventh Edition, cites a case, People versus

6    Harges, H-a-r-g-e-s.

7        MR. MARTINEZ:  H-a-r-g-e-s?

8        THE COURT:  And that's 87 Ill. App. 2d

9    376, 231 N.E. 2d 650, and again I prefer to

10    read the cases, I don't just use Hunters as my

11    gospel as far as how I should rule, but here it

12    says -- again this is a question by the State's

13    Attorney, it is error for the prosecutor to ask

14    the defendant a question such as "What did you

15    observe at the Fillmore Police Station" where

16    it appeared the only possible purpose of the

17    question was to bring to the attention of the

18    jury the fact that the defendant had been

19    arrested and been in the Fillmore Station in a

20    prior arrest, and such error is not cured by

21    the order sustaining the objection thereto.

22    Then again in that it's the State's Attorneys

23    question that intentionally brought out that

24    issue.

25        MR. SALEMI:  I believe that's what the

A000780

1    difference is from Johnson, a specific category

2    to an unresponsive answer by the witness.

3    There was no prosecutorial design, and I think

4    that's by everyone's agreement, nothing in my

5    question or nothing in my instructions to her

6    before she testified where she was specifically

7    instructed not to give that sort of

8    information.

9        MR. MARTINEZ:  Judge, the purpose of the

10   mistrial is to cure taint, whether it's --

11   whether it's intentional or unintentional, it

12   isn't relevant to the question of how tainted

13   this jury is now, how contaminated is this

14   trial.  It was an unresponsive question -- I'm

15   sorry, it was an unresponsive answer but a

16   devastating answer, that's our problem.

17       MR. SALEMI:  But that's not what the law

18   is.  The law makes a differentiation between an

19   unresponsive answer or something along the

20   lines of prosecutorial design, and I saw those

21   cases.  They talked about it being error to

22   elicit it.  There's not a question that -- my

23   question didn't bring her near it, and she was

24   not to go near it, so she clearly volunteered

25   it, it was clearly unresponsive, and People

A000781

1    versus Johnson speaks directly to it, and it is

2    a different circumstance.  If I would have

3    asked her was he in prison or was he in any

4    trouble, or anything like that, it's clearly by

5    design, and I caused my own error.

6         THE COURT:  There's also another case,

7    People versus Galloway.  Reversible error does

8    not result from witness's comment but merely

9    creates an inference of other crimes.

10   Particularly worth comment, this says it was

11   particularly induced by the accused' counsel

12   where the Court admonished the jury to

13   disregard the comment.  Again that's not on

14   point because you didn't induce this.

15        MR. MARTINEZ:  Plus this really didn't

16   create an inference that he had a criminal

17   record, it said he had a criminal record, a

18   comment like he just got out of prison.

19        THE COURT:  Her statement was kind of

20   equivocal from the standpoint that I believe he

21   had just got out of prison, something like

22   that, it wasn't for sure that he just got out

23   of prison.  I think the way the record shows

24   that -- I could have Mel read that back.

25        MR. SALEMI:  There was something to it --

34

1    It was not as clear.  I recall like you do, I

2    remember it a little different.  I believe he

3    is right, I am just saying I remember it

4    different.

5         THE COURT:  From what I understand, I

6    think --

7         MR. SALEMI:  She indicated it was her

8    belief, she didn't state equivocally he was

9    released from prison.  There is still some

10   equivocation.  We are still in the situation,

11   same situation like Johnson where the police

12   officer refers to defendant's criminal history

13   sheet, there's no question, and when that

14   officer made that comment, that there was a

15   criminal history sheet for the defendant in

16   that case, and that Court immediately

17   instructed the jury -- the Court immediately

18   instructed the jury to disregard and also

19   granted the objection and said disregard it

20   because it was not directly responsive to the

21   question, which was a consideration the First

22   District back then had in People versus

23   Johnson, they decided to uphold the trial

24   Court's determination, and there are cases

25   listed here that also speak to your

A-26

A000783

1    determination.

2         If the circumstances were different, if

3    there had been a big delay, if she would have

4    made some other kind of a statement, then we

5    would be in a different situation, or if my

6    question had somehow -- there had been any kind

7    of inference that, by design, my question could

8    have elicited this testimony or I inadvertantly

9    asked an improper question or questions that

10   lead us there, but we are nowhere near any part

11   of that category.

12        We are at a point where a witness just

13   volunteered an unresponsive answer, and you

14   quickly cured it, exactly as in People's versus

15   Johnson.   It's the exact same case.   I don't

16   know the circumstances in Johnson, unless they

17   were 3 or 4 minutes closer to the jury

18   admonishments than us.   I guess what I am

19   saying is I can't imagine in Johnson they were

20   closer to the beginning of the trial than we

21   were.

22        Let's assume for purposes of this that

23   People versus Johnson, this error or this

24   comment that was made took place in the middle

25   of the trial, it certainly didn't take place 5

G00784

1 minutes after the jury had been specifically

2 instructed by the Judge regarding the rulings

3 he would make during the trial, like you did

4 just now when you told the jurors that if you

5 grant an objection they should do something to

6 the affect of erase it from their mind.  You

7 took the time to do it.  You didn't have to

8 pre-instruct them, you didn't have to say a

9 word to them, and you did all of that, and 5 or

10 10 minutes later, about 5 or so questions, and

11 this unresponsive answer comes out.  I think

12 the jury is very capable of handling your

13 admonishments, and I agree with the Second

14 District when they spoke and stated their faith

15 in the jury.

16  THE COURT:  I am making the following

17 observations for the record because I feel it's

18 necessary.  Throughout the voir dire

19 questioning of this panel the Court, on a

20 regular basis, asked the jurors if they would

21 follow the law, even though their personal

22 feelings might be contrary to that.  Just

23 before we started the opening statements I had

24 given probably within 15 minutes of when this

25 occurred, a statement to the jurors about how

000785

1    Attorneys question that lead up to the response

2    by the witness, in no way invited that type of

3    response, and the juror's answer was not as a

4    direct result of the State's Attorneys

5    question.

6        MR. SALEMI:  I have spoken to Miss Negron

7    about her comment.  I asked her if she

8    remembered the admonition I had given her last

9    time when I spoke with her, that she should not

10   mention it.  She indicated to me, and I could

11   have her indicate for the record if you wish,

12   that apparently it was not by design or

13   calculation.  Apparently it was her oversight

14   in making the comment.  I do need you to,

15   before she testifies again, I want, on the

16   record, you to specifically instruct her that

17   she can in no way, shape or form make those

18   type comments.  At this points I need to be

19   completely insulated for my own person.  I have

20   given her a direct direction, which apparently

21   for one reason or another, was not followed.  I

22   need the Court to instruct she cannot mention

23   it any further.

24       THE COURT:  Do you want to have her come

25   into the courtroom before we bring the jury in?

A000787

11

loss sustained by the victim in this case, and

it is the sentence of this Court, taking into

consideration all of those factors in

aggravation and mitigation that I must take

into consideration and some of the mitigating

things to Mr. Weilburg were he does seem to

have maintained a living at a regular line of

employment while he was out on bond, and even

before his arrest originally on this charge, he

can be a productive, useful citizen, but for

some reason he has embarked upon a pattern of

committing crimes, and when I say a pattern his

previous theft conviction clearly involving

over $100,000 worth of loss in 1982 in Arizona,

and this one clearly exceeding $10,000 and

being as much as $150,000, and again I do not

believe the State has provided to this Court

any precise evidence as to the loss as to this

victim in this case.  I do find that there was

a loss in excess of $10,000, clearly, but the

State's evidence is imprecise in this case.

This Defendant in this case participated

in a very elaborate scheme in order to be able

to assist in robbing the jewelry store of all

A-33

R002118



CASE NO:
94-CF-2420

## DEPARTMENT OF COURT SERVICES

# PRESENTENCE REPORT

**NAME:**  WEILBURG, Daro Christopher

**PRESENT OFFENSE:**   Theft Exceeding $10,000.00 (Class 2 Felony)

**PLEA ENTERED**

NOT GUILTY  [X]

GUILTY  [ ]

[X] **IN CUSTODY**
**SINCE:** 09/15/97

[ ] **OUT OF CUSTODY**
**SINCE:** _____

**CODEFENDANTS:**

**DATE OF SENTENCING**  November 3, 1997, at 9:30 am

**NAME OF JUDGE**  Michael R. Morrison

**STATE'S ATTORNEY**  Scott G. Salemi

**DEFENSE ATTORNEY**  Francis M. Martinez

**PRESENTENCE INVESTIGATOR**  Stephen V. Smith

# DISPOSITION —

C000175

## PRESENTENCE REPORT

DARO CHRISTOPHER WEILBURG          CASE NO.:  94-CF-2420

I.   __PRESENT OFFENSE__

     (X)   As of this writing, no statement of facts has been received from the Winnebago County State's Attorney's Office.

     ( )   The following statement of facts was received from the Winnebago County State's Attorney's Office:

========================================================

II.   __VICTIM CONTACT__

     ( )   Not applicable.

     ( )   No victim information has been received as of this writing.

     ( )   Please refer to the attached victim impact statement.

     (X)   Victim information is as follows:

Ms. Barriga was contacted by telephone on 09/08/97.

She stated the theft had a severe impact on her, not only financially, but mentally as well. Estimated total loss as of this date exceed $150,000. $26,000.00 had to be repaid to suppliers and customers.

Ms. Barriga stated she was hospitalized for two days following the theft for a mental breakdown. She also suffered memory loss for two months and was able to regain her memory only through intense therapy.

Last summer Ms. Barriga moved her business to 3504 E. State Street, Rockford. She operates the store by herself because she cannot trust anyone to work for her at this point.

When asked what she would like the Court to impose for a punishment on the defendant, Ms. Barriga stated she believes the wrong person was convicted.

She believes the mother and daughter were responsible, along with another employee who took his lunch earlier than he normally did the day of the theft.

Jesenia Negron, the co-defendant and ex-employee who committed the theft, asked Ms. Barriga for forgiveness last month, but Ms. Barriga didn't believe she was sincere and could not forgive her.

# ADDITIONAL RECORD SHEET

Case No. .94-CF-2420....

Nature of Case .....Theft.....................Daro Weilburg.........................

Sheet #4

| DATE | JUDGE AND REPORTER | | COSTS | | |
|------|------|------|------|------|------|
| y 8 1995 | Nielsen MSG | ENTRY CONTINUED: Case reset for Jury Trial on July 24, 1995 | | | |
| | | at 9:00 A.M. for Status.  Deft given written notice. | | dw | |
| 1 24 1995 | Nielsen MSG | People by ASA Oseid for ASA Salemi.  Deft appears in Court | | | |
| | | in person and by his counsel, A ttorney Gregory Clark. | | | |
| | | By agreement, cause is continued to August 28, 1995 at | | | |
| | | 9:30 a.m. for jury trial. | | | |
| | | Deft given written notice in open Court. | | vw | |
| g 28 1995 | Nielsen MSG | People by ASA O'Connor for ASA Salemi.  Deft appears in | | | |
| | | Court in person and by his counsel, Attonrey Gregory | | | |
| | | Clark. | | | |
| | | By agreement, cause is continued to November 13, 1995 | | | |
| | | at 9:30 a.m. for jury trial. | | | |
| | | Deft given written notice in open Court. | | vw | |
| v 13 1995 | Nielsen MSG | People by ASA Salemi.  Deft appears in Court in person and | | | |
| | | by his counsel, Attorney Gregory Clark. | | | |
| | | On State's motion Jury Trial continued to January 8, 1996 at | | | |
| | | 9:30 A.M.  Deft given written notice. | | dw | |
| n 8 1996 | Riggs MSG | People by ASA Smith  for Salemi.  Deft appears in Court in | | | |
| | | person and by his counsel, Attorney Gregory Clark. | | | |
| | | Leave given deft to file Demand for Speedy Trial. | | | |
| | | State's Motion to continue Jury Trial heard and granted. | | | |
| | | Case reset for Jury Trial on April 22, 1996 at 9:00 A.M. | | | |
| | | Deft given written notice. | | dw | |
| Apr 22 1996 | Riggs MSG | People by ASA Salemi.  Deft appears in Court in person and | | | |
| | | by his counsel, Attorney Gregory Clark. | | C000517 | |
| | | Cause is continued to June 21, 1996 at 1:30 p.m. for final | | | |
| | | pre-trial conference and July 8, 1996 at 9:00 a.m. for jury | | | |
| | | trial.  Deft given written notice. | | | vw |
| Jun 21 1996 | Riggs MSG | People by ASA Salemi.  Deft appears in Court in person and | | | |
| | | byhis counsel, Attorney Greg Clark. | | | |
| | | Cause is continued to September 23, 1996 at 9:00 a.m. for | | | |
| 7 4 96 | | *Subpoena (3)* jury trial.  Deft given written notice in open court. | | | v |
| 7 12 96 | | *Subpoena* | | | |
| Sep 11 96 | | *Deft answer to States Motion for Discovery* | | | |

A-36

**ADDITIONAL RECORD SHEET**

Case No. *94 CF 2420*

Nature of Case ...................................................................................

| DATE | JUDGE AND REPORTER | | COSTS | | | |
|---|---|---|---|---|---|---|
| 17-96 | | *Notice of Mot* | | | | |
| 17-96 | | *Mot to Withdraw* | | | | |
| 17-96 | | *Notice 9/25/96   9A - 317* | | | | |
| 20-96  p 23 1996 | Riggs MDS | People by ASA Salemi.  Deft appears in Court in person and by his counsel, Attorney Gregory Clark.  Attorney Clark's motion to withdraw as counsel heard and granted.  Deft to proceed as Pro Se defense.  Deft advised of trial in Absentia.  Cause continued to October 15, 1996 at 9:00 a.m. for Status.  Deft given written notice. | | | | rj |
| t 15 1996 | Riggs MSG | People by ASA Salemi.  Deft appears in Court Pro Se.  Cause continued to November 27, 1996 at 1:30 p.m. for Hearing, and January 27, 1997 at 9:00 a.m. for Jury Trial.  Deft given written notice. | | | | rj |
| CA7-96 Coplan for Riggs  Oct 23 1996 | JED | *Motion to Dismiss*  People by ASA Salemi.  Motion to Require the Defendant to Provide Handwriting Sample heard and granted.  See Order (filed) | | | | dw |
| Nov 22 1996 | | *Motion to Require the Defendant to Provide Handwriting Sample* | | | | |
| Nov 22 1996 (Filed) | | *Notice*  *Amendment to motion to dismiss* | | | | |
| Nov 27 1996 | Riggs MSG | People by ASA Salemi.  Deft appears in Court pro se.  Cause comes on for Deft's Pro Se Motion to dismiss.  Said motion is heard and denied.  Cause is continued to January 7, 1997 at 9:00 a.m. for status and January 27, 1997 at 9:00 a.m. for Jury trial.  Deft given written notice in open Court. | C000548 | | | |
| Jan 7 1997 | Coplan for Morrison JED | People by ASA Salemi.  Deft appears in Court in pro se.  Cause is taken off January 27, 1997 and continued to January 28, 1997 at 9:00 a.m. for status.  Deft given written notice in open Court. | | | | vw |

A-37

Daro Weilburg
PO Box #3132
Rockford, IL 61106
In Propria Personam

10  6  99

STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT

COUNTY OF WINNEBAGO

PEOPLE OF THE STATE OF ILLINOIS, )                    ) No. 94 CF 2420
                             )
     Plaintiff,              ) STATEMENT OF DEFENDANT ON
                             )
     vs.                     ) EXERCISING HIS CONSTITUTIONAL
                             )
DARO WEILBURG,               ) RIGHT OF LIBERTY ABSENT DUE
                             )
     Defendant               PROCESS OF LAW

COMES NOW the Defendant, **DARO WEILBURG**, in _pro per_ and hereby provides his statement on exercising his Constitutional right to liberty absent due process of law and for his statement sets forth as follows:

## STATEMENT OF DARO WEILBURG

On September 3, 1999, this court, contrary to the rulings as dictated by the higher courts including, but not limited to, the United States Supreme Court, denied the Defendant's Motion for a New Trial.  Subsequently, ordering the Defendant to be sentenced

A-38

on September 30, 1999 for a crime that the defendant is not guilty of committing.

The numerous U.S. and Illinois Constitutional violations of the Defendant's rights were presented by the Defendant and are hereby juxtaposed as follows:

    1) Denial of a Fast and Speedy Trial;

    2) Ineffective assistance of counsel;

        A. Allowing a juror to sit in judgment over the defendant with a close association to Defendant;

        B. Not allowing the statement of Jesenia Negron that the Defendant had been recently released from prison to be read back during a colloquy in chambers and not ordering a new trial;

    1) Unlawful prompting of a State's witness by the Prosecutor to prejudice the jury against the Defendant;

    2) Prosecutorial misconduct by deceiving the Court into believing the Defendant had a violent past in order to deprive the Defendant of his freedom on bond;

    3) The Trial Court's fundamental error of allowing a witness Lonnie Cochron, to change his testimony;

    4) The trial Court's error of allowing fictitiously addressed invoices to be allowed into evidence;  And,

    5) The Trial Court's failure to act upon misconduct by an officer of the Court, to wit, Frances Martinez who clearly violated the Code of Professional

1    Responsibility and Cannon of Ethics by allowing a
2    juror with an association to the Defendant to sit
3    upon a jury in judgment over that Defendant.

4

5    The Defendant is innocent of the charges he stands convicted
6  of, and he can prove it. The evidence does not justify upholding
7  a conviction that for all practical purposes is a mockery of
8  justice.

9    Contrary to this court's ruling of "There is so much
10 overwhelming evidence in this case!"  The Defendant has the
11 transcripts, and there is absolutely no evidence against the
12 defendant.  Other than the testimony of a disgruntled convicted
13 teenager trying to blame the world for her shortcomings.

14    In re: **THE PAWN TICKET**  Neither this court, nor the
15 Assistant District Attorney, nor the jury are handwriting
16 specialist so the signature on the pawn ticket is not proof of
17 who signed it!

18    The other testimony and evidence, does not indicate the
19 Defendant is guilty either solely or collectively.  And to hold
20 so, goes against everything the U.S. and the Illinois
21 Constitutions prescribe.

22    In re: **JEROME VESECKY, Witness for the State:**           This
23 Defendant has an eyewitness who can place him at the trailer park
24 at the time of the alleged offense.  The People's own witness,
25 Mr. Jerome Vesecky, spoke with the Defendant on the morning of
26 June 24, 1994, while Jesenia and Noemi Negron were robbing the
27 Jewelry Store.  Noemi and Jesenia had the only car and the

28

A-40

1   Defendant spoke with Mr. Jerome Vesecky regarding a Direct
2   Current Converter within the motor Home which had to be replaced.

3       This court heard testimony from Frances Martinez, the
4   Defendant's Trial Lawyer that he only pretried one of the state's
5   numerous witnesses.

6       The Defendant was at the Trailer Park, without a car, he
7   could not have been at the jewelry store with Jesenia and Noemi.
8   Regardless of procedure, and hearings, this Defendant is
9   innocent.

10      This court held that because the Defendant gave a fictitious
11  name at the trailer park that it was evidence against him.. It
12  is not illegal to give a fictitious name, so long as no one is
13  defrauded and certainly, Mr. Jerome Vasecky testified the
14  Defendant did not defraud him.

15      In 1949, a convicted felon, imprisoned within the state of
16  Washington, escaped from the Walla Walla State Penitentiary.
17  During the interim of this escape, a prison guard was killed.
18  This prisoner obtained proof of his innocence while he was on the
19  loose. When he was finally apprehended, he was eventually tried
20  and sentenced to death. Sounds reasonable, but that ruling of
21  that court holds a special interest in this case at bar. The
22  concept of that Washington court's ruling is applicable in this
23  case. That prisoner made a fatal mistake in judgment, he took
24  another prisoner with him who was guilty of the crime he
25  committed.

26      Subsequently, that Washington court held that, if he had not
27  taken the other prisoner with him, he had the right to escape and
28  he had the right to even take a prison guard's life in the

1  process of that escape, because he was innocent of that crime. Be

2  that as it may,  he was guilty of aiding and abetting an escape

3  and he was also an accessory to murder because of the other

4  prisoner he took with him.  This defendant is likewise innocent!

5      All of the evidence in this case could have been refuted by

6  competent effective counsel.  Unfortunately, the Defendant was

7  represented by an idiot who defended the Prosecutor better than

8  his own client, an officer of the court who violated the Rules of

9  Professional Conduct and the Cannon of Ethics by his own

10  admission.  He even misrepresented the truth upon the stand

11  regarding whether the Defendant intended to take the stand on his

12  own behalf during the trial.

13      This court held that the evidence was overwhelming.  Citing

14  the canisters of propane found in the motor home, not realizing

15  that the defendant was in Maintenance and used the propane to

16  solder copper piping as part of his job..  This court held that

17  the pawn ticket was evidence..  Thus, this court set itself up as

18  an expert in handwriting analysis.  The pawn ticket does not bare

19  this defendant's signature, Plain and Simple!

20      This court did not take notice that only women's clothes

21  were found in the motor home and nothing of the defendant's…. Of

22  course, the defendant's idiot attorney didn't bring that out at

23  trial, nor did this court consider that the defendant was in

24  Rockford when he was apprehended.  This court stated that it

25  could not understand why Jesenia came back to Rockford to testify

26  against the Defendant, but ignored the fact that the defendant

27  never left Rockford and had no jewelry on his person.  Jesenia

28  Negron admitted pawning jewelry all across Arizona/Texas and

A-42

California, this defendant didn't pawn any jewelry.  There is one other factor why the defendant has chosen to take this avenue. He has filed a Civil Rights Complaint pursuant to Title 42 USCA Section 1983 against the Sheriff of Winnebago County and other officers of the Jail.  He fears for his life and well being and cannot allow this court to send him back to the defendant's listed in his civil rights complaint.  This Defendant could not allow himself to again be kept from fresh air or made to suffer pain waiting three days for aspirin or kept from access to a law library when other people have full access or kept from his religious beliefs while others are allowed to practice their convictions or religious beliefs.

This Court can sentence this Defendant as it has authority to do so, but, it will have to do so in abstentia.  According to the Inalienable right perfected by the US Constitution of Liberty this Defendant has chosen his liberty because he is innocent!

While fighting this case for almost five (5) years this defendant was a model citizen of Rockford, even a hero when he assisted in saving three (3) lives from a fire at Eighth and Broadway Streets in Rockford.

This defendant worked hard and received lead intoxication from a local Rockford business, after that business learned of the Defendant's ailment, they terminated him.  This defendant informed the court that he had lost part of his memory before the trial and at that time requested counsel be appointed to represent him.  The counsel appointed to represent the defendant was ineffective and incompetent.  This counsel even misrepresented the truth while under oath.

This court has the authority to sentence this Defendant but, cannot justifiably hold that he is guilty, quite frankly there is no evidence against this defendant that any competent effective attorney couldn't refute in any court of law.

This Defendant demanded a Fast and Speedy trial.  HE was denied the same.  He demanded a New Trial and had ample case law and statutory law to support his demand.  He was denied a fair trial...he was denied a fast and Speedy Trial.

This Defendant will not allow this court to again take away his freedom for the third time, for a crime that happened 20 years ago.  For a crime that this Defendant paid for and served his time.  Jeopardy attaches and that Jury heard this Defendant had been  released from Prison by the State's prompted witness.

.While I am free, I will commit no crimes just as I have been a model citizen here in Rockford, I will continue to do so and when this court's arm reaches me one day.  I hope and pray that it will see the error of it's way and grant me a new trial.  I am totally and unequivocally innocent of this crime.  I must flee to protect my rights.  I do so reluctantly and with remorse because I know in my heart I am innocent but, because of incompetent counsel, lead intoxication at the time of trial, and ineffective assistance of Counsel...a Jury was duped into finding me guilty.  I am forced to leave a good life here in Rockford. Just since being released in October of 1998, I had made a great comeback from the cell block I was unlawfully imprisoned within. I never missed a day of work and, made the company I worked for thousands of dollars.

A-44

1     I cannot let my freedom be taken again absent due process of

2 law.  Yes, I could await an appeal, but, I would lose everything

3 I had worked for and I would rather start over somewhere else

4 even to the point of constantly looking over my shoulder then to

5 face the peril of being put in jail/prison for something I did

6 not do, then to be placed in jeopardy and in the custody of

7 Defendant's in a Civil Rights Complaint and wonder each night

8 what they might do to me because I exercised my constitutional

9 rights to civil redress.

10     I will start over somewhere else.  In the back of my mind, I

11 will be haunted by the knowledge that I am wanted for a crime I

12 did not commit! I will be taunted with the fact that justice

13 eluded me by one incompetent-ineffective lawyer who sold me out

14 at trial!

15     On two separate occasions my freedom was stripped from me

16 without reason.  Once on October 28, 1994, when I was arrested

17 for this crime I did not commit because a teenager said I did it!

18 Your honor made a statement regarding why Jesenia Negron would

19 come back to Rockford when she could have gotten away. But, your

20 Honor failed to mention that I was here too, working, making my

21 own way.  Why?  Why would I stay here in Rockford when I too

22 could have made my way anywhere else?  Jesenia Negron had a

23 reason to blame me, she wanted to keep me away from her mother.

24 Call it jealousy, call it revenge.  But, never confuse it as

25 justice.

26     Once again I was stripped of my freedom when the Prosecutor

27 lied in this court regarding a bond hearing on Sept. 15, 1997,

28 wherein he told this court I had violent conviction.  Needless to

A-45

C006357

1   say, it was after I wrote this court and informed this court that

2   I had known a member of the jury and had informed my court

3   appointed counsel of this acquaintance. I was incarcerated

4   because I spoke up. And, for no other reason!

5       I will not allow this court to strip my freedom a third time

6   for a crime I did not commit. The Constitution of the United

7   States prescribes a fair trial for every citizen. This court

8   knows the Jury was informed by the State's own witness of a

9   previous conviction, that the Defendant had been in prison

10  before, if that fact was on one jurors mind, if just one juror

11  thought I was guilty because I was in prison before, I received

12  an unfair trial.

13      I have the right to liberty and I hereby exercise that right

14  I will not allow myself to be put into prison because I went to

15  prison for another crime in the past. When your Honor sentences

16  me in abstentia, I hope you can say with a clear conscious that

17  not one of those jurors considered the State's very first witness

18  who was prompted to say: "From what I understand, he had

19  recently been released from prison."

20

21      RESPECTFULLY SUBMITTED this 30th day of September, 1999

22

23      BY *Daro Weilburg*

24      DARO WEILBURG

25      In Propria Personam

26

27

28  Original of the foregoing was mailed this
    30th day of September, 1999, To:

A-46

C000358

Clerk of the 17th Judicial Court
400 West State Street
Rockford, IL 61101

A true copy of the foregoing was mailed this
30 day of September, 1999, to:

Wendy Larsen
Assistant State's Attorney
400 West State Street
Rockford, IL 61101

A-47

C006359

E-FILED
Monday, 16 October, 2006 12:16:29 PM
Clerk, U.S. District Court, ILCD

1

STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT

COUNTY OF WINNEBAGO

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) |
| People, | ) ) |
| vs. | ) 94-CF-2420 ) |
| | ) ) |
| DARO WEILBURG, | ) ) |
| Defendant. | ) |

FILED

ate: 5 16 08

Marc A. Gasparini
Clerk of the Circuit Court

REPORT OF PROCEEDINGS in the

above-entitled cause in Rockford, Winnebago County,

Illinois, in the Winnebago County Court House by the

Honorable Michael Morrison, Judge of said Court on the

Thirtieth day of September, A. D. 1999.

APPEARANCES:


            ATTORNEY WENDY LARSON
            appeared on behalf of the People.

            NO ONE appeared on behalf
            of the Defendant.


Melvyn D. Shutt, CSR
Lic. No. 084-002004

R002094

A-48

1    THE CLERK:  People versus Daro Weilburg.

2    THE CLERK:  I think have you that file..

3  Is that the '94?

4    MS. LARSON:  You had it while were in

5  hearings.

6    THE COURT:  I put a note on it and sent it

7  back.

8    THE CLERK:  That's one we can't find

9  anywhere.  It was in Court last on the 8th, or

10  something.

11    THE COURT:  I can't remember.

12    THE CLERK:  It was indicated that Kate was

13  your Clerk that day, but --

14    THE COURT:  I don't know that Kate stayed

15  in here.  I think I may have made a note on the

16  file so when she came in afterward -- did Kate

17  look for it?

18    THE CLERK:  I spent a couple of hours this

19  morning looking for it and couldn't find it.

20    MS. LARSON:  Well, Judge --

21    THE COURT:  This comes on for the purposes

22  of sentencing.  The Defendant has failed to

23  appear and it's now 2:50 p.m. and it was set

24  for 2:30.  The docket entry says 9:00 o'clock

R002095

n-ua

2

but it was set for 2:30.  Mr. Weilburg was not
here at 9:00 o'clock but I do have -- yes, it
was set for 2:30.

MS. LARSON:  Additionally, there was an
order for a presentence report, and in my
discussions with Otis Laurberg I learned that
Mr. Weilburg never appeared for his presentence
appointment either, so neither myself or the
Court has an updated presentence report.  There
should be an order in the file indicating that
he is to report to get an update completed and
he was scheduled, as I said, for the 10th of
September, and he never appeared in the adult
probation office.  Additionally, I asked
Detective Steve Martinez to go over to
Mr. Weilburg's apartment and verify his
residence, and he was unable to gain entry into
the building and no one responded to the door.
I would ask for a no bond bench warrant, Judge.

THE COURT:  The Defendant fails to appear,
I will issue a bench warrant with no bail.

MS. LARSON:  Can I ask the Defendant's
last known address.  Can I just verify that?

THE COURT:  Ginger, can you look in there

A-50

R002096

3

1    and see if you see a bond sheet?

2        THE CLERK:  There's a bond sheet in here

3    dated October of '98.

4        THE COURT:  That would have been it.

5        THE CLERK:  That would have been -- his

6    address then is 1226 Seventeenth Avenue.

7        MS. LARSON:  I wish I would have taken

8    this down.

9        THE COURT:  What was the bond amounted in

10   that?  I'm sorry, does he have cash?  Do you

11   want to do another one?

12       THE CLERK:  $7,500.

13       MS. LARSON:  These are old.

14       THE COURT:  They have the old statute

15   number on them.

16       MS. LARSON:  Does that affect the

17   legitimacy of the Order?

18       THE COURT:  Probably scratch that out and

19   put -- instead of Chapter 38 put in --

20       THE CLERK:  725 --

21       THE COURT:  725 ILCS-5/and then whatever

22   the section number that's in there.

23       MS. LARSON:  Bond forfeiture day?

24       THE COURT:  November -- Let's use

R002097

A-51

4

1    November 18th --

2         THE CLERK:  Okay.

3         THE COURT:  -- at 1:30.  I'm looking for

4    the warnings in absentia.

5         MS. LARSON:  Actually --

6         THE CLERK:  Are you real busy?

7         MS. LARSON:  Actually I mean I have the

8    complaining witness here, if you would take

9    testimony in absentia.

10        THE COURT:  I don't know if I can.  We are

11   not finished yet because we may have to send

12   another order.  I may have to send another

13   notice if you want to do it in absentia.  For

14   the record, Attorney Larson, you initially

15   indicated an issue about trial in absentia or

16   sentencing in absentia?

17        MS. LARSON:  Sentencing in absentia,

18   Judge.

19        THE COURT:  The Statute speaks clearly

20   about a Defendant's failure to appear for

21   trial, and I am referring to 725 Illinois

22   Compiled Statutes 35/115-4.1.  It says the

23   absent defendant -- I am reading at the

24   bottom -- well, in the first paragraph.

R002098

5

| | |
|---|---|
| 1 | MS. LARSON:   I think I am seeing where you |
| 2 | are. |
| 3 | THE COURT:   Towards the middle.  Trial in |
| 4 | Defendant's absence shall be by jury unless the |
| 5 | Defendant has previously waived trial by jury. |
| 6 | The absented defendant must be represented by a |
| 7 | retained or appointed counsel.  The problem is |
| 8 | he was pro se, and while it speaks to a trial I |
| 9 | would assume that for sentencing I have to look |
| 10 | at that, and while I know he waived counsel and |
| 11 | he waived it of record, and I believe after |
| 12 | sufficient admonishment, I don't know whether |
| 13 | or not I could proceed at this time.  What is |
| 14 | clear I can do -- well, I am not sure it's |
| 15 | clear, but it says at least when we are talking |
| 16 | about a trial date it says the Court may set a |
| 17 | case -- it says the Court may set the case for |
| 18 | trial which may be conducted under the section |
| 19 | despite the failure of the defendant to appear |
| 20 | at hearing at which trial date is set.  When |
| 21 | such trial date is set Clerk must send notice |
| 22 | to the Defendant by certified mail at his last |
| 23 | known address indicated on his bond slip notice |
| 24 | of the new date which has been set for trial. |

R002099

6

1    Such notification shall be a requirement if the

2    Defendant was not personally present in open

3    Court at the time the case was set for trial.

4    Of course, he was present when this was set.

5        MS. LARSON:  Judge, under E is that where

6    subsection E talks about the defendant, who in

7    his absence has been either convicted or

8    sentenced or both and what the person is

9    entitled to?

10        THE COURT:  That's if we do -- if we have

11    proceeded in absentia.

12        MS. LARSON:  I guess, Judge, what I would

13    ask at this time, in addition to the bench

14    warrant, is that counsel be appointed for the

15    Defendant and new notice be sent of a hearing

16    date for sentencing.

17        THE COURT:  See, I don't know that I can

18    do that because I don't see how it would be

19    fair to an attorney to appoint counsel to

20    represent him.

21        MS. LARSON:  Okay.  Well, then I guess we

22    will just go with the bench warrant and see if

23    we can locate him.

24        THE COURT:  I could set a sentencing in

A-54

process of that escape, because he was innocent of that crime. Be
that as it may,  he was guilty of aiding and abetting an escape
and he was also an accessory to murder because of the other
prisoner he took with him.  This defendant is likewise innocent!

All of the evidence in this case could have been refuted by
competent effective counsel.  Unfortunately, the Defendant was
represented by an idiot who defended the Prosecutor better than
his own client, an officer of the court who violated the Rules of
Professional Conduct and the Cannon of Ethics by his own
admission. . `He even misrepresented the truth upon the stand
regarding whether the Defendant intended to take the stand on his
own behalf during the trial.

This court held that the evidence was overwhelming.  Citing
the canisters of propane found in the motor home, not realizing
that the defendant was in Maintenance and used the propane to
solder copper piping as part of his job..  This court held that
the pawn ticket was evidence..  Thus, this court set itself up as
an expert in handwriting analysis.  The pawn ticket does not bare
this defendant's signature, Plain and Simple!

This court did not take notice that only women's clothes
were found in the motor home and nothing of the defendant's…. Of
course, the defendant's idiot attorney didn't bring that out at
trial, nor did this court consider that the defendant was in
Rockford when he was apprehended.  This court stated that it
could not understand why Jesenia came back to Rockford to testify
against the Defendant, but ignored the fact that the defendant
never left Rockford and had no jewelry on his person.  Jesenia
Negron admitted pawning jewelry all across Arizona/Texas and

A-42

C006354

California, this defendant didn't pawn any jewelry.  There is one other factor why the defendant has chosen to take this avenue. He has filed a Civil Rights Complaint pursuant to Title 42 USCA Section 1983 against the Sheriff of Winnebago County and other officers of the Jail.  He fears for his life and well being and cannot allow this court to send him back to the defendant's listed in his civil rights complaint.  This Defendant could not allow himself to again be kept from fresh air or made to suffer pain waiting three days for aspirin or kept from access to a law library when other people have full access or kept from his religious beliefs while others are allowed to practice their convictions or religious beliefs.

This Court can sentence this Defendant as it has authority to do so, but, it will have to do so in abstentia.  According to the Inalienable right perfected by the US Constitution of Liberty this Defendant has chosen his liberty because he is innocent!

While fighting this case for almost five (5) years this defendant was a model citizen of Rockford, even a hero when he assisted in saving three (3) lives from a fire at Eighth and Broadway Streets in Rockford.

This defendant worked hard and received lead intoxication from a local Rockford business, after that business learned of the Defendant's ailment, they terminated him.  This defendant informed the court that he had lost part of his memory before the trial and at that time requested counsel be appointed to represent him.  The counsel appointed to represent the defendant was ineffective and incompetent.  This counsel even misrepresented the truth while under oath.

C000355

This court has the authority to sentence this Defendant but, cannot justifiably hold that he is guilty, quite frankly there is no evidence against this defendant that any competent effective attorney couldn't refute in any court of law.

This Defendant demanded a Fast and Speedy trial.    HE was denied the same.  He demanded a New Trial and had ample case law and statutory law to support his demand.  He was denied a fair trial…he was denied a fast and Speedy Trial.

This Defendant will not allow this court to again take away his freedom for the third time, for a crime that happened 20 years ago.  For a crime that this Defendant paid for and served his time.  Jeopardy attaches and that Jury heard this Defendant had been  released from Prison by the State's prompted witness.

While I am free, I will commit no crimes just as I have been a model citizen here in Rockford,  I will continue to do so and when this court's arm reaches me one day.  I hope and pray that it will see the error of it's way and grant me a new trial.  I am totally and unequivocally innocent of this crime.    I must flee to protect my rights.    I do so reluctantly and with remorse because I know in my heart I am innocent but, because of incompetent counsel, lead intoxication at the time of trial, and ineffective assistance of Counsel…a Jury was duped into finding me guilty.  I am forced to leave a good life here in Rockford. Just since being released in October of 1998, I had made a great comeback from the cell block I was unlawfully imprisoned within. I never missed a day of work and, made the company I worked for thousands of dollars.

A-44

1    I cannot let my freedom be taken again absent due process of
2   law.   Yes, I could await an appeal, but, I would lose everything
3   I had worked for and I would rather start over somewhere else
4   even to the point of constantly looking over my shoulder then to
5   face the peril of being put in jail/prison for something I did
6   not do, then to be placed in jeopardy and in the custody of
7   Defendant's in a Civil Rights Complaint and wonder each night
8   what they might do to me because I exercised my constitutional
9   rights to civil redress.

10    I will start over somewhere else.   In the back of my mind, I
11  will be haunted by the knowledge that I am wanted for a crime I
12  did not commit! I will be taunted with the fact that justice
13  eluded me by one incompetent-ineffective lawyer who sold me out
14  at trial!

15    On two separate occasions my freedom was stripped from me
16  without reason.   Once on October 28, 1994, when I was arrested
17  for this crime I did not commit because a teenager said I did it!
18  Your honor made a statement regarding why Jesenia Negron would
19  come back to Rockford when she could have gotten away.   But, your
20  Honor failed to mention that I was here too, working, making my
21  own way.   Why?   Why would I stay here in Rockford when I too
22  could have made my way anywhere else?   Jesenia Negron had a
23  reason to blame me,  she wanted to keep me away from her mother.
24  Call it jealousy, call it revenge.   But, never confuse it as
25  justice.

26    Once again I was stripped of my freedom when the Prosecutor
27  lied in this court regarding a bond hearing on Sept. 15, 1997,
28  wherein he told this court I had violent conviction.   Needless to

A-45

C000357

1  say, it was after I wrote this court and informed this court that
2  I had known a member of the jury and had informed my court
3  appointed counsel of this acquaintance. I was incarcerated
4  because I spoke up. And, for no other reason!

5      I will not allow this court to strip my freedom a third time
6  for a crime I did not commit. The Constitution of the United
7  States prescribes a fair trial for every citizen. This court
8  knows the Jury was informed by the State's own witness of a
9  previous conviction, that the Defendant had been in prison
10 before, if that fact was on one jurors mind, if just one juror
11 thought I was guilty because I was in prison before, I received
12 an unfair trial.

13     I have the right to liberty and I hereby exercise that right
14 I will not allow myself to be put into prison because I went to
15 prison for another crime in the past. When your Honor sentences
16 me in abstentia, I hope you can say with a clear conscious that
17 not one of those jurors considered the State's very first witness
18 who was prompted to say: "From what I understand, he had
19 recently been released from prison."

20

21     RESPECTFULLY SUBMITTED this 3$0^{th}$ day of September, 1999

22

23                 BY _____

24                      DARO WEILBURG

25                      In Propria Personam

26

27

28 Original of the foregoing was mailed this
   30th day of September, 1999, To:

A-46

C000358

1

2
Clerk of the 17th Judicial Court
400 West State Street
3
Rockford, IL 61101

4
A true copy of the foregoing was mailed this
⸮⸮ day of September, 1999, to:
5

6
Wendy Larsen
Assistant State's Attorney
400 West State Street
7
Rockford, IL 61101

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A-47

0000359

1

| | |
|---|---|
| 1 | STATE OF ILLINOIS |
| 2 | IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT |
| 3 | COUNTY OF WINNEBAGO |

4 THE PEOPLE OF THE STATE OF )
5 ILLINOIS, )

6                         People, )

7               vs.        )  94-CF-2420

8 DARO WEILBURG, )

9                     Defendant. )

FILED
ate: 5 / 16 05
Marc A. Gasparini
Clerk of the Circuit Court

94-CF-2420

10

11          REPORT OF PROCEEDINGS in the

12 above-entitled cause in Rockford, Winnebago County,

13 Illinois, in the Winnebago County Court House by the

14 Honorable Michael Morrison, Judge of said Court on the

15 Thirtieth day of September, A. D. 1999.

16 APPEARANCES:

17

18          ATTORNEY WENDY LARSON
         appeared on behalf of the People.

19          NO ONE appeared on behalf
20          of the Defendant.

21 Melvyn D. Shutt, CSR
   Lic. No. 084-002004

22

23

24

R002094

A-48

1

THE CLERK:   People versus Daro Weilburg.

THE CLERK:   I think have you that file.
Is that the '94?

MS. LARSON:   You had it while were in
hearings.

THE COURT:   I put a note on it and sent it
back.

THE CLERK:   That's one we can't find
anywhere.   It was in Court last on the 8th, or
something.

THE COURT:   I can't remember.

THE CLERK:   It was indicated that Kate was
your Clerk that day, but --

THE COURT:   I don't know that Kate stayed
in here.   I think I may have made a note on the
file so when she came in afterward -- did Kate
look for it?

THE CLERK:   I spent a couple of hours this
morning looking for it and couldn't find it.

MS. LARSON:   Well, Judge --

THE COURT:   This comes on for the purposes
of sentencing.   The Defendant has failed to
appear and it's now 2:50 p.m. and it was set
for 2:30.   The docket entry says 9:00 o'clock

R002095

2

but it was set for 2:30.  Mr. Weilburg was not here at 9:00 o'clock but I do have -- yes, it was set for 2:30.

MS. LARSON:  Additionally, there was an order for a presentence report, and in my discussions with Otis Laurberg I learned that Mr. Weilburg never appeared for his presentence appointment either, so neither myself or the Court has an updated presentence report.  There should be an order in the file indicating that he is to report to get an update completed and he was scheduled, as I said, for the 10th of September, and he never appeared in the adult probation office.  Additionally, I asked Detective Steve Martinez to go over to Mr. Weilburg's apartment and verify his residence, and he was unable to gain entry into the building and no one responded to the door. I would ask for a no bond bench warrant, Judge.

THE COURT:  The Defendant fails to appear, I will issue a bench warrant with no bail.

MS. LARSON:  Can I ask the Defendant's last known address.  Can I just verify that?

THE COURT:  Ginger, can you look in there

A-50

```
 1    and see if you see a bond sheet?
 2        THE CLERK:  There's a bond sheet in here
 3    dated October of '98.
 4        THE COURT:  That would have been it.
 5        THE CLERK:  That would have been -- his
 6    address then is 1226 Seventeenth Avenue.
 7        MS. LARSON:  I wish I would have taken
 8    this down.
 9        THE COURT:  What was the bond amounted in
10    that?  I'm sorry, does he have cash?  Do you
11    want to do another one?
12        THE CLERK:  $7,500.
13        MS. LARSON:  These are old.
14        THE COURT:  They have the old statute
15    number on them.
16        MS. LARSON:  Does that affect the
17    legitimacy of the Order?
18        THE COURT:  Probably scratch that out and
19    put -- instead of Chapter 38 put in --
20        THE CLERK:  725 --
21        THE COURT:  725 ILCS-5/and then whatever
22    the section number that's in there.
23        MS. LARSON:  Bond forfeiture day?
24        THE COURT:  November -- Let's use
```

5

1         MS. LARSON:   I think I am seeing where you

2    are.

3         THE COURT:   Towards the middle.   Trial in

4    Defendant's absence shall be by jury unless the

5    Defendant has previously waived trial by jury.

6    The absented defendant must be represented by a

7    retained or appointed counsel.   The problem is

8    he was pro se, and while it speaks to a trial I

9    would assume that for sentencing I have to look

10   at that, and while I know he waived counsel and

11   he waived it of record, and I believe after

12   sufficient admonishment, I don't know whether

13   or not I could proceed at this time.   What is

14   clear I can do -- well, I am not sure it's

15   clear, but it says at least when we are talking

16   about a trial date it says the Court may set a

17   case -- it says the Court may set the case for

18   trial which may be conducted under the section

19   despite the failure of the defendant to appear

20   at hearing at which trial date is set.   When

21   such trial date is set Clerk must send notice

22   to the Defendant by certified mail at his last

23   known address indicated on his bond slip notice

24   of the new date which has been set for trial.

A-53

6

1    Such notification shall be a requirement if the

2    Defendant was not personally present in open

3    Court at the time the case was set for trial.

4    Of course, he was present when this was set.

5        MS. LARSON:  Judge, under E is that where

6    subsection E talks about the defendant, who in

7    his absence has been either convicted or

8    sentenced or both and what the person is

9    entitled to?

10        THE COURT:  That's if we do -- if we have

11    proceeded in absentia.

12        MS. LARSON:  I guess, Judge, what I would

13    ask at this time, in addition to the bench

14    warrant, is that counsel be appointed for the

15    Defendant and new notice be sent of a hearing

16    date for sentencing.

17        THE COURT:  See, I don't know that I can

18    do that because I don't see how it would be

19    fair to an attorney to appoint counsel to

20    represent him.

21        MS. LARSON:  Okay.  Well, then I guess we

22    will just go with the bench warrant and see if

23    we can locate him.

24        THE COURT:  I could set a sentencing in

A-54

R002100

| | |
|---|---|
| 1 | absentia hearing date, have the Clerk send |
| 2 | notice to his last known address. |
| 3 | MS. LARSON:  That would be fine. |
| 4 | THE COURT:  And if you want to research |
| 5 | the law to see if there's any case law showing |
| 6 | that if somebody waived counsel before -- |
| 7 | MS. LARSON:  All right, I will see what I |
| 8 | can find. |
| 9 | THE COURT:  The Defendant failed to |
| 10 | appear.  Because of legal issues about whether |
| 11 | or not this Court can proceed to sentence this |
| 12 | Defendant without an attorney, the Court will |
| 13 | reset the matter for sentencing on -- |
| 14 | MS. LARSON:  What I am going to ask is if |
| 15 | we can do it after the bond forfeiture |
| 16 | finalization date so if he appears on |
| 17 | November 18th -- |
| 18 | THE CLERK:  The date we used was |
| 19 | November 18th. |
| 20 | MS. LARSON:  Then he could get notice at |
| 21 | that time. |
| 22 | THE COURT:  How about Friday, |
| 23 | November 19th at 1:30? |
| 24 | MS. LARSON:  That's fine.  Actually I'm |

A-55

R002101

8

```
 1      sorry, how about in the morning of the 19th?

 2           THE COURT:  That's fine.  9:30?

 3           MS. LARSON:  Okay, great.

 4                    Whereupon the proceedings this

 5           date came to a close.

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

A-56

1

STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT

COUNTY OF WINNEBAGO

I, Melvyn D. Shutt, Official Court Reporter, Seventeenth Judicial Circuit, State of Illinois, do certify that I reported in stenograph the testimony given in the hearing of said cause, and that the foregoing transcript is a true and correct transcription of my stenographic notes so taken as aforesaid, and contains all the testimony given at the hearing of the said cause.

I further certify that I am not connected by blood or marriage to any of the parties in this action, nor am I a relative or employee or attorney or counsel of any of the parties, nor am I a relative or employee of such attorney or counsel, or financially interested in said action, or interested directly or indirectly in the matter in controversy.

IN WITNESS WHEREOF I have hereunto set my hand and seal this Twenty-29th day of April, A.D., 2005.

_____
Official Court Reporter

A-57

R002103

*Gives address P.O. Box # 3132, Rockford, IL. To State and Court*

1          STATE OF ILLINOIS

2     IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT

3          COUNTY OF WINNEBAGO

4    THE PEOPLE OF THE STATE OF )
     ILLINOIS,                 )
5                              )        FILED
                               )     Date: 5-16-05
6                     People,  )
                               )     Maru A. Gasparion
7          vs.                 )  94-CF-2420    Clerk of the Circuit Court
                               )        DX
8    DARO WEILBURG,            )
                               )
9                  Defendant.  )

10

11          REPORT OF PROCEEDINGS in the

12   above-entitled cause in Rockford, Winnebago County,

13   Illinois, in the Winnebago County Court House by the

14   Honorable Michael Morrison, Judge of said Court on the

15   Second day of February, A. D. 1999.

16   APPEARANCES:

17

18           ATTORNEY SCOTT SALEMI
             appeared on behalf of the People.

19           DARO WEILBURG appeared
20           Pro Se.

21   Melvyn D. Shutt, CSR
     Lic. No. 084-002004
22

23

24

A-58

2

1    complaint against you.  It's in Federal Court.

2    It has been dismissed because I haven't had the

3    case overturned, and I also have a case against

4    the jail.

5        MR. SALEMI:  When you say civil rights

6    complaint against you, are you talking about me

7    or him.

8        THE DEFENDANT:  You, sir.

9        THE COURT:  This is a letter says "Dear

10   Daro, with regard to the above please contact

11   my office upon receipt of this letter.  It says

12   our file number 99-100 and then criminal

13   matter."  It's dated January 28, 1999 and is

14   addressed to Daro Weilburg, Post Office Box

15   3132, Rockford, Illinois 61106.

16       THE DEFENDANT:  I have the envelope too

17   that shows a post date of the 29th.  I didn't

18   get it until this morning, so I have not had

19   time.  I do have a retainer in my pocket for

20   them.  I am doing this on good faith.

21       THE COURT:  Daro, it's getting so old

22   that --

23       MR. WEILBURG:  Your Honor, I entirely

24   agree, but I am working 12 hours a day seven

A-39

001909

Dave Walling
PO Box #3102
Rockford, Illinois
61106

RECEIVED

MAR 1 1 1999

CIRCUIT COURT CLERK
WINNEBAGO COUNTY

Clerk of the 12th Judicial Circuit Court
400 West State St
Rockford, Ill.
61101

611101+1221

C000338

A-60

1

STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT

COUNTY OF WINNEBAGO

THE PEOPLE OF THE STATE OF )
ILLINOIS,                   )
                            )
              People,       )
                            )
     vs.                    )   94-CF-2420
                            )
DARO WEILBURG,              )
                            )
          Defendant.        )

FILED

S 16 10
Gasparin
Clerk of the Circuit Court

REPORT OF PROCEEDINGS in the

above-entitled cause in Rockford, Winnebago County,

Illinois, in the Winnebago County Court House by the

Honorable Michael Morrison, Judge of said Court on the

Eleventh day of June, A. D. 1999.

APPEARANCES:


          ATTORNEY WENDY LARSON
          appeared on behalf of the People.

          DARO WEILBURG appeared
          Pro Se.


Melvyn D. Shutt, CSR
Lic. No. 084-002004

A-61

R001978

3:06-cv-03125-RM   # 11-14   Page 27 of 31

1   the case so if you serve anything on Attorney

2   Larson if Mr. Karner comes in it's serve on

3   him, whoever you are serving those on.  I mean

4   I don't know that you would need too -- if you

5   need to serve anything on them Attorney Larson

6   would be the one, and once they notified you if

7   Karner is going to be co-counsel or Karner is

8   taking over for her he can let you know that he

9   is taking over.

10         MS. LARSON:  Judge, also just a detail, I

11   need Mr. Weilburg's current address.

12         THE COURT:  Do we have your current

13   address?

14         THE DEFENDANT:  Yes, sir.  I gave it to

15   Mr. Salemi.

16         THE COURT:  I should have it for sending

17   notices out for the Clerk's office too.

18         THE DEFENDANT:  Post office box 3142 --

19   3132 Rockford 61106.

20         MS. LARSON:  61106?

21         THE DEFENDANT:  Yes, ma'am.

22         THE COURT:  One other thing I failed to

23   address about the thing about proceeding pro

24   se, they point out here a lawyer could provide

A-62

R001972

# ADDITIONAL RECORD SHEET

Case No. 94-CF-2420.....

Nature of Case .....Daro Weilbury...................... Theft. .............................

Sheet # 6

| DATE | | | JUDGE AND REPORTER | | COSTS | | |
|---|---|---|---|---|---|---|---|
| an | 28 | 1997 | Morrison MDS | People by ASA Salemi.  Defendant in Court in person. | | | |
| | | | | Motions to be filed within 7 days. | | | |
| | | | | Cause continued to March 5, 1997 at 9:00 a.m. for final pre- | | | |
| | | | | trial conference and March 24, 1997 at 9:00 a.m. for Jury Trial. | | | |
| | | | | Defendant given written notice in open Court. | tmd | | |
| lar | 5 | 1997 | Morrison MDS | People by ASA Salemi.   Deft in Court. | | | |
| | | | | By agreement, case taken off the call for March 24, 1997 | | | |
| | | | | and continued to June 23, 1997 at 9:00 a.m. for Jury Trial. | | | |
| | | | | Deft agrees that time period will not be applicable to the | | | |
| | | | | 160 days rule.   Deft is still preserving his speedy trial | | | |
| | | | | demands. | | | |
| | | | | Deft no longer needs to report to Pre-Trial Services. | | | |
| 3 | 5 | 97 | | See Order.  (filed) | | | |
| | | | | Supplemental Answer to Deft Motion for Discovery | | | |
| Mar | 5 | 1997 | | Deft given notice. | tmd | | |
| 6 | 4 | 1997 | | Order | | | |
| 6 | 4 | 1997 | | Supplemental answer to Deft Motion for Discovery | | | |
| | | | | Supplemental answer to Deft's | | | |
| | | | | Motion for Discovery | | | |
| 6 | 11 | 97 | Morrison MDS | Supplemental answer to Deft Motion for Discovery | | | |
| June | 11 | 1997 | | People by ASA Salemi. Deft not present. | | | |
| 6 | 11 | 97 | | Court issues Capias with bond set at $50,000.00 (10%) | | | |
| 6 | 13 | 97 | | Supplemental answer to Deft's Motion for Discovery | | | |
| | | | | and Bond Forfeiture. | | | |
| 6 | 17 | 97 | | Subpoena | | | |
| | | | | Later: ASA Salemi appears. Deft appears in person in | | | |
| 6 | 18 | 97 | | Subpoena (2) | | | |
| | | | | Court.  State files copies of Deft's Motion for the record. | | | |
| | | | | Same filed instanter. | | | |
| | | | | Court advised Deft of right of counsel.  Deft's Oral | | | |
| | | | | Motion for bond reduction heard and granted. Court sets | | | |
| | | | | bond at $50,000.00 recognizance.  As condition  of bond | | | |
| | | | | Deft must report to Pretrial Services.  Court appoints | | | |
| | | | | Attorney John Truitt. | | | |
| | | | | Cause continued to June 30, 1997 at 9:00 A.M. for Status. | | | |
| | | | | Deft given written notice. | kec | | |
| 6 | 23 | 1997 | | Capias Issued. | | | |
| 6 | 23 | 1997 | | Capias Returned. | | | |
| 6 | 23 | 1997 | | PD Notice - (to atty John Truitt) | | | |
| | | | | (mailed June 24 1997) | | | |
| 6 | 23 | 1997 | | Order | | | |
| | | | | Subpoena (2) | | | |

A-63

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
WINNEBAGO COUNTY

PEOPLE OF THE STATE OF ILLINOIS

        vs.

WEILBURG,DARO,C          Offense: ATMP THEFT-GRAND
809 CEDAR ST
ROCKFORD       IL

                           SS#:    DL#:
    DOB:    6/29/1952
SEX: M  RACE:   HEIGHT: 0'00  WEIGHT: 0  EYES:
MARKS/SCARS:    HAIR:

Case #: 1994 CF 002420
Agency: ROCKFORD
DCN # :
Report: R94086564

## WARRANT OF ARREST

( ) No Limitations
( ·) Geographic Limitations apply: "This
    warrant is only to be served in the
    Counties of Winnebago, Boone, Ogle,
    Stephenson

( ) Failure To Appear
( ) Bond Return Date  ( ) Notice to Appear
( ) Summons Return
( ) Bill of Indictment
( ) Suppressed Indictment
( ) Other _____

( ) NO EXPIRATION DATE
( ) EXPIRATION DATE/WARRANT REVIEW OF
TO ALL PEACE OFFICERS OF THE STATE OF ILLINOIS:

    You are hereby commanded to arrest the above-captioned defendant and bring said person
without unnecessary delay before the Presiding Judge of the Circuit Court of the 17th
Judicial Circuit, Winnebago County, Illincis, in the Courtroom usually occupied by
him/her located at:

WINNEBAGO COUNTY COURTHOUSE - 400 W. State Street, Rockford,IL 61101
      ( ) VIDEO COURT (If unable to post bail)  ( ) 9:00 a.m.   ( ) 1:30 p.m.

Or if he/she is absent or unable to act, before the nearest most accessible court in said
County, to answer a charge made against said person in the above-captioned case and hold
said person to bail.
    The amount of Bail is NO BOND

                        ( ) 10% to apply ( ) Cash ( ) Recognizance
    Issued at WINNEBAGO COUNTY, ILLINOIS on 9/30/1999

                _____
                        Judge M.R. MORRISON

MAKE BOND RETURNABLE:
  WINNEBAGO COUNTY COURTHOUSE - 400 W. State Street, Rockford,IL 61101  Room No. _____
    TIME: ( ) 9:00 a.m.  ( ) 1:30 p.m.
RETURN OF SERVICE:  DATE:_____
Department:_____  Serving Officer:_____
FEES: $_____ Mileage _____ @ _____ ¢ = _____  Defendant was released on a:_____
GS                             Total: $_____

A-64

F*LED  94CF2420
1/3 9:0A
Dec 27 19 94
Ronald Ketch
Clerk of the Circuit Court
94CF2420
Deput

December 23, 1994

STATE OF ILLINOIS V. DARL C. Wellburg

# NOTICE OF DEFENDANT'S EXERCISING HIS CONSTITIONAL RIGHT TO A FAST & SPEEDY TRIAL BY A JURY OF HIS PEERS.

The defendant, IN PRO PER hereby serves Notice that he desires to exercise his constitutional right to a fast & speedy trial by a jury of his peers. On December 13, 1994, this court ordered that the above entitled matter be set for trial on JANUARY 9, 1995. However, the court did not specify the type of trial nor did the court inquire of the defendant as to which type of trial he desires.

While the defendant was appointed counsel by the court, counsel has NOT contacted the defendant, NOR did counsel supply defendant his phone No. or address. The defendant has no way of contacting his court appointed counsel. It should be noted that every attorney who the defendant has contacted suddenly appears on the state's list of witnesses. To wit: RICHARD Botera & Robert Fuerty, INTER alia

On November 30, 1994, the defendant submitted a motion to Dismiss. Defense counsel has NOT amended this motion. The defendant was NOT represented by counsel when he submitted his pro per motion to dismiss. The State has failed to respond to defendant's pro per motion in a timely manner. And, the STATE HAS repeatedly prejudiced the defendant by failing to produce discovery material. What little the have.

counsel for the defense did NOT file a motion for bond reduction in a timely manner. The defendant's current bond is excessive pursuant to the VIII Amendment of the U.S. Constitution. We will not know how the court would have ruled on the motion for bond reduction before the

Holidays because defense counsel didn't File a motion For Bond reduction. Thereby, defense counsel get to spend the holiday with his Friends and Family. But, The defendant spent his holiday in Jail. The defendant was entitled to consideration For a bond reduction, The defendant was Gainfully employed and Living in Rockford.

Counsel should have amended Defendant's pro per motion for dismissal with The Fact that there was no probable cause to effect The arrest of the defendant. And, more importantly, upon information and belief The State withheld exculpatory evidence From the GRAND JURY on November 9, 1994. The defendant contends that the STATE was in Possession of a Letter written to MR. Richard Butera by the defendant, prior to The arrest of the defendant, whereby, defendant's intentions were to meet with Richard Butera & Defendant's estranged wife, Noemi at Attorney Butera's office & Attempt to Persuade Jesenia Deyron to turn in The items she took. Also, upon information and belief, The State withheld the Fact that the defendant, at the time of his arrest, was Living in A shelter for the homeless, & had become gainfully employed in Rockford. The State must have known About The defendant's Letter, Because the state listed Richard Butera As A witness. The State has ~~an~~ ~~other~~ Duty to Provide exculpatory evidence, in the State's poisession, to The Grand Jury. Had The Grand Jury Been Provided The exculpatory evidence, To wit: The Letter, and had the State informed The Grand Jury about defendant's residing in a Homeless shelter & That The defendant was Gainfully employed (Earning over $150.00 per week) The defendant contends that the Grand Jury Would Not Have Returned a Bill of Indictment. The withholding of This Evidence From the Grand Jury Tantamounts Prosecutorial Misconduct And The Indictment must Be quashed as a matter of Law.

It may be in the best interest for The defendant to motion This court For A Change of Judge For cause. Upon information & belief a Hearing,

②

ORIGINAL

**RECEIVED**

DEC - 5 2005

ROBERT J. MANGAN, CLERK
APPELLATE COURT 2nd DISTRICT

NO.   2-04-1240        *07*

IN THE

APPELLATE COURT OF ILLINOIS

SECOND JUDICIAL DISTRICT

**FILED**

DEC - 5 2005

ROBERT J. MANGAN, CLERK
APPELLATE COURT 2nd DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS,<br>    Plaintiff-Appellee,<br><br>        vs.<br><br>DARO WEILBURG,<br>    Defendant-Appellant. | ) Appeal from the Circuit Court<br>) of the 17th Judicial Circuit,<br>) Winnebago County, Illinois.<br>)<br>) No. 94 CF 2420<br>)<br>) Honorable<br>) Gerald F. Grubb,<br>) Judge Presiding. |

### NOTICE OF MOTION

TO: Daro C. Weilburg, Inmate # R32180
    Taylorville Correctional Center
    Route 29 South
    P.O. Box 900
    Taylorville, IL 62568

    PLEASE TAKE NOTICE that I have on 30 November 2005 caused to be
placed in the US Mail for filing in the Office of the Clerk of the
Appellate Court of Illinois, Second District, the original and three
copies of the attached Motion to Dismiss Appeal for Appellant's Failure
to Comply with Supreme Court Rule 606.

                                        _____
                                        For the State's Attorney

### CERTIFICATE OF ATTORNEY

    The undersigned, an attorney, certifies that he served copies of
the above-filed document on the person to whom directed above by
depositing same in the United States Mail in Rockford, Illinois in a
properly addressed, stamped and sealed envelope on 30 November 2005.

                                        _____
                                        Steven J Biagi

EXHIBIT K

**RECEIVED**

**DEC - 5 2005**

ROBERT J. MANGAN, CLERK
APPELLATE COURT 2nd DISTRICT

NO.   2-04-1240

IN THE

APPELLATE COURT OF ILLINOIS

SECOND JUDICIAL DISTRICT

**FILED**

**DEC - 5 2005**

ROBERT J. MANGAN, CLERK
APPELLATE COURT 2nd DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, )<br>    Plaintiff-Appellee, ) | Appeal from the Circuit Court<br>of the 17th Judicial Circuit,<br>Winnebago County, Illinois. |
| vs.             ) | No. 94 CF 2420 |
| DARO WEILBURG,        )<br>    Defendant-Appellant.    ) | Honorable<br>Gerald F. Grubb,<br>Judge Presiding. |

<u>MOTION TO DISMISS APPEAL FOR APPELLANT'S FAILURE TO COMPLY WITH
SUPREME COURT RULE 606</u>

Now come the People of the State of Illinois, through their attorneys, Winnebago County State's Attorney Paul A. Logli, Martin Moltz, Deputy Director, State's Attorney's Appellate Prosecutor, and Assistant State's Attorney Steven Biagi as Contract Attorney for the State's Attorneys Appellate Prosecutor, who move this Honorable Court to dismiss this appeal for the appellant's failure to comply with Supreme Court Rule 606.

IN SUPPORT WHEREOF, IT IS AVERRED THAT:

1.    The appellant is representing himself in this appeal.

2.    On 29 August 1997 the appellant was convicted by a Winnebago County Jury of the class 2 felony offense of Theft.

3.    Before trial on said case, the petitioner had been informed of the possibility of trial and sentencing in absentia on at least 6 December 1994, 5 January 1995 and 23 September 1996.

4.    After trial, the appellant was informed of the possibility of sentencing in absentia on at least 29 August 1997, 5 August 1998 and 3 September 1999.

5. The appellant appeared in court on 3 September 1999, having for some time chosen to appear pro se. On that date his previously filed Motion for New Trial was heard and denied by Judge Michael Morrison, and the appellant received written notice that this matter was set for sentencing on 30 September 1999 at 9:00 AM in courtroom 311 of the Winnebago County Courthouse.

6. The appellant failed to appear in court on 30 September 1999. As a result, a bench warrant was issued, his bond was ordered forfeited, a bond forfeiture finalization date was set for 18 November 1999 at 1:30 PM in courtroom 311 of the Winnebago County Courthouse, and a sentencing in absentia date was set for 19 November 1999 at 9:30 AM in courtroom 311 of the Winnebago County Courthouse.

7. On 30 September 1999 the appellant sent a "Statement of Defendant on Exercising his Constitutional Right of Liberty Absent Due Process of Law" to the trial court, which was entered in the docket on 6 October 1999. In this document, the appellant wrote, among other things, ". . . This defendant will not allow this court to again take away his freedom . . . While I am free, I will commit no crimes . . . I must flee . . . I am forced to leave a good life here in Rockford . . . I will start over somewhere else. . . In the back of my mind, I will be haunted by the knowledge that I am wanted for a crime . . . When your Honor sentences me in absentia . . . " (Excised from original.) These quotes clearly indicate the appellant's prior intent to fail to appear at sentencing, his knowing and wilful failure to appear pursuant to that intent, his knowledge of the ramifications of failing to appear at sentencing, his knowing and wilful waiver of his right to appear at sentencing and his intent to leave the jurisdiction of his own will, despite the conditions of bond.

8. The appellant later testified during his jury trial in 00 CF 174 (now on appeal before this Court under case number 2-05-0007) that after trial and before sentencing in this case he left the State of Illinois voluntarily and by his own will because of his fear that he might be incarcerated more than he had already been. The various letters that the appellant has sent to the trial court and which are now contained within the trial court file clearly show the appellant's voluntary and wilful act.

9. The appellant failed to appear in court for the bond forfeiture finalization date of 18 November 1999 at 1:30 PM in courtroom 311. As a result, his bond forfeiture was finalized.

10. The defendant failed to appear in court for the sentencing in absentia date of 19 November 1999 at 9:30 AM in courtroom 311.

11. After finding that the appellant had previously been informed of the possibility of sentencing in absentia, that the appellant had received notice of the 30 September 1999 court date, and that the appellant's failure to appear was knowing and voluntary, Judge Michael Morrison proceeded to sentencing in absentia on 19 November 1999.

12. On 19 November 1999, over two years after the guilty verdict, the appellant was sentenced to serve seven years in the Illinois Department of Corrections, and final judgment was entered. The appropriate admonishments relating to perfecting and preserving an appeal were read into the record.

13. The defendant was next before the trial court on 2 October 2003, nearly four years after sentencing in absentia. This appearance was in custody, and the appellant has been in custody from 2 October 2003 to this day.

14. The notice of appeal in this case was filed on 14 December 2004. At no time prior to this filing did the appellant ever communicate an intent to file a timely notice of appeal, nor was the delay in filing same attributable to the People, to the trial court, or to any court personnel.

15. Therefore, even after being taken into custody, the appellant waited more than 14 months to file a notice of appeal in this case.

16. A defendant who fails to appear and is sentenced in absentia waives being informed of his rights pursuant to Supreme Court Rule 605. _People v. Woolridge_, 292 Ill. App. 3d 788, 790-792, 686 N.E.2d 386, 387-388 (4th Dist. 1997).

17. For a defendant who fails to appear and is sentenced in absentia, the 30 days within which to file motions and a notice of appeal pursuant to Supreme Court Rules 605 and 606 begin running on the date that the sentencing in absentia occurs, and not later. _Woolridge_, 292 Ill. App. 3d at 792, 686 N.E.2d at 389. Specifically, a "wilful failure to appear ought properly to be viewed as a self-inflicted wound." _Woolridge_, 292 Ill. App. 3d at 792, 686 N.E.2d at 389, citing _People v. Burcham_, 208 Ill. App. 3d 939, 943, 566 N.E.2d 832, 835, 152 Ill. Dec. 955, 958 (4th Dist. 1991).

18. To rule otherwise would be to place defendants "who wilfully fail to appear at their sentencing hearings in a better position than those who do appear." _Burcham_, 208 Ill. App. 3d 939 at 942, 566 N.E.2d at 835, 152 Ill. Dec. at 958.

19. As applied to this case, Supreme Court Rule 606(b) states in relevant part that a notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from.

20. Supreme Court Rule 606(c) does allow for an extension of time to file a notice of appeal in some circumstances, but those are limited to (1) cases on motion where the appellant has shown a "reasonable excuse" for failing to file the notice of appeal on time, and said motion is to be filed within 30 days of the expiration of the time for filing the notice of appeal, or to (2) cases where the motion to file late is supported by a showing by affidavit that there is merit to the appeal and that the failure to file the notice of appeal on time was not due to appellant's culpable negligence, and said motion is to be filed within 6 months of the expiration of the time for filing the notice of appeal.

21. The appellant never even attempted to comply with the motion requirements of Supreme Court Rule 606(c).

22. As the notice of appeal in this case was filed over five years after the judgment appealed from, even the extension of time provisions of Supreme Court Rule 606(c) have long since expired, and this appeal needs to be dismissed.

23. It is the duty of the Appellate Court to consider its jurisdiction to hear an appeal whether or not the issue has been raised by the parties. People v. Scruggs, 161 Ill. App. 3d 468, 470, 514 N.E.2d 807, 808, 113 Ill. Dec. 25, 26 (2nd Dist. 1987).

24. The only jurisdictional step in the perfection of a criminal appeal is the filing of a timely notice of appeal. People v. Carter, 415 N.E.2d 17, 19, 91 Ill. App. 3d 635, 638, 47 Ill. Dec. 292, 294 (1st Dist. 1980). The failure to file a notice of appeal is therefore jurisdictional. People v. Dylak, 630 N.E.2d 164, 165, 258 Ill. App. 3d 141, 143, 196 Ill. Dec. 467, 468 (2nd Dist.1994).

25. The Appellate Court has no discretion to extend its jurisdiction when a notice of appeal was filed late. People v. Blanchette, 182 Ill. App. 3d 396, 398, 538 N.E.2d 237, 239, 131 Ill. Dec. 49, 51 (2nd Dist. 1980), citing Scruggs, 161 Ill. App. 3d at 470, 514 N.E.2d at 809, 113 Ill. Dec. at 27.

26. The notice of appeal in Blanchette was filed only 3 days late and no attempt to satisfy Supreme Court Rule 606(c) was made. Blanchette, 182 Ill. App. 3d at 398, 538 N.E.2d at 239, 131 Ill. Dec. at 51. In that case, this Court unequivocally ruled that it had no jurisdiction to hear the appeal, and it

was dismissed. <u>Blanchette</u>, 182 Ill. App. at 399, 538 N.E.2d at 240, 131 Ill. Dec. at 52.

27. The timely filing of a notice of appeal is necessary for an appellate court to have jurisdiction over a criminal matter. <u>People v. Kellerman</u>, 804 N.E.2d 1067, 1071, 342 Ill. App. 3d 1019, 1023, 281 Ill. Dec. 772, 776 (3rd Dist. 2003).

28. Procedural rules are binding upon defendants in criminal cases, and, therefore, notices of appeal from adverse judgments must be timely filed. <u>Scruggs</u>, 161 Ill. App. 3d at 470, 514 N.E.2d at 809, 113 Ill. Dec. at 27, *citing* <u>People v. Stacey</u>, 68 Ill. 2d 261, 267, 369 N.E.2d 1254, 1257, 12 Ill. Dec. 240, 243 (1977).

29. Failure to file a timely notice of appeal cannot be waived by the parties. <u>Blanchette</u>, 182 Ill. App. 3d at 398, 538 N.E.2d at 239, 131 Ill. Dec. at 51.

30. A defendant may not seek review of a conviction where his appeal was not properly perfected. <u>Scruggs</u>, 161 Ill. App. 3d at 470, 514 N.E.2d at 809, 113 Ill. Dec. at 27.

31. As the defendant has failed to file a notice of appeal within the appropriate time frame, specifically within 30 days of 19 November 1999, as required by Supreme Court Rule 606, he has waived his right to appeal, and this Court lacks jurisdiction to hear any appeal.

32. Under similar logic to that expressed above for post trial motions, to rule otherwise would be to place defendants who wilfully fail to file a notice of appeal in a timely manner in a "better position than those who do appear." <u>Burcham</u>, 208 Ill. App. 3d 939 at 942, 566 N.E.2d at 835, 152 Ill. Dec. at 958.

33. To rule otherwise would also be to allow such defendants as this to hold the legal system as well as the People hostage until such time as their whim tells them to chose to file a notice of appeal.

34. The appellant should not be rewarded for his being on the run for nearly four years, and even worse, failing to file a notice of appeal for more than 14 months even after being taken into custody.

35. Further, in the interest of finality of legal proceedings, the People should not have to wait 5 years after a final judgment, which was itself delayed by the appellant's actions for more than 2 years after the guilty verdict, merely to begin the appeal process simply because this appellant chose not to file a notice of appeal any sooner.

36.    The People preserved their objection to the extremely late
       filing of the notice of appeal in this case in that on 17
       September 2004 they filed their "Motion to Dismiss Any And
       All of The Defendant's Motions, Petitions, or Other Pleadings
       That Would Seek a New Trial, a New Sentence, or a Vacation of
       The Judgment, And to Refuse The Filing of a Notice of
       Appeal." This document was filed nearly three months prior
       to the filing of the notice of appeal.

37.    Judge Gerald Grubb later declined to rule that the defendant
       was ineligible to file a notice of appeal or ineligible to
       pursue an appeal.   At the same time, though, Judge Grubb
       specifically did not find that the appellant had filed his
       notice of appeal in the proper time frame, nor did he rule
       that the appellant was properly eligible to pursue an appeal.
       Instead, his ruling was limited to the premise that this
       Court, rather than he as a trial court judge, should make the
       final determination of whether an appeal would be accepted or
       dismissed.

38.    Therefore this appeal should be dismissed with prejudice.

39.    The People are filing a similar motion to dismiss in the
       appellant's other case, 2-05-0007.

40.    The People believe that both motions are with merit and
       should be granted, and are therefore reluctant to put work
       into drafting a brief that might not ultimately be necessary.

41.    Should this Court deny either motion to dismiss, the People
       might seek an extension of time to file their brief in either
       or both cases as a result of waiting for decisions on the
       motions to dismiss.

42.    Should this Court deny both motions to dismiss, the People
       might further seek to consolidate this case with 2-05-0007
       for purposes of efficiency.


       Wherefore, the People of the State of Illinois respectfully move
this Honorable Court to dismiss this appeal for the appellant's failure
to comply with the requirements of Supreme Court Rule 606.


                           Respectfully submitted,


                           Paul A. Logli
                           State's Attorney
                           Winnebago County
                           400 W. State Street, 6th Floor

Rockford, Illinois 61101
(815) 987-3160

Martin P. Moltz
Deputy Director
State's Attorneys
   Appellate Prosecutor

BY                           
Steven J Biagi
Assistant State's Attorney and
Contract Attorney
State's Attorneys
   Appellate Prosecutor
2032 Larkin Avenue
Elgin, Illinois 60123
(847) 697-0020
COUNSEL FOR PLAINTIFF-APPELLEE

STATE OF ILLINOIS   )
                  )
COUNTY OF WINNEBAGO )

## A F F I D A V I T

Under penalties as provided by law pursuant to section 1-109 of the Code of Civil Procedure, I certify that the above statements are true to the best of my knowledge and belief.

OFFICIAL SEAL
ANNA MARIE ARBISI
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/22/06

Steven J Biagi
Assistant State's Attorney and
Contract Attorney

SUBSCRIBED AND SWORN TO before me
on 30 November 2005.

NOTARY PUBLIC

NO. 1-03-1110

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

---

PEOPLE OF THE STATE OF ILLINOIS,

Respondent-Appellee,

vs.

**SOLOMON MONROE,**

Petitioner-Appellant.

---

Appeal from the Circuit Court of Cook County, Criminal Division.
Honorable **Henry R. Simmons**, Judge Presiding.

BRIEF AND ARGUMENT FOR
RESPONDENT-APPELLEE

———

RICHARD A. DEVINE,
State's Attorney,
County of Cook,
Room 309 - Richard J. Daley Center,
Chicago, Illinois 60602

<u>Attorney for Respondent-Appellee</u>

RENEE GOLDFARB,
ALAN J. SPELLBERG,
KATHLEEN WARNICK,
Assistant State's Attorneys,
<u>Of Counsel.</u>

EXHIBIT L

I Final

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

PEOPLE OF THE STATE OF ILLINOIS,

Respondent-Appellee,

vs.

**SOLOMON MONROE**,

Petitioner-Appellant.

## POINTS AND AUTHORITIES

### I.

**EVEN IF THE TRIAL COURT DID NOT SEND DEFENDANT A DISMISSAL ORDER WITHIN 10 DAYS, DEFENDANT DID NOT SUFFER ANY PREJUDICE WHERE HIS LATE NOTICE OF APPEALWAS GRANTED** ................................................. **11**

People v. Bartez, 334 Ill.App.3d 772,
   778 N.E.2d 182 (1st Dist. 2002)......................................... 11

People v. Adams, 338 Ill.App.3d 471,
   788 N.E. 252 (1st Dist. 2003)(contra) ................................... 12,14, 15

People v.Crane, 333 Ill.App.3d 768,
   776 N.E. 892 (2nd Dist. 2002) ............................................. 11, 15

People v. Owens, 51 Ill.2d 583,
   283 N.E.2d 892 (1972) ...................................................... 12

People v. Meeks, 31 Ill.App.3d 396,
   334 N.E.2d 253 (1st Dist. 1975)............................................ 13

People v. Derengowski, 44 Ill.2d 476,
        256 N.E.2d 455 (1970) ...................................................    13

People v. Porter, 122 Ill.2d 64,
        521 N.E.2d 1158 (1988)(contra)............................................    13

People v.Redmond, 328 Ill.App.3d 373,
        767 N.E.2d 345 (1st Dist. 2003) (distinguished)................................    14

People v. Robinson, 343 Ill.App.3d 910,
        799 N.E.2d 345 (1st Dist. 2003)(distinguished)...............................    14

People v. Robinson, 207 Ill.2d 624,
        807 N.E.2d  981 (2004) ...................................................    14

People v. Ross, 339 Ill.App.3d 580,
        791 N.E.2d 171 (1st Dist. 2003)..........................................    15

725 ILCS 5/122-2.1(a)(2) ...............................................    12,15

## II.

**DEFENDANT'S *PRO SE* PETITION WAS PROPERLY SUMMARILY DISMISSED AS DEFENDANT FAILED TO STATE THE GIST OF A MERITORIOUS CLAIM ALLEGING INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILING TO CALL TWO WITNESSES ........................................  17**

People v. Douglas, 296 Ill.App.3d 192,
        694 N.E.2d 665 (4th Dist. 1998)..........................................    17

People v. Prier, 245 Ill.App.3rd 1037,
        613 N.E.2d 1226 (4th Dist. 1993).........................................    18

People v. Ramirez, 162 Ill.2d 235,
        642 N.E.2d 1224 (1994) ...................................................    18

People v. Coleman, 183 Ill.2d 366,
        701 N.E.2d 1063 (1998) ...................................................    18

Strickland v. Washington, 466 U.S. 668,
        104 S.Ct. 2052 (1983)....................................................    18,21

2

People v. Moleterno, 254 Ill.App.3d 615,
     627 N.E.2d 129 (1st Dist. 1993).......................................... 18

People v. Fern, 240 Ill.App.3d 1031,
     607 N.E.2d 951 (2nd Dist. 1993).......................................... 18

People v. Deloney, 341 Ill.App.3d 621,
     793 N.E.2d 189 (1st Dist. 2003).......................................... 21

People v. Dean, 226 Ill.App.3d 465,
     589 N.E.2d 888 (1st Dist. 1992).......................................... 21


725 ILCS 5/122-2.1(c).................................................................... 18

3

## ISSUES PRESENTED FOR REVIEW

Whether defendant suffered any prejudice by not receiving a dismissal order within ten days of entry since his late notice of appeal was granted.

Whether the summary dismissal of defendant's *pro se* post-conviction petition should be affirmed where defendant failed to state the gist of a meritorious claim alleging ineffective assistance of counsel.

## STATEMENT OF FACTS

Following a jury trial, defendant was convicted of the first degree murder of Keith Stalker. Defendant was sentenced to 40 years in the Illinois Department of Corrections.

Prior to trial defendant filed a motion to quash arrest. A hearing was held on September 1, 1998. Defendant's motion to quash arrest was denied. (C.L. C5) Defendant also made a motion to suppress statements. Assistant State's Attorney (hereinafter A.S.A) Karen O'Malley testified that defendant first gave an oral statement and that he then indicated to her that he wanted to give a handwritten statement. (Supp. R. 34) Defendant again told her what had happened however, this time A.S.A O'Malley wrote down what defendant said. (Supp. R 36) After A.S.A. O'Malley began to read the statement back to him, defendant said he should probably get a lawyer. (Supp. R. 37) A.S.A. O'Malley then terminated the conversation. (Supp. R. 37) Following the hearing, the trial court held that defendant's oral statement could be admitted, but that the actual written statement could not be introduced into evidence. (Supp. R. 42)

4

Another hearing on a motion to suppress statements held on April 5, 1999. The trial judge resolved the credibility issue in favor of the State and denied defendant's motion to suppress statements. (R. B53)

Defendant elected a jury trial. Tory Jackson testified that on November 22-23, 1996 he was engaged in drug transactions with defendant, Michael Thomas and Tyrone Curry. (R.D7-9) All were members of the Black P-Stones street gang. (R.D10) Thomas was the highest ranking gang member. He gave Tory drugs and then acted as security. Thomas carried a knife. (R. D9, 11, 13) Tyrone Curry also acted as security. (R. D12) Defendant hid and was in charge of the larger quantities of drugs. (R. D13) Tory, who carried about 10 individual bags of crack cocaine, took care of the hand to hand transactions. (R. D13) Tory had only met defendant that day. (R. D14)

On the date in question, Tory was on the street to sell drugs. The other three gang members where hiding. (R. D17) Sometime that night, the victim, Keith Stalker, a regular buyer, walked up to him. (R. D17) Tory knew Keith to be a drug addict, and described him as always "zoned out," just as he was on this particular evening. (R.D19) Prior to that day, when Keith could not pay for his drugs, he would instead find customers for Tory. (R. D18)

At about 3:00 a.m. a Blazer containing two men approached. The passenger of that vehicle got out of the car and came over to where Tory and Keith were standing. (R. D21) That individual had GLN tattooed on his forehead, which Tory interpreted to stand for "Gaylord Nation". (R. D21-22) Tory had never seen these men before, but Keith had, so he talked to them. The man wanted to purchase drugs, so Keith directed him to Tory. (R. D22) Tory and this man agreed that he could purchase a certain amount of cocaine for $150. (R.D23) Tory instructed the

5

man to drive around the block, and when he did, Tory went to defendant and was given a larger quantity of drugs. (R.D24)

Tory then joined Keith on the porch and waited for the Blazer to come back around. (R.D25) When it did, Tory gave the cocaine to the same man through the passenger side of the car. However, before paying for the drugs, the passenger told the driver to pull off. (R. D26) Realizing he had not been paid for the drugs, Tory grabbed onto the door of the truck and hung on as the Blazer sped off. (R. D27) As he was hanging on, the passenger was punching him in the face and saying, "Nigger, get off my car." (R. D29) The Blazer drove so that Tory crashed into a train viaduct post. Tory got knocked off and fell to the ground. (R. D28-29)

He was awoken by a fellow drug dealer. The two then went back to Wilson and Magnolia where they saw Michael Thomas. Thomas was stabbing a knife into the ground and told Tory that he was always "fucking up." (R. D32) He punched Tory in the eye for loosing the cocaine. (R. D31) Tory then heard a whistle, which was a prearranged signal for them all to meet. (R.D33) He and Michael Thomas walked into the open street and saw defendant and Tyrone Curry walking towards them, with Keith Stalker in the middle. (R.D34) Defendant first punched Keith in the face. Then defendant and Tyrone both started standing over Keith and striking him with their fists. (R.D37) Defendant ran to a dumpster and grabbed a 2x4 and, while Tyrone was still hitting Keith, hit him twice with it. (R.D39) Tyrone then took the 2x4 and started striking Keith with it. (R.D39) As Tyrone was hitting Keith, Michael Thomas approached, pulled out a knife and stabbed Keith. (R.D43) Defendant backed up about one foot when Thomas produced the knife. (R.D43) Thomas made jerking motions, trying to get the knife out. (R.D44) Defendant, Thomas and Curry then walked back towards Tory whereupon, they all walked to defendant's car, and drove to an

6

apartment at 53rd and Aberdeen. (R.D45-46) Defendant, Thomas and Curry went up and stayed at the apartment but Tory remained in the car. (R.D46)

A few days later Tory spoke to the police and told them what happened regarding the death of Keith Stalker. (R.D48) Tory also told police where they could find defendant and took them to find Thomas and Curry. (R.D49) Tory was charged with the murder of Keith Stalker. After a trial, he was found not guilty. (R.D50) He had no agreement with the State to testify against defendant. Instead, Tory said that after his own trial, his lawyer said, "If you want to make things right, here's your chance now." Accordingly he decided to testify against defendant, Michael Thomas and Tyrone Curry. (R.D50, 78) His only request was that he be re-located because he feared for his life. (R.D51)

Following defendant's arrest, Detective Gray interviewed him and informed him that he had been implicated by Tory. Defendant then admitted to his participation in the murder of Keith Stalker. (R.D98-101) He stated that he hit the victim with a 2x4, then Curry hit Keith with the 2x4, at which time Michael Thomas came up and stabbed him. (R.D101)

A.S.A. Karen O'Malley also interviewed defendant. Following their oral conversation defendant indicated he wanted to make a handwritten statement. In their oral conversation, defendant told ASA O'Malley that while he and Curry were hitting Keith with the 2x4, Thomas came up and stabbed the victim with a knife. However, when ASA O'Malley was writing down his statement, defendant indicated he wanted to change it and say that it was after he was done hitting the victim that Michael Thomas came up and stabbed him. (R.D173)

Dr. Aldo Fusaro performed the autopsy of Keith Stalker. (R.D124) In addition to the stab wound to his abdomen, the victim had wounds consistent with being struck with a 2x4. Dr. Fusaro

7

opined that the cause of death was a stab wound to the abdomen with blunt injury being a significant contributing factor. (R.D150) Toxicology tests revealed that the victim had both cocaine and alcohol in his system. (R.D150-151) A 2x4 recovered with blood admitted into evidence

Defendant testified on his own behalf and conceded that he had been convicted of possession of burglary tools, residential burglary and unlawful use of a weapon. Defendant admitted that he was engaged in a drug business as Tory had described at the time of the murder of Keith Stalker. (R.D234-245) According to defendant, after Tory got "ripped off", Keith talked to Tyrone Curry and apologized for what other members of his street gang had done. (R.D252) Defendant claimed that out of no where, the victim picked up a piece of 2x4 wood and swung it at him. (R.D254) Defendant said it was not the same piece of wood that had been admitted into evidence, but rather that it was a brand new piece of wood. (R.D207) Keith struck defendant on the hand, causing defendant to have a splinter in his hand. (R.D208) Tyrone Curry then punched the victim, whereupon, defendant picked up the same piece of wood the victim had used to strike him, and hit the victim a few times with it. (R. D210) He then began to walk away and as he did, he saw Tyrone Curry strike the victim with the board. When he was half a block or more away, he saw Michael Thomas pull out a knife and stab Keith Stalker. (R.D214) Thomas then caught up to them, and he, Thomas, Curry and Tory Jackson drove to the south side. (R.214-216)

Defendant said he was arrested at his house three days later and that when he was arrested he did not resist in any way. (R.D219) He claimed that at the station he was not given his rights, that he asked for an attorney and that he was hit by police. (R.D228)

The jury returned a verdict finding defendant guilty of the first degree murder of Keith Stalker. (R.E123) Defendant's motion for a new trial was denied. (R.G8) In aggravation Deputy

8

Michael Wittman testified that on March 27, 1998, he was assigned to the male bridge where D.O.C. prisoners are searched when they come over from the Department of Corrections to the courthouse. (R.G11) As he was searching defendant, defendant lunged at him in an aggressive manner and struck him in the left side of the jaw with a closed fist. (R.G12) At the sentencing hearing, defendant testified and claimed Deputy Wittman hit and punched him for no apparent reason. (R.G24) After argument in aggravation and mitigation, defendant was sentenced to 40 years in the Illinois Department of Corrections. (R.G36) Defendant's motion to reconsider sentence was denied. (R.H4)

Defendant filed a direct appeal from his conviction. Defendant raised the issues of probable cause, reasonable doubt and error in the prosecutor's closing argument. On February 6, 2002, this Court affirmed defendant's conviction and sentence. People v. Monroe, 99-4453, Rule 23 Order.

On November 6, 2002, defendant filed a *pro se* post-conviction petition. (Supp.R.1 4) That petition was dismissed as frivolous and without merit on November 19, 2002. (Supp.R.1 2, P.C.C.L. 11)

Defendant filed a second *pro se* post-conviction petition entitled "Notice to Amend Request of Post-Conviction Petition" on January 29, 2003. (P.C.C.L. 14) Defendant's successive petition was dismissed as frivolous and without merit on February 10, 2003. (P.C.II R. 3) Notification was sent to defendant on February 11, 2003. (P.C.C.L. 11) Defendant attempted to appeal the February 10th dismissal of his successive post-conviction petition on February 18, 2003, but mailed it to the wrong court. That notice of appeal was filed in the circuit court on March 25, 2003. (P.C.C.L. 19)

9

Following the appointment of the State Appellate Defender for purposes of the appeal from the February 10, 2003 dismissal, on November 5, 2003, defendant's attorney filed a motion for leave to file a late appeal from the November 19, 2002 dismissal of defendant's November 6, 2002 petition. (Supp.R.111 4-7) This Court granted defendant's motion on November 14, 2003. (Supp.R.111 2)

On January 26, 2004, defendant's appellate attorney filed a motion "To Remand to Circuit Court for Purpose of Properly Notifying Defendant of Dismissal of His Post-Conviction Petition". Following a response by the People, defendant's motion was denied on February 5, 2004. On March 19, 2004 the People filed a motion to strike defendant's brief and to vacate this Court's order granting late notice of appeal. In their motion the People argued that because all time limitations had expired, this Court had no discretion to grant defendant's late notice of appeal, as it was without jurisdiction to do so. Following a timely response by defendant, this Court granted the People's motion and vacated its previous order allowing defendant's late notice of appeal and struck defendant's brief.

Defendant then appealed to the Illinois Supreme Court on April 14, 2004, to grant him a late appeal pursuant to their supervisory authority. On May 4, 2004, in the exercise of that authority, the Supreme Court ordered this Court to vacate its order of March 26, 2004 and to reinstate the order allowing the late notice of appeal and to consider the case on its merits.

**ARGUMENT**

**I.**

**EVEN IF THE TRIAL COURT DID NOT SEND DEFDNDANT A DISMISSAL ORDER WITHIN TEN DAYS, DEFENDANT DID NOT SUFFER ANY PREJUDICE WHERE HIS LATE NOTICE OF APPEAL WAS GRANTED.**

Defendant argues that since he was not notified within 10 days of the dismissal of his *pro se* post-conviction petition, his case should be remanded for second stage proceedings under the Post Conviction Hearing Act. The People respond that even if defendant was not sent notice within 10 days, the trial court's dismissal should be affirmed where defendant was not prejudiced by the failure to send a timely dismissal order.

Initially, although defendant assumes he was not send a dismissal order within 10 days after the November 19, 2002 dismissal, he has provided this Court with an incomplete record on review. Defendant has not included the transcript from the November 19 dismissal which could shed light on this issue. Any doubts arising from the incompleteness of the record will be construed against defendant whose responsibility it was as appellant to present a complete record on review. People v. Bartez, 334 Ill.App.3d 772, 778 N.E.2d 1182 (1ST Dist. 2000). Therefore, defendant's claim can be rejected without further analysis.

Assuming arguendo this Court concludes that the record sufficiently supports defendant's claim, the summary dismissal of defendant's *pro se* post- conviction filed November 6, 2002, should nonetheless be affirmed by this Honorable Court.

Defendant filed his post-conviction petition on November 6, 2002. That petition was dismissed as frivolous and without merit on November 19, 2002. (Supp.R.1 2) Defendant filed a

11

second petition on January 19, 2003 which was also summarily dismissed on February 10, 2003. (P.C.II R. 3) After being assigned appellate counsel on that appeal, counsel realized defendant had not appealed the November 19 dismissal and moved for late notice of appeal from that judgment. Due to the fact that all time had expired for this Court to grant defendant's request, the Illinois Supreme Court pursuant to their supervisory authority ordered defendant's late notice of appeal to be allowed. Thus, defendant will be heard on his appeal by the Appellate Court and was not prejudiced by the trial court's failure to notify defendant of the dismissal of his post-conviction petition.

Defendant argues that the statutes ten-day notice provision is mandatory. He points out that the statute says that defendant's copy of the dismissal order "shall" be mailed within ten days and urges that the court's failure to notify him requires his petition to be advanced for second-stage proceedings. But it is the People's position that the context and purpose of the notice provision show that it should be interpreted to be merely directory, not mandatory and that a failure to receive notice in ten days does not render the court's order void.

The Post-Conviction Hearing Act provides that an order dismissing a petition "shall be served upon the petitioner by certified mail within 10 days of its entry." 725 ILCS 5/122-2.1(a)(2). The purpose of that notice provision is to ensure that a post-conviction petitioner will learn of his petitions dismissal in time to file a timely notice of appeal. People v. Adams, 338 Ill.App.3d 471, 338 N.E.2d 471 (1st Dist. 2003); People v. Crane, 333 Ill.App.3d 768, 776 N.E.2d 892 (2nd Dist. 2002). Post-Conviction petitioners are routinely allowed to file late notices of appeal, pursuant to Supreme Court Rule 605(c), upon a showing of meritorious issue and the absence of culpable negligence. People v. Owens, 51 Ill.2d 583, 283 N.E.2d 892 (1972). And, as one appellate court

12

opined, "We can think of no better excuse" for a post-conviction petitioner's failure to file a timely

notice of appeal than his untimely receipt of notice of the dismissal. People v. Meeks, 31 Ill.App.3d

396, 334 N.E.2d 253 (1st Dist. 1975).

The Illinois Supreme Court has indicated that the absence of resulting prejudice is a valid

reason to excuse tardy notice of dismissal of a post-conviction petition. In People v. Derengowski,

44 Ill.2d 476, 256 N.E.2d 455 (1970), a post-conviction petition was dismissed without an

evidentiary hearing. The defendant in Derengowski claimed he had not received statutory notice of

the dismissal of his post-conviction petition. The Supreme Court noted that the defendant's claim

was contradicted by the record, but reasoned that, "[e]ven if the claim be true, defendant has in no

manner been prejudiced" because he filed his notice of appeal timely, counsel was appointed to

represent him and appellate briefs were filed. Derengowski, 44 Ill.2d at 481 (emphasis added).  In

the case at bar, even if defendant was not given a dismissal order in time to file a notice of appeal,

his late notice of appeal was granted and therefore, defendant did not suffer any prejudice by not

receiving a dismissal order.

Defendant's argument that the clerk's failure to give timely statutory notice of dismissal

entitles him to future post-conviction proceedings rests on his contention that the statutory notice

provision is mandatory, rather than merely directory. (Def. Br. p. 13) Defendant cites People v.

Porter, 122 Ill.2d 64, 521 N.E.2d 1158 (1988), in support of the general rule that the legislature's

use of the word "shall" in a statute indicates mandatory intent. (Def. Br. p. 15) But in Porter, the

Illinois Supreme Court stated: "Generally, the word 'shall' is indicative of a mandatory intent;

however, such a construction is not absolute and intent can also be determined from the purpose

and context of the provision." Porter, 122 Ill.2d at 82. Indeed, a consideration of 725 ILCS 5/122-

13

2.1's use of the word "shall" in the context of the whole statute and of its legislative purpose shows that the notice provision should be interpreted as permissive. Some factors in support of this interpretation are that the statutory provision does not provide a consequence for failure to follow its terms, that the statute does not contain negative words and that the underlying purpose of the statutory notice provision was fulfilled in this case.

Further, regardless of the interpretation of the wording of the statute, any failure to notify defendant does not render the trial court's order void (Def. Br. p. 16) as a valid judicial order should not be rendered invalid by a subsequent ministerial error of a clerk.

Defendant cites People v. Redmond, 328 Ill.App.3d 373, 767 N.E.2d 838 (2nd Dist. 2002), People v. Adams, 338 Ill.App.3d 471, 788 N.E.2d 252 (1st Dist. 2003) and People v. Robinson, 343 Ill.App.3d 910, 799 N.E.2d 345 (1st Dist. 2002) in support of his case.

In People v. Robinson, 343 Ill.App.3d 910, 799 N.E.2d 345 (1st Dist. 2003), it was held that the circuit court's order dismissing the petition was rendered invalid by the clerk's delay in mailing notice to defendant. The court construed the term "shall", under 725 ILCS 5/122-2.1, as mandatory and determined that a defendant would have the right to proper notice but no remedy unless the court's order is vitiated by improper notice. People v. Robinson relied upon People v. Redmond, which summarily dismissed the petitioner's post-conviction petition but failed to send him written notice within ten days. Redmond, 328 Ill.App.3d at 375. The court in Redmond held that every provision in section 122-2.1 is mandatory and the failure to serve petitioner with a written order within the time period rendered the dismissal void. Redmond, 328 Ill.App.3d at 378. The People's leave to appeal was granted in People v. Robinson, 207 Ill.2d 624, 807 N.E.2d 981 (2004). The People respectfully submit that Robinson was wrongly decided. Instead, this court

14

should follow the interpretation of some other appellate courts which have considered the same statutory section and have interpreted the notice as merely directory.

In People v. Ross, 339 Ill.App.3d 580. 791 N.E.2d 171 (1st Dist. 2003), the Third Division gave a directory interpretation to the notice provision of 725 ILCS 5/122-2.1(a)(2) because, inter alia, no prejudice resulted from the failure to serve notice of summary dismissal upon the post-conviction petitioner within ten days. The appellate court explained that no prejudice resulted from the untimely service of the order upon the defendant "[b]ecause defendant was allowed to appeal the dismissal…" Ross, 339 Ill.App.3d at 585.

In People v. Crane, 333 Ill.App.3d 768, 776 N.E.2d 892 (2nd Dist. 2002), the Second District distinguished its holding in Redmond, emphasizing that the prejudice suffered by the petitioner in Redmond had been the sine quo non for remandment in that case. The Second District explained in Crane that the purpose of the statute's notice provision had been served and it would just be "empty formalism" to find the order void due to lack of proof that he petitioner received his copy by certified mail. Crane, 333 Ill.App.3d at 773.

Finally, in People v. Adams, 338 Ill.App.3d 471, 788 N.E.2d 252 (1st Dist. 2003), where all the issues raised in the post-conviction petition itself were either waived or res judicata, the court found remandment unnecessary, because to do so would have resulted in "an unnecessary waste of judicial resources." Adams, 338 Ill.App.3d at 475.

Defendant in this case suffered no prejudice due to any failure to send him notice within the time required by statute where he was allowed by the Illinois Supreme Court to file a late notice of appeal. Thus, defendant is not entitled to second stage proceedings on this basis alone, and where his petition failed to state the gist of a meritorious claim (See Issue II), the summary

15

dismissal of defendant's pro se post-conviction petition should be affirmed by this Honorable

Court.

## II.

**THE SUMMARY DISMISSAL OF DEFENDANT'S *PRO SE* POST-CONVICTION PETITION SHOULD BE AFFIRMED WHERE DEFENDANT FAILED TO STATE THE GIST OF A MERITORIOUS CLAIM ALLEGING INEFFECTIVE ASSISTANCE OF COUNSEL.**

Defendant argues that his post-conviction petition was improperly summarily dismissed as it contained the gist of a meritorious claim alleging ineffective assistance of counsel. Specifically, defendant claims that his attorney was ineffective because he did not call as witnesses, defendant's brother and sister-in-law, who he contends would have testified that defendant requested an attorney at the time of his arrest and that police acted "with brutality" when arresting him. (Def. Br. p. 21) However, a review of the record in conjunction with defendant's petition reveals that since the proposed testimony of the witnesses contradicts the evidence presented by defendant at trial, counsel could not have been ineffective for not calling them as witnesses. Moreover, even had they testified, the result of both the pre-trial motion and the trial itself would not have been different.

For a post-conviction petition to withstand scrutiny and avoid dismissal, it need only contain a simple statement presenting a gist of a claim for relief which is meritorious when considered in view of the record of trial court proceedings. People v. Douglas, 296 Ill.App.3d 192, 694 N.E.2d 665 (4th Dist. 1998). However, a *pro se* defendant must still plead sufficient facts from which the trial court could find a valid claim of depravation of a constitutional right. Id. Moreover, while the Act requires that the allegations in the petition for post-conviction relief be supported by affidavit, the record or other evidence, the trial court is not prevented from closely scrutinizing the supporting documents at the first stage in the process to determine whether the allegations are frivolous or

17

patently without merit. <u>People v. Prier</u>, 245 Ill.App.3rd 1037, 613 N.E.2d 1226 (4th Dist. 1993).In

determining whether a petition is frivolous or patently without merit, the trial court may examine

the court file of the proceedings, any action taken by the appellate court and any transcripts of such

proceedings. 725 ILCS 5/122-2.1(c), <u>People v. Ramirez</u>, 162 Ill.2d 235, 642 N.E.2d 1224 (1994).

Moreover, in <u>People v. Coleman</u>, 183 Ill.2d 366,382,701 N.E.2d 1063 (1998), the Illinois Supreme

Court stated, "[t]his court has consistently upheld the dismissal of a post-conviction petition where

the allegations are contradicted by the record from the original trial proceedings".

    Under the standard of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052 (1983), the

burden is always on the defendant to show that his attorney's performance was unreasonable in a

way that affected the outcome of the proceedings. Courts indulge in the strong presumption that

counsel's performance fell within a wide range of reasonable professional assistance. <u>Strickland,</u>

466 U.S. at 690. The decision as to whether to call a witness is a tactical and strategic decision in

which defense counsel is given wide latitude. <u>People v. Moleterno</u>, 254 Ill.App.3d 615, 627 N.E.2d

129 (1st Dist. 1993). A trial counsel's informed strategic choices are virtually unchallengeable as

instances of ineffective assistance of counsel. <u>People v. Fern</u>, 240 Ill.App.3d 1031, 607 N.E.2d 951

(2nd Dist. 1993).

    Under the <u>Strickland</u> standard, defendant must first establish that his counsel's performance

was deficient, in that "counsel made errors so serious that counsel was not functioning as 'counsel'

guaranteed by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687. It is clear that defendant was

provided with more than competent representation in this case. Defense counsel litigated three pre-

trial motions on defendant's behalf. During defendant's jury trial, counsel presented an articulate

opening statement and closing argument, and aggressively cross-examined the State's witnesses.

In the instant case defendant contends he was deprived of the effective assistance of counsel because his trial attorney did not call to testify his brother and sister-in-law. Specifically, defendant contends that had these two individuals testified at his motion to suppress there is a greater likelihood that his motion would have been granted and that if they had testified at his trial there is a greater likelihood that that outcome would have been different. It is unclear whether defendant is claiming counsel was ineffective for failing to call Chris and Isabell Estavia as witnesses or because he failed to investigate their potential testimony. In any event, either argument fails on several levels.

Attached to defendant's *pro se* post-conviction are three affidavits, two of which are pertinent to the instant appeal. In their affidavits, Isabell Estavia and Chris Estavia, defendant's sister-in-law and brother, contend that they were awakened the morning of November 26 by police who forced their way in and threatened to kill their dog. In addition, Isabell claimed that defendant was hesitant to go with police and that he requested to call their family lawyer. In addition, Isabell alleged that she was never contacted by defendant's attorney, while Chris claimed that he was not called to testify. (Supp. R. Vol. I 27-28)

While defendant is correct that an attorney can be found to be ineffective when he fails to investigate exculpatory witnesses who are known to him, such a situation did not exist in this case. There were multiple strategic reasons not to investigate the possible existence of these witnesses or to call them to testify at the pre-trial motions or trial.

The pre-trial motion filed and argued by defense counsel, presumably after consulting with defendant, alleged that defendant only requested an attorney at the police station and that the police used "trickery" rather than brutality when they arrested him. (C.L.39-45, R.B5) In his motion,

19

defendant offered by way of stipulation, the testimony of his mother, Helena Safa, that she responded to a knock at the door in the early morning of November 26, whereupon police informed her that they wanted to speak to defendant. Defendant was then taken away in handcuffs. (Tr. 9-1-98 p. A5) Defendant also entered into a stipulation with the People that detectives knocked on defendant's door and asked if defendant was there. They remained in the vestibule while a family member called defendant. Defendant was asked to accompany the detectives to the police station. Defendant left the house with them and was subsequently handcuffed. (Tr. 9-1-98 p. A5)

The People argued defendant voluntarily accompanied police to the station whereupon police had probable cause to arrest based on a witness who named defendant as being involved in the beating. (R. B5) Defendant argued that police used trickery to get him to go to the police station. (R. B5) He argued police "told him there was one thing going on and then there was something else." (R. B5) The trial judge found that defendant voluntarily accompanied police to the station and that once at the station police had probable cause to arrest him. (R. B6) Defendant's motion to quash arrest was denied. (C.L. C5)

During a hearing on defendant's motion to suppress statement defendant testified that while at the police station, he was kicked and punched and told detectives that he wanted to call a lawyer. (R. B10-14) Also during that hearing, Detective Manion who arrested defendant at his residence, testified that he had a conversation with Chris Estavia and defendant's mother and advised them that he was taking defendant to the police station. (R. B42)    Finally, at trial defendant testified that he agreed to accompany police to the station. Therefore, defendant's theory at trial was that he was tricked by police into voluntarily going to the police station and once there, he asked for an attorney and was beaten by police. This "theory" was supported by the testimony of defendant and

20

his mother. (R. B10; Tr.9-1-98 p.5) Obviously, since their version of the events surrounding the arrest of defendant did not include allegations of police brutality or defendant's request for an attorney when first arrested, there would be no reason for defense counsel to look for additional witnesses to testify to the circumstances surrounding defendant's arrest. Moreover, even assuming arguendo counsel was aware to the potential testimony of Chris and Isabell Estavia, in view of the fact that the testimony as presented in the affidavits would have conflicted with defendant's own theory of the circumstances surrounding his arrest, it was not objectively unreasonable not to call defendant's brother and sister-in-law as witnesses.

Similarly, in People v. Deloney, 341 Ill.App.3d 621, 793 N.E.2d 189 (1st Dist. 2003), this court found that defense counsel was not ineffective for failing to call potential alibi witnesses where the witnesses were related to defendant and as such their credibility would have been afforded little weight and where their potential testimony would have been contradictory to the theory developed by defense counsel.

Second, defendant must demonstrate that he suffered prejudice as a result of his counsel's deficient performance. Strickland, 466 U.S. at 689. Even had Chris and Isabell testified the results would not have been different. Since defendant testified he agreed to go to the police station and there was credible testimony from the police and detectives to corroborate this testimony, the testimony of Chris and Isabell Estavia would not have changed the outcome of defendant's motion to suppress statements. Further, in light of the overwhelming evidence against defendant at trial including the credible testimony of Tory Jackson and defendant's own statement, there is no possibility defendant would have been found not guilty due to their testimony. [See People v. Dean, 226 Ill.App.3d 465, 589 N.E.2d 888 (1st Dist. 1992), no prejudice where overwhelming evidence of

21

defendant's guilt] In addition, the very nature of their relationship would make their testimony highly incredible.

Thus, defendant failed to state the gist of a meritorious claim of ineffective assistance of counsel in his *pro se* post-conviction petition. This Court should therefore affirm the trial court's summary dismissal of defendant's petition.

## CONCLUSION

The People of the State of Illinois respectfully request that this Honorable Court affirm the summary dismissal of defendant's post-conviction petition.

Pursuant to People v. Nicholls, 71 Ill. 2d 166, 374 N.E.2d 194 (1978) and relevant statutory provisions 725 ILCS 5/110-7(h)(1992); 725 ILCS 130/13 (1992); 55 ILCS 5/4-2002.1 (1992), the People of the State of Illinois respectfully request that this Court grant the People costs and incorporate as part of its judgment and mandate a fee of $100.00 for defending this appeal. In addition, pursuant to People v. Agnew, 105 Ill. 2d 275, 473 N.E.2d 1319 (1985) and 55 ILCS 5/4-2002.1 (1992), the People respectfully request that this Court also grant the People an additional fee of $50.00 in the event oral argument is held in this case.

Respectfully Submitted,

RICHARD A. DEVINE,
    State's Attorney,
    County of Cook,
    Room 309 - Richard J. Daley Center,
    Chicago, Illinois 60602

Attorney for Respondent-Appellee

RENEE GOLDFARB,
ALAN J. SPELLBERG,
KATHLEEN WARNICK,
Assistant State's Attorneys.
    Of Counsel.

E-FILED
Monday, 16 October, 2006 12:17:43 PM
Clerk, U.S. District Court, ILCD



## STATE OF ILLINOIS APPELLATE COURT SECOND DISTRICT

OFFICE OF THE CLERK
847/695-3750
847/695-0092 TDD

APPELLATE COURT BUILDING
55 SYMPHONY WAY
ELGIN, ILLINOIS 60120-5558

Appeal from the Circuit Court of County of Winnebago

Trial Court No.: 94CF2420

THE COURT HAS THIS DAY, 12/21/05, ENTERED THE FOLLOWING ORDER IN THE CASE OF:

Gen. No.: 2-04-1240

People v. Weilburg, Daro C.

Motion by plaintiff-appellee, People of the State of Illinois, to dismiss appeal for failure to comply with Supreme Court Rule 606, objections thereto by appellant and motion by defendant-appellant, Daro Weilburg, for appellate bond, (release on own recognizance), and objections thereto by appellee. Motion by appellant for release on bond pending appeal is denied. Motion by appellee to dismiss appeal is allowed and this appeal is hereby dismissed. THIS ORDER IS FINAL AND SHALL STAND AS THE MANDATE OF THIS COURT. (McLaren, Bowman, Callum, JJ.)

Robert J. Mangan
Clerk

cc: Daro C. Weilburg
    Honorable Paul A. Logli
    Steven J. Biagi
    Martin P. Moltz, Deputy Director

EXHIBIT M

E-FILED
Monday, 16 October, 2006 12:18:01 PM
Clerk, U.S. District Court, ILCD

**ORIGINAL**

**1 0 2 1 5 8**

NO. _____

## IN THE SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| People State of Illinois, | ) | Appellate Court, |
| | ) | Second District |
| Respondent | ) | No.   2-04-1240 |
| | ) | |
| v. | ) | |
| | ) | Circuit Court, |
| Daro C. Weilburg, | ) | Winnebago County |
| | ) | No.   94 CF 2420 |
| Petitioner | ) | |

### PETITION FOR LEAVE TO APPEAL

**FILED**

FEB 2 1 2006

**SUPREME COURT CLERK**

Daro C. Weilburg
Reg. No. R-32180
P. O. Box 900
Taylorville, Illinois  62568

m - 122105
Recon. denied 012606

EXHIBIT N

# STATE OF ILLINOIS APPELLATE COURT

## FOR THE SECOND JUDICIAL DISTRICT

RECEIVED
FEB 8 - 2006
SUPREME COURT CLERK

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | Appeal from the Circuit Court of the 17th Judicial Circuit, Winnebago County, Illinois |
| Appellee,- Respondent, | Appeal No. 2-04-1240 |
| V. | Circuit Court No. 04-CF-2420 |
| DARD WEILBURG, | (Hon. Gerald F. Grubb) |
| Appellant- Petitioner | |

FILED
FEB 6 2006
ROBERT J. MANGAN, CLERK
APPELLATE COURT 2nd DISTRICT

RECEIVED
FEB 6 2006
ROBERT J. MANGAN, CLERK
APPELLATE COURT 2nd DISTRICT

## PETITION FOR LEAVE TO APPEAL TO THE ILLINOIS SUPREME COURT PURSUANT TO SUPREME COURT RULE 315

NOW COMES the Appellant- Petitioner, DARD WEILBURG, in pro per and hereby respectfully petitions this Honorable Court for leave to Appeal pursuant to Supreme Court Rule 315, from the judgment of the Appellate Court of Illinois for the 2nd Judicial District, which dismissed this Appeal providing no opinion, pursuant to Supreme Court Rule 606. In Support thereof the Petitioner avers:

1. He is a prisoner of the Illinois Department of corrections located at the Taylorville Correctional Center as the result of a guilty verdict on the charge of Theft, a class 2 felony, theft over $10,000. by a jury on August 29, 1997.

2. He was sentenced to the maximum term allowed by law on November 4, 1999, of (7) years, in absentia and without counsel.

3. The People waited (13) months to formulate the additional charge of Violation of Bail Bond, a class 3 Felony, by indictment. The indictment was obtained on December 13, 2000. That matter is currently on appeal - 2-05-0007.

4. The sentencing court failed to issue a warrant in this matter

and on October 1, 2003 the petitioner was extradited from the State of Arizona to the State of Illinois on the Sole charge of Violation of Bail Bond, People v. Weilburg - 00-CF-3174 - Appeal No. 2-05-0007.

5. On October 9, 2003 the Petitioner filed a motion for New trial or in the Alternative motion for new sentencing pursuant to 725 ILCS 5/115-4.1(e). The Petitioner Amended his pleading thereafter.

6. On October 27, 2004, the sentencing court denied the Section 115-4.1(e) motion and the Petitioner Filed a notice of Appeal pursuant to section 115-4.1(g) and Supreme Court Rule 606.

7. The Petitioner relied on Supreme Court Rule 606 because the admonishment of the right to Appeal pursuant to Supreme Court Rule 605 was not provided due to the sentencing court's failure to adhere to 725 ILCS 5/115-4.1(a) which provides in pertinent part: "The absent defendant _must_ be represented by either retained or appointed counsel." This petitioner was not represented by counsel for the 11-19-99, _in absentia_ Sentencing and as such, the Supreme Court Rule 605 admonishment was only given to the state's Attorneys Assistant in attendance.

8. On December 21, 2005, the Appellate Court dismissed the appeal.

9. On December 22, 2005, the petitioner moved for a reconsideration.

10. On December 29, 2005, The Petitioner Filed a Motion to File exhibits in support of Pending Pleadings and case on Appeal Motion for Reconsideration.

11. On January 13, 2006, the Appellate Court ordered the Appellee to File a

response to the Petitioner's motion for reconsideration but did not provide a date by which the petitioner could reply to that response.

12. On January 19, 2006, the day before the Appellees were to respond, the petitioner moved the Appellate Court to allow him to reply pursuant to Supreme Court 367(d)

13. On January 25, 2006, the Petitioner mailed his reply to the Appellee's response. However, the Appellate Court denied the motion for reconsideration on January 26, 2006, without the petitioner's reply or consideration of the Petitioner's Supreme Court Rule 367(d) right to file a reply.

## PETITION TO APPEAL ARGUMENTS

14. Within it's January 26, 2006, order the Appellate court allowed the petitioner leave to file a reply to the Appellee's response but, denied the motion for Reconsideration prior to the Reply. The Appellee's cited cases were inapposite to this case because both defendants were represented by counsel, although both defendants were absent. People v. Woolridge, (1997) 292 Ill.App.3d 788, 686 N.E.2d 386 and People v. Borcham, (1991) 152 Ill.Dec.955, 208 Ill.App.3d 939, 566 N.E.2d 832. Both of these cases came from the 4th District, any reliance by the Appellate Court was misplaced.

15. The Petitioner's cited cases were People v. Partee, (1988) 125 Ill.2d 24, 530 N.E.2d 460 and People v. Dupree, (2003, 1st Dist) 339 Ill.App.3d 512, 793 N.E.2d 31, 275 Ill.Dec. 551. While both these cases were inapposite to the issue of both defendants being represented by counsel, unlike this Petitioner. The language utilized by this Honorable court in Partee, supra applies to this Petitioner: " even a willfully absent defendant retains some of the procedural rights of a present defendant such as all the rights guaranteed by the U.S. constitution, the constitution of the state of Illinois, statutes of the state of Illinois and the rules of Court shall apply to All proceedings as if the

defendant were present," (emphasis added) This petitioner was not totally willfully absent as brought out in his opening Brief. The Petitioner served a legal pleading on the Court that he desired to leave the jurisdiction. The People did not respond. If the court issued a bench warrant, the People intentionally sent the Police to the wrong address. The Court never issued a written warrant and the People never sent the Police to arrest this Petitioner. Naturally, the Petitioner thought the Court agreed with his pleading. (See opening Brief and appendixes annexed thereto) He left the jurisdiction (2) months later.

16. This Petitioner was entitled to the statutory protection of 725 ILCS 5/115-4.1(a) which provides in pertinent part: "The absent defendant _must_ be represented by either retained or appointed counsel;" The petitioner was entitled to the admonishment of Supreme Court Rule 605 and 606, notification of the right to appeal and the right to Appeal; (appointed counsel would have preserved those rights); And, this Petitioner was entitled pursuant to 725 ILCS 5/115-4.1(g) to the right to seek review of the sentence and conviction not vacated by the lower court. These rights seem to evade the Appellate Court, as did the right to reply to the Appellee's Response to the Petitioner's motion for reconsideration pursuant to Supreme Court Rule 367(d). The Petitioner was also entitled to representation pursuant to the 6th U.S. Const. Amend.

17. The People requested the sentencing Court to appoint counsel to represent this petitioner for the sentencing hearing _in absentia_ held on November 19, 1999 but the trial court was more concerned with the inconvenience to Any appointed Attorney rather than this petitioner's Due process rights. It's all in the petitioner's opening brief with substantive proof of manufactured evidence, transcripts of proceedings, ineffective assistance of counsel, denial of due process and denials of fundamental fairness. The irony is that this is an Alleged theft case. Fortunately, this is not a murder case. Nevertheless, justice isn't measured by severity, it must be a concept in totality, in every case.

18. The appellate court was clearly in error to dismiss this matter without consideration of the issues presented of fundamental fairness and due process violations. Those violations are evident and precisely laid out within the opening brief and supported by the appendixes attached thereto. The dismissal of this appeal is obviously premature at least and a denial of due process at the worst. This court made that point very apparent in Partee, supra. That decision is binding on the appellate courts, unlike the decisions by the 4th District cited by the Appellees, in their response brief. The decision by the 1st District Appellate Court in Dupree, supra is also binding on the 2nd District Appellate Court and only reinforces the decision of this court in Partee, supra.

WHEREFORE the Petitioner is entitled to review of his case on appeal pursuant to Supreme Court Rule 606 and 725 ILCS 5/115-4.1(g). He relies on Supreme Court Rule 606 of the Direct Appeal process due to the failure of the Sentencing court's admonishing this petitioner pursuant to Supreme Court Rule 605 or his counsel, had the Sentencing court adhered to the statutory requirement provided by 725 ILCS 5/115-4.1(a), to appoint counsel. This would not now be an issue. This Petitioner relies on 725 ILCS 5/115-4.1(g) because along with Supreme Court Rule 606, if the lower court fails to grant the Section 5/115-4.1(g) motion, a review can be maintained by the 4.1(g) action. The Petitioner respectfully requests this Honorable Court to reinstate this appeal.

by  Dave Weilburg
In Propria Personam

-5-

# AFFIDAVIT OF AFFIRMATION UNDER PENALTY OF PERJURY

I, _Dave Wellborn_____, affiant, do hereby declare and affirm under penalty of perjury as defined in 735 ILCS 5/1-109 that everything contained herein is true and accurate to the best of my knowledge and belief. I further declare and affirm that the contents of the foregoing documents are known to me and are accurate to the best of my knowledge and belief. Finally, I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

Signed on this _2nd_ day of _February_ , 200 _6_

_Dave Wellborn_____
**Affiant**

IN THE

ILLINOIS STATE APPELLATE COURT

FOR THE SECOND JUDICIAL CIRCUIT

PEOPLE OF THE STATE OF ILLINOIS
      PLAINTIFF,
      Appellee,

      v.

DAVID WEINBERG
      DEFENDANT,
      Appellant

      )
      )
      )
      )   CASE NO. 94-CF-2420
      )
      )
      )
      )

## PROOF/CERTIFICATE OF SERVICE

TO: CLERK OF THE COURT

    55 Symphony Way

    Elgin, ILLINOIS

        60120

TO: APPELLATE PROSECUTOR/MATTIA Mohr,

    2032 LARKIN AVE.

    Elgin, Illinois

        60123

**PLEASE TAKE NOTICE** that on _February 2_, 20_06_, I have placed the attached document(s) in the institutional mail at _Taylorville_ C.C. properly addressed to the parties listed above for mailing through the United States Postal Service of The Following Documents: Petition For leave to Appeal to the Illinois Supreme Court pursuant to Supreme Court Rule 315

I swear that I mailed the attached document(s) as above addressed under penalty of law.

So Sworn,

_David Weinberg_

PRO SE, # R32180

P.O. Box 900,

TAYLORVILLE IL, 62568.



## STATE OF ILLINOIS APPELLATE COURT SECOND DISTRICT

OFFICE OF THE CLERK
847/695-3750
847/695-0092 TDD

APPELLATE COURT BUILDING
55 SYMPHONY WAY
ELGIN, ILLINOIS 60120-5558

Appeal from the Circuit Court of County of Winnebago

Trial Court No.: 94CF2420

THE COURT HAS THIS DAY, 12/21/05, ENTERED THE FOLLOWING ORDER IN
THE CASE OF:

Gen. No.: 2-04-1240

People v. Weilburg, Daro C.

Motion by plaintiff-appellee, People of the State
of Illinois, to dismiss appeal for failure to
comply with Supreme Court Rule 606, objections
thereto by appellant and motion by defendant-
appellant, Daro Weilburg, for appellate bond,
(release on own recognizance), and objections
thereto by appellee. Motion by appellant for
release on bond pending appeal is denied. Motion
by appellee to dismiss appeal is allowed and this
appeal is hereby dismissed. THIS ORDER IS FINAL
AND SHALL STAND AS THE MANDATE OF THIS COURT.
(McLaren, Bowman, Callum, JJ.)

Robert J. Mangan
Clerk

cc: Daro C. Weilburg
Honorable Paul A. Logli
Steven J. Biagi
Martin P. Moltz, Deputy Director

E-FILED
Monday, 16 October 2006 12:18:11 PM
Clerk, U.S. District Court, ILCD



## STATE OF ILLINOIS APPELLATE COURT SECOND DISTRICT

OFFICE OF THE CLERK
847/695-3750
847/695-0092 TDD

APPELLATE COURT BUILDING
55 SYMPHONY WAY
ELGIN, ILLINOIS 60120-5558

Appeal from the Circuit Court of County of Winnebago

    Trial Court No.: 94CF2420

THE COURT HAS THIS DAY, 01/26/06, ENTERED THE FOLLOWING ORDER IN
THE CASE OF:

    Gen. No.: 2-04-1240

    People v. Weilburg, Daro C.

        Motion by defendant-appellant, Daro Weilburg, for
        reconsideration of this court's order of December
        21, 2005, dismissing this appeal, response thereto
        by plaintiff-appellee, People of the State of
        Illinois, and motion by appellant for leave to
        file reply to appellee's response.  Motion by
        appellant for leave to file reply is allowed.
        Motion by appellant to reconsider is denied and
        this court's order of December 21, 2005,
        dismissing this appeal remains in effect.

                Robert J. Mangan
                Clerk

cc: Daro C. Weilburg
    Honorable Paul A. Logli
    Steven J. Biagi
    Martin P. Moltz, Deputy Director

EXHIBIT O

## STATE OF ILLINOIS
### SUPREME COURT

At a Term of the Supreme Court, begun and held in Springfield, on Monday, the eighth day of May, 2006.

Present: Robert R. Thomas, Chief Justice
Justice Charles E. Freeman            Justice Mary Ann G. McMorrow
Justice Thomas R. Fitzgerald          Justice Thomas L. Kilbride
Justice Rita B. Garman                Justice Lloyd A. Karmeier

---

On the twenty-fourth day of May, 2006, the Supreme Court entered the following judgment:

No. 102158

People State of Illinois,

    Respondent

    v.

Daro C. Weilburg,

    Petitioner

Petition for Leave
to Appeal from
Appellate Court
Second District
2-04-1240
94CF2420

The Court having considered the Petition for leave to appeal and being fully advised of the premises, the Petition for leave to appeal is DENIED.

As Clerk of the Supreme Court of the State of Illinois and keeper of the records, files and Seal thereof, I certify that the foregoing is a true copy of the final order entered in this case.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the Seal of said Court, this fifteenth day of June, 2006.

*Juleann Hornyak*

Clerk,
Supreme Court of the State of Illinois